FILED

JUN 12 2000

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. W-99-CR-070(2) |
| | § | |
| BRANDON BERNARD | § | |

## WRITTEN OBJECTIONS TO THE PENALTY PHASE
## CHARGE WITH AUTHORITIES

***TO THE HONORABLE WALTER S. SMITH, JR., UNITED STATES DISTRICT JUDGE
FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION:***

COMES NOW, BRANDON BERNARD, Defendant, by and through his attorney of

record, Russell D. Hunt, and files this his written objections to the jury charge, and  for cause

therefor would respectfully show unto the Court the following:

### I.
### NO WAIVER FROM ADDITIONAL ORAL OBJECTIONS

Defendant Bernard notes that although he is filing the written objections contained herein,

he is not hereby waiving his right to object further orally to any charge offered by the Court.

### II.
### THE "HEINOUS, CRUEL, OR DEPRAVED" FACTOR

*A.*      ***The factor is constitutioally vague.***

The "especially heinous, cruel or depraved" aggravating factor is unconstitutionally

vague.  Walton v. Arizona, 497 U.S. 639, 654 (1990).  Because of this, 18 U.S.C. § 3592(c)(9)

limits the reach of that factor to crimes that were "heinous, cruel or depraved in that [they]

involved torture or serious physical abuse to the victim." Walton, 497 U.S. at 654.  However,

even having this limitation in the jury charge cannot save the aggravating factor, for without a

more specific definition, even these additional modifying phrases would likely apply to every

murder except those in which loss of consciousness and/or death occur instantaneously. Such a limitation amounts to no limitation at all, which is constitutionally impermissable.

In order for a statutory aggravating factor to be valid it must "genuinely narrow the class of persons eligible for the death penalty." Zant v. Stephens, 462 U.S. 862, 877-88 (1983) (stating that the "statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty"). An aggravating circumstance which appropriately narrows the class of offenders eligible for the death penalty must be present in some murder cases but not in others. In Godfrey v. Georgia, 446 U.S. 420, 428-29 (1980), the Court held that an aggravating factor similar to the "heinous, cruel, or depraved" factor – "outrageously or wantonly vile, horrible and inhuman" – was invalid because "a person of ordinary sensibility could fairly characterize almost every murder" in this way. Only an aggravating factor which on its face has a "commonsense core meaning . . . that criminal juries should be capable of understanding," Tuilaepa v. California, 512 U.S. 967, 975 (1994), and that distinguishes cases from each other, meets the constitutional test.

Under the foregoing principles, the "heinous, cruel, or depraved" aggravating factor, even with the modifying phrase, "in that it involved torture and serious physical abuse," cannot save this factor. Without extensive definition, it is clear that the words "especially heinous, cruel, or depraved" could be used by jurors to characterize any murder. Walton, 497 U.S. at 654; cf. Godfrey, 446 U.S. at 428-29. The "torture" and "serious physical abuse" elements of this factor could be applied nearly as broadly without extensive definition. Although the Supreme Court

has suggested that these concepts might be appropriately limited, it has not determined that these words standing alone can provide enough limitation. As we have shown, they do not.

In Godfrey, the Court noted that in some cases the Georgia courts had limited this factor to mean "torture" or "serious physical abuse" amounting to "aggravated battery," which in Georgia consisted of "maliciously caus[ing] bodily harm to another by depriving him of a member of his body, or by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof." Godfrey, 446 U.S. at 432-33 & n.13. The Court's opinion did not reach the validity of such a factor, since it had not been applied in Godfrey, and did not say that the terms "torture" or "serious physical abuse" alone would have been sufficiently specific to survive constitutional scrutiny.

In Maynard v. Cartwright, 486 U.S. 356, 357 (1988), the Court noted the possibility that the Oklahoma courts had sufficiently limited the otherwise unconstitutionally vague "heinous, atrocious and cruel" aggravating factor by limiting its meaning to what the Court characterized as "torture or serious physical abuse." However, the Court merely remanded the case to state court and did not explore the actual nature of the limitation it described in this way. In fact, the limitation applied by the Oklahoma courts, while characterized in shorthand as a "torture or serious physical abuse" factor, is much more specific and limited than that. The factor has been limited to require actual "evidence of conscious physical suffering of the victim prior to death." Stafford v. State, 832 P.2d 20, 23 (Okla. Crim. App. 1992).[1] This goes well beyond the mere

---

[1]    See also Slaton v. State, 680 So. 2d 879, 903-04 (Ala. Crim. App. 1995), aff'd, 680 So. 2d 909 (Ala. 1996), cert. denied, 519 U.S. 1079 (1997) ("The emphasis is on the manner of the killing . . ."); State v. Ross, 230 Conn. 183, 646 A.2d 1318, 1362 (1994), cert. denied, 513 U.S. 1165 (1995) (holding that when examining whether this statutory aggravator applies, the focus is on the manner in which death is inflicted); State v. Fain, 116 Idaho 82, 774 P.2d 252, 269, cert. denied, 493 U.S. 917 (1989) (same); State v. Victor, 235 Neb. 770, 457 N.W.2d 431, 433 (1990) (holding this aggravator is limited to cases of "torture, sadism, or the imposition of extreme suffering . . . or where the murder was *preceded* by acts performed for the satisfaction of inflicting either mental or

requirement of "serious physical abuse" in 18 U.S.C. § 3592(c)(9), which could arise from the fact of any killing, to require "conscious" "suffering" that occurs "prior to death." While such a meaning could be associated with "torture," even "torture," without explanation, sweeps far too broadly.

In <u>Walton</u>, the Court noted that a "physical abuse" construction of the notion of "cruelty" in the Arizona statute was proper since the state courts had limited the definition to "suffering of the victim [that] was intended by or foreseeable to the killer." <u>Walton</u>, 497 U.S. at 654. As in the earlier cases, the phrase "serious physical abuse" means something more than the serious physical abuse inherent in any killing. It requires at least a showing that the victim experienced "suffering," which must by definition occur before death and when the victim is conscious, and that this suffering was "intended by or foreseeable to" the killer.

The questions of applicability left open by the statutory language of the "heinous, cruel, or depraved" factor, even with "torture" and "serious physical abuse" added, are best illustrated by examining the limiting instruction mentioned by the Fifth Circuit in both <u>Jones</u>, 132 F.3d at 249-50, and <u>United States v. Hall</u>, 152 F.3d 381 (5th Cir. 1998). The instruction given in those cases was the following:

> To establish that the defendant killed the victim in an especially heinous, cruel, or depraved manner, the government must prove that the killing involved either torture or serious physical abuse to the victim. The terms "heinous, cruel, or depraved" are stated in the disjunctive: any one of them individually may constitute an aggravating circumstance warranting imposition of the death penalty. "Heinous" means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as set apart from other killings. "Cruel" means that the defendant intended to inflict pain upon the victim in addition to killing the victim. "Depraved" means that the defendant

_____

physical pain or that pain existed for any prolonged period of time.") (emphasis added).

relished the killing or showed indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim.

"Torture" includes mental as well as physical abuse of the victim. In either case, the victim must have been conscious of the abuse at the time it was inflicted. Furthermore, the defendant must have specifically intended to inflict severe mental or physical pain or suffering upon the victim, apart from killing the victim. "Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. Serious physical abuse--unlike torture--may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted. However, the defendant must have specifically intended the abuse apart from the killing.

Pertinent factors in determining whether a killing was especially heinous, cruel, or depraved include, but are not necessarily limited to, the following: infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; needless mutilation of the victim's body; senselessness of the killing; and helplessness of the victim. The word "especially" should be given its ordinary, everyday meaning of being highly or unusually great, distinctive, peculiar, particular, or significant. Hall, 152 F.3d at 414.

This highly detailed instruction contains critical elements that would give the "heinous, cruel, or depraved" factor a chance of passing the constitutional test, if it were possible to determine which of these elements Congress intended to have the courts use to explain the application of the factor to juries. One element in the charge listed above is that the defendant have an intent to inflict suffering upon the victim that is different from and in addition to the intent to kill. Thus, "'[c]ruel' means that the defendant intended to inflict pain upon the victim in addition to killing the victim." "'Heinous'" and "'depraved'" both rest on the infliction of torture or serious physical abuse. To inflict "torture," "the defendant must have specifically intended to inflict severe mental or physical pain or suffering upon the victim, apart from killing the victim." And, to inflict "serious physical abuse," "the defendant must have specifically

intended the abuse apart from the killing." In addition, for "torture" to be present, "the victim must have been conscious of the abuse at the time it was inflicted." By contrast, "serious physical abuse" "may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted."

This aggravating factor is invalid because Congress has not placed sufficient limitations upon the words "heinous," "cruel," "depraved," "torture" or "serious physical abuse." Moreover, none of the limitations described in the previous paragraph rests within the "common-sense core meaning [of these terms] ... that criminal juries should be capable of understanding." Tuilaepa, 512 U.S. at 975. Congress has not specifically required an aggravated assault as in Georgia, actual conscious suffering, acts occurring before death, the specific intent to cause the "torture" or "abuse," simple foreseeability, or even no intent at all. Moreover, Congress has not indicated which of these numerous limitations it would choose. Where neither the words of the statute themselves nor the legislative history of the provision indicates what limitation Congress would place upon them, it is not for the courts to invent a limiting construction. Federal Election Comm'n v. NCPAC, 470 U.S. 480, 499 (1985) (where there is "no indication in the statute or the legislative history" that supports the application of any particular limiting construction, court may not formulate one). Thus, this impermissably vague aggravating factor is not redeemable by limiting instructions because Congress has not given any guidance in formulating such limiting instructions.

**B.      The factor is impermissibly broad, and thus violates the Fifth and Eighth Amendments to the United States Constitution.**

Defendant Bernard objects to the definitional paragraph of "serious bodily injury," and requests the following instruction:

> "Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. Serious physical abuse, like torture, requires that the victim be conscious of the abuse at the time it was inflicted. In addition, the defendant must have specifically intended the abuse apart from the killing.

It is clear from the autopsy pictures that the bodies were badly burned. However, the evidence presented during the trial indicated that the burning of the vehicle was done to dispose of any potential incriminating evidence, and not to cause deformation to the victims. Therefore, even if Mr. Bernard started the vehicle on fire, there is no evidence that it was "intended as abuse apart from the killings." Thus, Mr. Bernard's actions, if any, do not meet the legal criteria of this aggravating factor.

Even if this factor could arguably apply, the alleged burning of the vehicle took place after both victims were either dead or unconscious. Several states with similar statutory language have held that any post-death/consciousness injury of the victims does not constitute "heinousness." For instance, a defendant's actions after the death, including attempting to conceal the offense, are irrelevant for determining whether the offense was committed in a heinous manner. Jackson v. State, 451 So. 2d 458, 463 (Fla. 1984). In addition, when the victim is unconscious, the circumstances of further acts contributing to his death cannot support a

finding of heinousness.  <u>Jackson</u>, 451 So. 2d at 463.[2]  Similarly, a defendant's actions to dispose

of the body following the murder of the victim did not constitute "heinousness."  <u>People v.</u>

<u>White</u>, 870 P.2d 424, 448 (Colo. 1994).  That court held that "the statutory aggravators evince a

scheme based on events or circumstances arising from the defendant's actions that cause the

death of another person.  To construe the aggravator as encompassing the defendant's acts

occurring the *day after* the acts caused the death of another runs contrary to the statutory

scheme."  <u>White</u>, 870 P.2d at 448 (emphasis original);[3] but see <u>United States v. Hall</u>, 152 F.3d

381, 415 (5th Cir.1998), <u>cert. denied</u>, 119 S.Ct. 1767 (1999).

### III.
### <u>PECUNIARY GAIN</u>

Defendant contends that the "pecuniary gain" aggravating factor is inherently ambiguous.

Thus the "rule of lenity" requires the court to read the factor narrowly to encompass only

"murder-for-hire" or murder for purposes of gaining an inheritance or insurance proceeds.  Thus,

because the Court has expanded the meaning of "pecuniary gain" beyond the meaning that was

the intention of Congress, the charge given is in error.

---

[2]    Only one state which has specifically held that the after-death/consciousness activities of the defendant were proper to consider in this aggravator.  <u>State v. Huffsteler</u>, 322 S.E.2d 110, 125 (N.C. 1984) (holding that this aggravator applies whether or not the victim is alive, or dead, conscious or unconscious.).

[3]    *See also* <u>Slaton v. State</u>, 680 So. 2d 879, 903-04 (Ala. Crim. App. 1995), *aff'd*, 680 So. 2d 909 (Ala. 1996), *cert. denied*, 519 U.S. 1079 (1997) ("The emphasis is on the manner of the killing . . ."); <u>State v. Ross</u>, 230 Conn. 183, 646 A.2d 1318, 1362 (1994), *cert. denied*, 513 U.S. 1165 (1995) (holding that when examining whether this statutory aggravator applies, the focus is on the manner in which death is inflicted); <u>State v. Fain</u>, 116 Idaho 82, 774 P.2d 252, 269, *cert. denied*, 493 U.S. 917 (1989) (same); <u>State v. Victor</u>, 235 Neb. 770, 457 N.W.2d 431, 433 (1990) (holding this aggravator is limited to cases of "torture, sadism, or the imposition of extreme suffering . . . or where the murder was *preceded* by acts performed for the satisfaction of inflicting either mental or physical pain or that pain existed for any prolonged period of time.") (emphasis added); <u>Willingham v. State</u>, 947 P.2d 1074, 1084 (Okla. Crim. App. 1997) (finding that the State must prove must prove conscious serious physical abuse or torture prior to death to satisfy the requirements of their "heinousness" statute).

Provisions of death penalty statutes specifying as an aggravating factor that the murder was committed for "pecuniary gain, for the purpose of receiving or in expectation of receiving anything of monetary value, for remuneration, and the like, have generally been applied in four types of situations:

> 1. Where personal property was physically taken or attempted to be taken from the victim or another immediately before or after the killing; and,

> 2. Where the defendant was allegedly hired or hired another person to commit the murder in exchange for payment or other pecuniary reward or the promise thereof; and,

> 3. Where the victim's death was a necessary prerequisite to the defendant's receipt of a contractual or legal benefit, such as the proceeds of an insurance policy on the victim's life or an inheritance, devise, or legacy; and,

> 4. Where the murder allegedly secured to the defendant some indirect pecuniary advantage, such as relief from a debt.

Thomas M. Fleming, Annotation, *Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstances that Murder Was Committed for Pecuniary Gain, as Consideration of in Expectation of Receiving Something of Monetary Value, and the Like--Post-Gregg Cases*, 66 A.L.R. 4TH 417, § 2[a] (1988).

However, the statute in question limits the application of this aggravator to only two instances:

> 1. The defendant committed the offense as consideration for the receipt of anything of pecuniary value; or,

> 2. In the expectation of the receipt . . . of anything of pecuniary value.

> 18 U.S.C. § 3592 (c)(8) (1999).

When courts interpret statutes, the initial inquiry is the language of the statute itself.

United States v. James, 478 U.S. 597, 604 (1986).  The court is to look at the language of the statute as well as the design, object and policy in determining the plain meaning of a statute.

Crandon v. United States, 494 U.S. 152, 158 (1990); United States v. Mathena, 23 F.3d 87, 92

(5th Cir. 1994). The statute must be read as a whole in order to ascertain the meaning of the language in context of the desired goals envisioned by Congress. See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991).

The most basic rule of construction is that when a statute is unambiguous, it means what it says. In re Collins, 170 F.3d 512, 513 (5th Cir. 1999). A court cannot invent ambiguities where linguistically there are none. Collins, 170 F.3d at 513. In the absence of any ambiguity, the examination is confined to the words of the statute, which are assumed to carry their ordinary meaning. Stanford v. C.I.R., 152 F.3d 450, 456 (5th Cir. 1998). Although statutory language should be interpreted whenever possible according to common usage, some terms may acquire a special technical meaning by a process of judicial construction. Savoretti v. U. S. ex rel. Pincus, 214 F.2d 314, 316 (5th Cir. 1954).

In examining the first portion of the statute, it is clear that Congress intended that this was intended to murder conducted by a "hit man." First, Congress included the "technical term" of consideration. Consideration is a present exchange bargained for in return for a promise. McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 93 (5th Cir. 1995). Thus, the plain meaning of this aggravator is that the defendant must commit the offense because he exchanged his act of "murder"for a promise of something of "pecuniary value." See, e.g., People v Bigelow, 37 Cal. 3d 731, 209 Cal. Rptr. 328, 691 P.2d 994, 1006 (1984).

In fact, at least one court has recognized that this statute describes "a murder-for-hire." United States v. Davis, 904 F. Supp. 554, 558 (E.D. La. 1995); but see Nguyen, 928 F. Supp. at 1535-37; United States v. Walker, 910 F. Supp. 837, 848 (N.D. N.Y. 1995).

# IV.
## THE "SUBSTANTIAL PLANNING AND PREMEDITATION" FACTOR

The statutory aggravating factor of "substantial planning and premeditation" must be struck for three reasons. First, evidence of "planning and premeditation" by itself is patently inadequate to narrow the class of murders eligible for the death penalty, since "almost every murder," Godfrey, 420 U.S. at 428-29, involves some planning and premeditation. Second, the modifying phrase "substantial" does not cure this situation, for, even as it has been construed by the federal courts, it "fails adequately to inform juries what they must find to impose the death penalty." Maynard, 486 U.S. at 361-62. Third, the federal courts have been unable to fashion a construction of "substantial" for this factor that would be both narrowing and specific.

### A.      *"Planning and premeditation" does not genuinely narrow the class of murders subject to the death penalty.*

A statutory aggravating factor must genuinely narrow the class of murders which may be subject to the death penalty. Zant, 462 U.S. at 877; Godfrey, 446 U.S. at 428-29. That is, it must be a factor that is not present in "almost every murder." Godfrey, 446 U.S. at 428-29. But the concepts of "planning and premeditation" are part of every intentional murder; they do not genuinely narrow the class of murders subject to the death penalty. All that planning means is "carrying out plans," and a plan can be just a "method of achieving something." Webster's Third New International Dictionary 1729 ("plan"), 1731 ("planning"). Accordingly, any murder that has a "method," which is to say virtually every one, is planned.

Premeditation provides no greater limitation. Premeditation, of course, was a part of first-degree murder at common law and remains so under federal law. See 18 U.S.C. § 1111 (1999). In its capacity as a common-law element, it required little if anything more than the

decision to kill. <u>See</u> 2 W. LaFave & A. Scott, Substantive Criminal Law, § 7.7 at 237 (1986) ("often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds'"). Even in common usage, "premeditate" means simply "to think on and revolve in the mind beforehand," Webster's Third New International Dictionary 1789, and virtually every murderer "thinks on" his crime before committing it; otherwise, it would not be murder. Thus, these terms do not perform the constitutionally required function of narrowing the class of murderers subject to the death penalty. <u>United States v. Spivey</u>, 958 F. Supp. 1523, 1531 (D. N.M. 1997) ("virtually all murders require some planning and premeditation").[4]

> **B.    The word "substantial" does not provide the clear, specific, and objective standards required to narrow the class of murderers subject to the death penalty and to channel the jury's discretion in doing so.**

Because the terms "planning and premeditation" by themselves do nothing to narrow the class of all murders, this aggravating factor must be struck unless the word "substantially" narrows their meaning in a way that actually "channel[s] the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death." <u>Godfrey</u>, 446 U.S. at 427.

The word "substantial" cannot carry this burden because it provides no guidance to a court or a jury as to "how much" or "what kind of" planning and premeditation are necessary to rise to the level "substantial." The word gives a questioning juror no direction about how much of a plan the defendant must have formulated before committing the offense or how long he must have thought about the crime before committing it. Accordingly, some jurors will require a defendant to have employed some complicated mechanism to produce death and others will find

---

[4]    <u>Spivey</u> ultimately held, following <u>United States v. Tipton</u>, 90 F.3d 861, 896 (4th Cir. 1996), that the word "substantial" adequately performed the narrowing function. This conclusion is not supportable.

"substantial" planning and premeditation in taking the gun out of the desk drawer.  The lack of any "clear," "objective," and "specific" guidance to jurors permits the imposition of the death penalty in an arbitrary way.

For this reason, the Supreme Court of Georgia has held the word "substantial" unconstitutionally vague in circumstances precisely similar to these.  Arnold v. State, 236 Ga. 534, 541, 224 S.E.2d 386, 392 (Ga. 1976).  Georgia statutes at that time provided for an aggravating factor which made any convicted murderer with a "substantial criminal history" eligible for the death penalty.  Arnold, 224 S.E.2d at 392.  The Court held that the word "substantial," which it read to mean "of real . . . importance" was unconstitutionally vague because its application was "highly subjective."  Arnold, 224 S.E.2d at 392; see also Arave v. Creech, 507 U.S. 467, 470 (1993) (holding that the standard must be "'objective'").  The Court noted that the word "substantial" might be sufficiently clear in other contexts, but that "the fact that we are here concerned with the imposition of a death sentence compels a different result." Arnold, 224 S.E.2d at 392.  This, too, is a death penalty case, and the word "substantial" here is no less "subjective" in application than it was in Arnold.  Accordingly, this aggravating factor must be stricken.

### C.    The opinions of courts which have upheld this factor show that it fails to narrow the class of murderers subject to the death penalty, is unconstitutionally vague, or both.

The Circuits that have upheld the constitutionality of this provision have construed "substantial" in a way that in fact does not narrow the term as required by the Eighth Amendment.  Moreover, under their constructions, the Circuit Courts have not shown that, even as they construe the word "substantial," it is not unconstitutionally vague.

The initial problem with the judicial construction of this aggravator is that it does not even perform the required narrowing function. Accordingly, even as construed, the term "substantial planning and premeditation" violates the Fifth and Eighth Amendments. In McCullah, 76 F.3d at 1110, for example, the court upheld this aggravating factor on the ground that "substantial" means simply "ample for commission of the crime"; ample, of course, means anything "more than adequate." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 74. And the Fourth Circuit, in Tipton, 90 F.3d at 896, agreed, holding that "substantial" meant only "more than the minimum amount sufficient to commit the offense."[5] Under these constructions of the term "substantial," any murder, other than one undertaken with the "minimum" possible planning and premeditation, would be subject to the death penalty. But this construction of the term cannot be constitutional, for it would permit jurors to impose the death penalty for an amount of planning and premeditation that barely exceeds what is essential to commit any homicide, indeed for an amount present in "almost every murder." Godfrey, 446 at 428-29. Since the word substantial can be applied in this impermissible way, and has been so applied by an appellate court,[6] it violates the Eighth Amendment, and this Court must strike this aggravating factor.

Moreover, the limits of the word "substantial" are so vague that it is likely to be applied with great inconsistency, even potentially amounting to arbitrariness. The Circuit Court cases do not explain why the concept "substantial," even as they construe it, is not subject to an arbitrary application. Their construction of the word leaves it entirely to the discretion of jurors to decide

---

[5]    Tipton and McCullah also used the word "considerable," which Tipton explained means "more than merely adequate," as a synonym for "substantial." Tipton, 90 F.3d at 896; McCullah, 76 F.3d at 1111. This term is the equivalent of "ample" and "more than the minimum amount sufficient."

[6]    Tipton, 90 F.3d at 895



what the "minimum" amount of planning and premeditation for a murder is. It also leaves entirely to the jurors the determination of how much more than this minimum is necessary to rise to a "substantial" level. Some juries will doubtless feel, like the Fourth Circuit, that anything more than the absolute minimum will permit a verdict of death; others may require truly careful and complex planning and lengthy forethought before death will be imposed. Nothing in the word, however, says which of these interpretations would be correct. The Eighth Amendment requires that an aggravating factor "channel" the jurors' discretion; this factor does not.

This vagueness is further demonstrated by the fact that the standard the courts have derived from it deviates widely from other common usages of the word "substantial." The Supreme Court itself has noted that the meaning of a "substantial" amount of something is "a large degree" of that thing. Victor v. Nebraska, 511 U.S. 1, 19 (1994). But it is not ordinary or natural usage to call any amount of something, even an amount barely above the minimum, a "large degree" of that thing. Indeed, amounts close to the minimum would most plausibly be called a "small degree." Moreover, the standard adopted by cases such as Tipton is quite similar to "more than minimal planning" under the Sentencing Guidelines. See U.S.S.G. § 1B1.1(f) ("More than minimal planning" is "more planning than is typical for commission of the offense in a simple form").

But this dilution of the word "substantial" is unwarranted, for "substantial" plainly means a greater amount than does "more than minimal." See McCarthy v. Manson, 554 F. Supp. 1275, 1306 (D. Conn. 1982) (Cabranes, J.) (prejudice "while not substantial" was, nevertheless, "more than minimal"), aff'd, 714 F.2d 234 (2d Cir. 1983). It seems clear that the word "substantial" must fall well above such words as "more than the minimum amount sufficient," "ample,"

"minimal," or "more than minimal," on any scale of magnitude, but how far above has not, and cannot, be described in clear terms. The very inability of the courts to fashion a specific constitutional definition of this factor shows that its meaning remains a "highly subjective" matter for each juror, <u>Arnold</u>, 224 S.E.2d at 392, and that it is unconstitutionally vague.[7]

Some states with similar aggravating factors have construed them in a way that does much to eliminate this vagueness. In Florida, the State Supreme Court, when faced with an aggravating factor requiring "cold, calculated, and premeditated" actions by a defendant, held the factor unconstitutionally vague on its face. <u>Jackson v. State</u>, 648 So. 2d 85, 87 (Fla. 1994). The Court required that in the future, juries be told that they must determine that "the killing was the product of cool and calm reflection" and "that the defendant had a careful plan or prearranged design to commit murder before the fatal incident." <u>Jackson</u>, 648 So. 2d at 89. But Congress has not limited the word "substantial" in the aggravator in any way, or indicated how it would do so. Accordingly, this Court may not provide a limiting construction for it.

It is no answer for the Government to say that the word "substantial" has been held not vague in other contexts. The Georgia Supreme Court in <u>Arnold</u> explained one reason: "[T]he fact that we are here concerned with the imposition of a death sentence compels a different result." <u>Arnold</u>, 224 S.E.2d at 392. <u>See also</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 994 (1991) (Scalia, J.) (noting "several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides"). A second reason is that the

---

[7]        One case has, without much discussion, held this factor constitutional because there is a "common sense core" of meaning to "substantial." <u>United States v. McVeigh</u>, 944 F. Supp. 1478, 1490 (D.Colo. 1996). But this is not so. It is belied in the first place by the inability of courts to say what that core is. Moreover, this overlooks the fact that if there is a "common sense core" to the term, that core itself is apparently unconstitutional. As that "core" was construed by two Circuit Courts of Appeal, the Fourth and Tenth, it makes the term apply to conduct that is present in "almost every murder," and therefore violates the Eighth Amendment.



Eighth Amendment requires the word "substantial" to perform a constitutionally required "narrowing" function not present in non-capital cases. Thus, because the word "substantial" must perform different, and constitutionally more significant, functions in a capital case than it does in non-capital cases, the non-capital cases, which do not take into account Eighth Amendment interests, cannot govern here.

The Eighth Amendment interests in this case require both that the concept of "plann[ed] and premeditated" be limited, to narrow the class of death-eligible murders, and that it be limited in a clear, specific, objective way. Simply tacking the word "substantial" on to the phrase accomplishes neither requirement, and this aggravating factor accordingly violates the Fifth and Eighth Amendments.

## V.
## THE 1994 FEDERAL DEATH PENALTY STATUTE IS UNCONSTITUTIONAL IN PERMITTING THE USE OF NON-STATUTORY AGGRAVATING FACTORS

The 1994 death penalty statute permits the government to rely on both statutory and non-statutory aggravating factors as the basis for seeking the death penalty. In federal homicide cases, 18 U.S.C. § 3592(c) specifically enumerates 16 statutory aggravating factors that may be considered by the sentencer in a penalty phase. It then adds that the sentencer may consider, in weighing aggravating against mitigating factors other aggravating factors not set forth in the statute. There are no criteria specified for such factors, and the statute gives extremely broad latitude for including them in the notice, stating that the sentencer may consider "<u>any</u> other aggravating factor for which notice has been given." 18 § 3592(c) (1999) (emphasis added). For the following reasons, the non-statutory aggravating factors are invalid.



**A.**    ***Non-statutory aggravating factors do not limit and guide the discretion of the jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth amendments.***

The Eighth Amendment requires that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). In particular, the Supreme Court has explained that while sentencers may not be prevented from considering any relevant information offered as a reason for sparing a defendant's life, the decision to impose death must be guided by "carefully defined standards that must narrow a sentencer's discretion." McClesky v. Kemp, 481 U.S. 279, 304 (1987). By simultaneously promoting both individualized sentencing decisions and uniform application of the death penalty, these two principles are designed to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." Furman v. Georgia, 408 U.S. 238, 313 (1972) (White, J., concurring).

In contrast, construing § 3592(c) as authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital proceedings precisely the uncertainty and disparate results that Furman found to violate the Eighth Amendment. The only guidance that the statute gives is really no guidance at all: that the prosecutor may give notice of, and the jury may consider, "any ***other aggravating*** factor." Beyond the requirements that a factor be "other" and be "aggravating," the statute provides no guidance to prosecutors in determining how to select or define non-statutory aggravating factors in a particular case. Under such a scheme, the factors on which the sentencer must base its decision are not limited to "clear

and objective" criteria, <u>Gregg</u>, 428 U.S. at 198, 202, but are restricted only by the imagination of the prosecutor. The statute's standard-less procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

The arbitrariness this procedure injects into the weighing process mandated by the statute, <u>See</u> 18 U.S.C. § 3593(3), is clear. The Government's unconstrained ability to allege various non-statutory aggravators injects impermissible randomness into the process. To permit different prosecutors, in each individual case, to create and select the factors that may be placed on "death's scale," injects the very arbitrariness and capriciousness into the sentencing process that <u>Furman</u> sought to eradicate.

### B. Congress's delegation to the executive branch of the power to define aggravating factors represents an impermissible delegation of legislative power in violation of the separation of powers principle and the non-delegation doctrine.

Section 3592(c) affords prosecutors virtually limitless discretion to identify and define non-statutory aggravating factors, without any clear guidance as to how such discretion should be exercised. In doing so, this provision constitutes an unconstitutional delegation of legislative power to the executive branch[8] and violates Article I, § 1 of the United States Constitution, which provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." The Supreme Court has interpreted this constitutional provision to prohibit Congress from delegating its legislative power to another branch of government. "[T]he non-delegation doctrine originated in the principle of separation of powers that underlies our tripartite system of Government." <u>Mistretta v. United States</u>, 488 U.S. 361, 371 (1989). While Congress

---

[8]    The Supreme Court has never addressed the use of non-statutory aggravators in a federal prosecution or decided whether their use in a federal statute violates federal separation of powers principles.



may obtain assistance from other branches by delegating certain enforcement and policymaking

authority, Congress must "lay down by legislative act an intelligible principle to which the person

or body authorized to [exercise the delegated authority] is directed to conform." Mistretta, 488

U.S. at 372 (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).

Courts have split on the threshold issue whether the prosecutor's power to define

non-statutory aggravating factors under the federal death penalty statutes constitutes a delegation

of legislative power to the executive branch. Compare McCullah, 76 F.3d at 1106 (holding that

the prosecutorial discretion to promulgate non-statutory aggravating factors is a permissible

delegation of power by the legislative to the executive branch); Tipton, 90 F.3d 861, 895

(assuming delegation of power, delegation is permissible); Pretlow, 779 F. Supp. at 767 (holding

that this was a permissible delegation of legislative power), with Walker, 910 F. Supp. at 850-51

(holding that the legislation is not a delegation of legislative power); United States v. Pitera, 795

F. Supp. 546, 560 (E.D. N.Y. 1992) (same).

The submission of aggravating factors to the jury clearly plays a role in defining what

conduct will justify imposing the death penalty, since only information categorized as an

aggravating factor may be weighed against mitigating factors by the jury in making its sentencing

determination. But defining what constitutes criminal conduct and setting appropriate sanctions

for that conduct is a quintessential legislative decision. See Whalen v. United States, 445 U.S.

684, 689 (1980). "[S]pecifying the circumstances under which someone may be put to death must

. . . be a function of the elected representatives of the people." United States v. Harper, 729 F.2d

1216, 1225 (9th Cir. 1984). Thus, conferring authorization to define non-statutory aggravating

factors is clearly a delegation of power.

Moreover, this delegation is not governed by any intelligible limiting principle. McVeigh, 944 F. Supp. at 1486 ("[c]ongress did not impose policy limitations or give clear guidance to prosecuting attorneys" in selecting aggravating factors). The statute sets forth no parameters to bind the discretion of the prosecutor in fashioning non-statutory aggravating factors. The only requirement is that the factors must be "other" than the rest of the aggravating factors alleged or the elements of the underlying crime and must be "aggravating." The statute fails to identify any policy goals or general considerations that could serve to confine unchecked prosecutorial discretion in choosing such factors. Rather, § 3592(c) invites the prosecution to rewrite the statute's list of factors to justify the imposition of a death sentence on a case-by-case basis. Once again, this permits the vagaries of prosecutorial decision-making to affect the death penalty process; in cases with prosecutors seeking as many justifications as possible to submit to a jury, marginal factors such as the "continuing danger" and "lack of remorse" alleged here will be included in the death notice. In other cases, with more cautious prosecutors, such marginal claims will be omitted. Congress has placed no serious limit on the government's capacity to act in an arbitrary manner.

The statute thus permits the government to increase the circumstances in which the death penalty may be imposed beyond those articulated by Congress by adding sufficient non-statutory aggravating factors to tip the scales in favor of death, or even by presenting evidence of a non-statutory aggravating factor that Congress intended to exclude from the capital sentencing.

The flaws in Congress' delegation of death penalty powers are apparent when contrasted to the delegation of discretion to formulate sentencing guidelines held constitutional in *Mistretta*. There, Congress had clearly delineated the goals to be achieved, the policy behind the goals, and

the boundaries of the authority delegated.  Congress specified mandatory ratios among sentences

for related crimes, listed specific guidelines that the commission was to consider in categorizing

offenses, and directed the commission to use current average sentences as a starting point for its

discussion.  Mistretta, 488 U.S. at 374-77.  Under the federal death penalty statute, however,

Congress has provided no guidance or limitations to channel the discretion of prosecutors in their

selection of potential aggravating factors.

      The constitutional deficiency of this system is shown by the very cases that purport to

uphold it.  They do not articulate any guiding principle by which prosecutors are bound when

choosing non-statutory aggravators.  One court, for example, claims that the prosecutor is

limited" by the directive that the factor be "aggravating"[9] and "constrained" by the requirement

of "notice."  McCullah, 76 F.3d at 1106.  Another court has held that the limitation is that the

factors must be limited to the "circumstances of the crime or the characteristics of the defendant"

coupled with "judicial scrutiny."  Pretlow, 779 F. Supp at 767.  But this is to say, in essence, that

there is no limitation at all.  The mere term "any other aggravating factor" permits a prosecutor to

charge virtually anything relevant to the case, and the requirement that it concern the

"circumstances of the crime or the characteristics of the defendant" adds nothing to the relevance

criterion that exists in any event.  The other so-called limitations -- notice and judicial scrutiny --

do not limit the delegation at all, for they place no constraint on the content of the factor that the

prosecutor can invent.  If there is no substantive limit, "notice" and "judicial scrutiny" cannot

help a defendant, for the prosecutor will simply give notice of anything he or she deems

appropriate, and the "judicial scrutiny" will reveal that there is little substantive limitation on the

---

[9]     The statute in fact requires that the factor be "other" than the crime itself or the remaining
aggravating factors listed, as well as that it be aggravating.

OBJECTIONS TO THE PENALTY PHASE CHARGE WITH AUTHORITIES                        PAGE 22

prosecutor's power to do so.  The delegation of power to a prosecutor to create new aggravating

factors is simply not limited by any "intelligible principle."

Finally, courts have argued that the use of non-statutory factors is necessary to permit the

"individualized sentencing" the Eighth Amendment contemplates.  But the very statute Congress

enacted limits "individualized sentencing" to some degree, by requiring that the decision for or

against death be made by balancing a limited number of factors, one against the other.[10]  Because

the unrestricted delegation of power to the prosecutor permits capriciousness to affect the crucial

weighing of factors for or against life, that delegation cannot be upheld in the name of

individualized sentencing.  Thus, because the statute that "allows" the jury to consider these is

unconstitutional, Defendant Bernard objects to their inclusion into the Court's charge.

## VI.
## FUTURE DANGEROUSNESS

The Court has charged that the jury may consider Defendant Bernard's alleged future

dangerousness as an aggravating factor.  Defendant concedes that the Supreme Court has

approved the jury's consideration of future dangerousness during the penalty phase of a capital

trial, "recognizing that a defendant's future dangerousness bears on all sentencing determinations

made in our criminal justice system."  See California v. Ramos, 463 U.S. 992, 1003, n.17 (1983)

(explaining that it is proper for a sentencing jury in a capital case to consider "the defendant's

potential for reform and whether his probable future behavior counsels against the desirability of

his release into society"); Jurek v. Texas, 428 U.S. 262, 275 (1976) (joint opinion of Stewart,

---

[10]        Other schemes, such as the one upheld in Zant, 462 U.S. at 870-80, are quite different.  The
Georgia scheme in Zant simply gave the jury the discretion, after one statutory aggravating circumstance was found,
to consider "all the facts and circumstances of the case" to determine whether the death penalty should be imposed.
Id. at 872.  In Zant, therefore, the jury does not engage in any "weighing" of factors and is not affected by the
prosecutor's arbitrary choice to select one factor or another for consideration.  Because the federal system requires
weighing of specified factors, the manner in which those factors are chosen is critical.

Powell, and Stevens, JJ.) (noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose").

### A.    Including future dangerousness as an aggravating factor violates the implied intent of Congress.

Many capital sentencing schemes provide that evidence that a defendant may be a danger in the future may be used as an aggravator.  See, e.g., Jurek, 428 U.S. at 274-76 (upholding use of future dangerousness provision in Texas statute).  Because Congress chose not to include such a "future dangerousness" provision within the enumerated aggravating factors, Congress intended that this general factor not be considered as a separate aggravating factor.  Cf. West Coast Truck Lines v. Arcata Comm. Recycling, 846 F.2d 1239, 1244 (9th Cir. 1988) ("[w]hen some statutory provisions expressly mention a requirement, the omission of that requirement from other statutory provisions implies that Congress intended both the inclusion of the requirement and the exclusion of the requirement").

Instead of adopting a general "future dangerousness" provision, Congress chose to set forth several specific statutory aggravating factors regarding the defendant's past conduct that are closely correlated with a defendant's likelihood of committing violent crimes in the future. Those factors include a prior felony conviction involving use or attempted or threatened use of a firearm under § 3592(c)(2), a prior conviction for an offense carrying a maximum penalty of life imprisonment or death under § 3592(c)(3), two or more prior felony convictions for offenses involving serious bodily injury or death under § 3592(c)(4), two or more prior felony convictions for distributing a controlled substance under § 3592(c)(10), and a prior conviction for sexual assault or child molestation under § 3592(c)(15).  The reason for inclusion of these criminal

history factors was that the commission of prior crimes correlates strongly with the likelihood of

recidivism, or a defendant's "continuing danger."  See U.S.S.G. Chapter 4 -- Part A, Introductory

Commentary (criminal history factors are "consistent with the extant empirical research assessing

correlates of recidivism and patterns of career criminal behavior").  Since Congress was

doubtless concerned with the future dangerousness of violent offenders, and since it adopted

several very specifically limited aggravating factors directly related to this notion, but refrained

from using such a vague notion as the defendant's "continuing danger" as a factor to be weighed

separately, it clearly did not intend that a non-statutory factor of the defendant's "continuing

danger" be permissible.

> **B.**    *The "inclusion of the "factor of "low rehabilitative potential" as a subpart of "future dangerousness" must be stricken.*

If included, Defendant Bernard objects to this aspect of the future dangerousness non-

statutory aggravating factor should be dismissed because it is proper only in rebuttal of

mitigation, not as aggravator, and  is unconstitutionally vague.

> *1.*    *It is unconstitutionally vague.*

The purpose of aggravating factors is to narrow the class of death-eligible persons.

Lowenfield v. Phelps, 484 U.S. 231, 244-45 (1988).  To be valid, a statutory aggravating factor

must "genuinely narrow the class of persons eligible for the death penalty."  Zant v. Stephens,

462 U.S. 862, 877-88 (1983) ("statutory aggravating circumstances play a constitutionally

necessary function at the stage of legislative definition: they circumscribe the class of persons

eligible for the death penalty" (emphasis supplied)).  The basic requirement of an aggravating

circumstance in performing the narrowing function is that a sentencer be readily able to

determine that the factor is present in some cases and not in others.

In <u>Godfrey v. Georgia</u>, 446 U.S. 420, 428-29 (1980), the Court held an aggravating factor similar to the "heinous, cruel, or depraved" factor – "outrageously or wantonly vile, horrible and inhuman" – was invalid because "a person of ordinary sensibility could fairly characterize almost every murder" in this way.  Only if an aggravating factor on its face has a "common-sense core meaning . . . that criminal juries should be capable of understanding," <u>Tuilaepa v. California</u>, 512 U.S. 967, 975 (1994), and that distinguishes cases from each other, does such a factor meet the constitutional test.

This is clearly not met here.  The Government must demonstrate that a murder in a non-capital case is more "reformable" than a capital defendant, in that the jury must determine that the factor is present in some cases and not in others.  There is no evidence of this point, and this issue cannot be submitted to the jury.

Furthermore, the aggravator begs the question: "Rehabilitative potential for what?" <u>Davis</u>, 912 F. Supp. at 944, 946.[11]  Defendant asks the same question here.

The low potential for rehabilitation factor should not be used at all as an aggravating factor, even as part of another factor, because it is not a valid reason to sentence a person to death, rather than life imprisonment.  A defendant's potential for rehabilitation and adjustment has been held to be a proper mitigating factor.  <u>See</u> <u>Hitchcock v. Dugger</u>, 481 U.S. 393 (1987) (Florida statute errs in failing to permit consideration of defendant's non-statutory mitigating evidence, including potential for rehabilitation).  Evidence of a defendant's lack of rehabilitative potential would be admissible in the appropriate case to rebut a defendant's mitigating factor. But the absence of mitigating evidence of defendant's potential to be rehabilitated cannot also be

---

[11]    The Davis court held that the "low rehabilitative" factor is properly combined with future dangerousness, but it is not appropriate as a separate freestanding factor.  <u>Davis,</u> 912 F. Supp. at 946.



used as a basis for finding an aggravating factor. See, e.g, People v. Siripongs, 45 Cal.3d 548,

583, 247 Cal. Rptr. 729, 750, 754 P.2d 1306 (1988) (absence of mitigating evidence does not

constitute an aggravating factor), cert. denied, 488 U.S. 1019 (1989).[12]

Indeed, under federal law, Congress has declared that imprisonment is not intended to

promote rehabilitation. 18 U.S.C. § 3582(a) (1999) ("recognizing that imprisonment is not an

appropriate means of promoting correction and rehabilitation"). Given that rehabilitation is not a

proper purpose of imprisonment, it necessarily follows that a defendant's "low potential for

rehabilitation" cannot be a valid justification for not choosing a sentence of life imprisonment.

The prosecution's attempt to classify a matter that is irrelevant to the life or death decision as an

aggravating factor violates the Eighth Amendment and Due Process Clause. See Zant, 462 U.S.

at 885 (death penalty statute may not "attach . . . the aggravating label to factors that are

constitutionally impermissible or totally irrelevant to the sentencing process").

Finally, even if this factor were not invalid for other reasons, it is unconstitutionally

vague. What does "low potential" for rehabilitation mean? How does it differ from "medium"

potential? "Low potential" fails to provide sufficiently clear, objective standards to guide the

jury in its penalty determination and pass constitutional scrutiny. Similarly, what does

"rehabilitation" encompass? To be a model citizen, to not violate the laws, or to not kill again?

Accordingly, the low potential for rehabilitation must be stricken as a part of the future

dangerousness factor.

---

[12]     In an analogous context, the government may be able to present evidence that a defendant did not
suffer from any mental illness to rebut a defendant's purported mental health mitigating factor, but certainly could
not use evidence of the defendant's clean bill of mental health as an aggravating factor. See Zant, 462 U.S. 862
(noting that it would be constitutionally impermissible to "attach[] the 'aggravating' label . . . to conduct that
actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness").

2.    *The "lack of remorse" factor violates Defendant's Fifth and Sixth amendment rights and permits unreliable jury findings.*

The Government has cited no instance in which Mr. Bernard affirmatively demonstrated any lack of remorse.  On its face, therefore, this factor is based solely upon his failure to admit that he committed the offense charged, his silence in the face of the government's accusations, and his failure to make any expressions of remorse.  Under these circumstances, the "lack of remorse" aggravating factor violates both Mr. Bernard' Fifth Amendment right to remain silent and his Sixth Amendment right to trial because it imposes an impermissible penalty upon the exercise of those rights.  Lesko v. Lehman, 925 F.2d 1527, 1543-45 (3d Cir. 1991).  Moreover, this factor violates the Eighth Amendment because it is inherently unreliable.

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . "  A criminal defendant thus has a right to remain silent in the face of accusation, and he may not punished for exercising this right.  Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977) (stating that the Government "may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself"); Malloy v. Hogan, 378 U.S. 1, 8 (1964) (holding that a defendant has right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence").  Even so small a burden upon exercising Fifth Amendment rights as a prosecutor's comment on the accused's silence is forbidden.  Griffin v. California, 380 U.S. 609, 615 (1965).  Penalties on the exercise of the Sixth Amendment right to a "speedy and public trial" are also impermissible.  The Second Circuit has applied the same analysis in finding impermissible burdens on Sixth Amendment trial rights as is applied in the Fifth Amendment context.  Agard v. Portuondo, 117 F.3d 696, 709-10 (2d Cir.

1997) ("Griffin [v. California, 380 U.S. at 614] principles are appropriately applied to [a case involving Sixth Amendment rights]").

In a capital case, permitting the jury to weigh the accused's lack of remorse against him, in deciding whether to impose the death penalty, substantially penalizes the exercise of his Fifth Amendment right to remain silent and Sixth Amendment right to trial. To make a sincere showing of remorse, after all, a defendant must first admit guilt of the capital offense with which he is charged and thereby waive his privilege against self-incrimination, in essence pleading guilty. To permit "lack of remorse" — the absence of an admission of guilt and expression of contrition for it -- to be a factor weighing in favor of the death penalty directly permits the jury to punish the defendant for exercising his right not to admit guilt and go to trial. To burden a defendant's exercise of his rights under the Fifth and Sixth Amendments by making that exercise a basis for imposing the death penalty clearly violates the constitution. United States v. Jackson, 390 U.S. 570, 582-83 (1968); see also Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992) (en banc) (holding that the "lack of remorse" jury argument is a direct comment on the defendant's failure to testify.).

This conclusion is entirely consistent with the general sentencing law in the federal courts. Insofar as remorse is considered in sentencing, it can, under current law, be the basis for leniency, but not for increasing punishment. The Second Circuit has clearly held, for example, that it is error for a court to enhance a defendant's punishment because he did not admit his guilt and went to trial. United States v. Cruz, 977 F.2d 732, 733-34 (2d Cir. 1992). Furthermore, a lack of remorse by itself is not a basis for an upward departure. United States v. Whitehead, 912 F.2d 448, 452 (10th Cir. 1990) (holding that a lack of contrition "should not normally be a factor

justifying a departure"). The court may, however, grant leniency for admissions of guilt

evidencing sincere remorse by reducing punishment below the degree that would otherwise be

imposed on the basis of "acceptance of responsibility." U.S.S.G. § 3E1.1. See United States v.

Parker, 903 F.2d 91, 105-06 (2d Cir. 1990); United States v. Cojab, 978 F.2d 341, 343 (7th Cir.

1992). Thus, remorse, the expression of contrition for the commission of a crime, may be

considered in sentencing only as a factor permitting the reduction of a sentence below the level

that would otherwise have been imposed.  Its absence may not be considered as a basis for

increasing a sentence, much less for imposing the penalty of death.  Pope v. State, 441 So.2d

1073, 1078 (Fla. 1984) (stating that because of the danger to exercise of the defendant's

constitutional rights, "[a]ny convincing evidence of remorse may properly be considered in

mitigation of the sentence, but absence of remorse should not be weighed either as an

aggravating factor nor as an enhancement of an aggravating factor.")[13]

Consideration of "lack of remorse" is unconstitutional as well for its disproportionate

impact on innocent defendants.  A defendant who is actually innocent will simply be unable to

express remorse for doing something he did not do.  Nonetheless, he will be more likely to be

sentenced to death since there will always be this factor weighing against him.

This does not mean, of course, that a defendant's remorse plays no role at all in

sentencing or that the government may never argue that the defendant lacks remorse.  For

example, where a court grants a reduction of sentence for "acceptance of responsibility," it may

determine the degree of that reduction based on an assessment of the relative level of the

---

[13]    In light of the serious constitutional concerns underlying use of this aggravating factor, it is not
surprising that a number of states prohibit its use.  See, e.g., State v. Brown, 320 N.C. 179, 198-99, 358 S.E.2d 1, 15
(1987); McCampbell v. State, 421 So.2d 1072, 1075 (Fla. 1982); People v. Thompson, 45 Cal. 3d 86, 123-24, 753
P.2d 37, 59-60, 246 Cal. Rptr. 245, 267-68 (1988).

defendant's remorse.  <u>United States v. Jones</u>, 997 F.2d 1475 (D.C. Cir. 1993); <u>United States v. Jacobson</u>, 15 F.3d 19, 23 (2d Cir. 1994).  Similarly, the government may argue that a defendant lacks remorse to counter his claim that his remorse constitutes a factor in mitigation. But in the circumstances here, the Government may not constitutionally rely on simple lack of remorse to enhance the sentence above its usual level, and it may especially not do so when the enhancement the government seeks is the death penalty.  <u>See</u> <u>Johnson v. Mississippi</u>, 486 U.S. 578, 585 (1988) (a death sentence "cannot be predicated . . . on 'factors that are constitutionally impermissible'").

The "lack of remorse" factor also violates the Eighth Amendment because, in a capital prosecution, there is a "heightened need for reliability," and allowing the jury to place lack of remorse on the scales in favor of death creates an unacceptable risk that the defendant's sentence will not be reliably obtained in violation of the Eighth Amendment and principles of due process of law.  The Florida Supreme Court barred evidence of a defendant's lack of remorse as aggravation in a penalty phase of a capital case to avoid just such "mistaken" sentences.  In doing so, it noted:

> Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence.  This invites the sort of mistake which occurred in the case now before us -- inferring lack of remorse from the exercise of constitutional rights.

<u>Pope</u>, 441 So. 2d at 1078.  In <u>Davis</u>, the court also found lack of remorse an unreliable factor:

> Lack of remorse is a subjective state of mind, difficult to gauge objectively since behavior and words don't necessarily correlate with internal feelings.  In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove guilt beyond a reasonable doubt.



<u>Davis</u>, 912 F. Supp. at 946. Because it is so "ambiguous" and difficult to assess, the lack of remorse factor results in an impermissible degree of unreliability in a death penalty proceeding and is accordingly an impermissible aggravating factor.

Given the constitutional infirmities of this aggravating factor and the unreliability it injects into the proceeding, it is not surprising that a number of courts have stricken it from a capital case. In <u>Davis</u>, for example, the court prohibited the assertion of "lack of remorse" as an "independent nonstatutory aggravating factor" because, on the facts there, it was difficult to assess and undermined the defendant's Fifth and Sixth Amendment rights. <u>Davis</u>, 912 F. Supp. at 246.[14] In <u>Walker</u>, 910 F. Supp. at 855, the court held that highly prejudicial statements that the government claimed showed lack of remorse, but that were subject to competing inferences, could not be the basis for an independent aggravating factor because in this context they were much more prejudicial than probative and because of the "triviality" of the government's arguments, which would "not bear the weight of being singled out . . . and presented to the jury as non-statutory aggravating factors."[15] Finally, in <u>Nguyen</u>, the court denied the motion to strike the aggravator, but cautioned the government that its evidence must be "more than mere silence," must be relevant, must be reliable, and "its probative value must outweigh any danger of unfair prejudice." <u>Nguyen</u>, 928 F. Supp. at 1542.

## VII.
## <u>VICTIM IMPACT EVIDENCE</u>

---

[14]    The court permitted the government to show evidence of lack of remorse, other than the defendant's silence, as part of its "future dangerousness" aggravator. <u>Davis</u>, 912 F. Supp. at 946.

[15]    In these cases, the government had at least specified affirmative acts by the defendant that it claimed evidenced lack of remorse. <u>Davis</u>, 912 F. Supp. at 946 (defendant expressed "jubilation" over the death of the victim); <u>Walker</u>, 910 F. Supp. at 855 (defendant stated in jail that he had "killed the motherfucker").



Defendant objects that this "aggravating factor does not meet the criteria" for admission and, in the alternative, objects to the extent that the factor purports to allow testimony beyond that allowed by the Supreme Court. See Payne v. Tennessee, 501 U.S. 808 (1991).

**Violation of the statute.**

This factor, as charged, must be dismissed because it does not meet the statutory criteria for a non-statutory aggravator -- that it be an "aggravating" circumstance "other" than the crime itself and the remaining aggravating circumstances. 18 U.S.C. § 3592(c) (1999) (jury may find "any *other aggravating* factor for which notice has been given" (emphasis supplied)). All that this alleged aggravating factor cites is that the harm caused by the defendant impacted the families of the deceased. But every murder of a family member causes "severe" harm to the family, and that harm is in every case irreparable, since a death has occurred. This aggravating factor does not add anything to the crime or to the other aggravating factors charged.[16] It is thus, as pled, not even "aggravating" since it does not make this crime any "worse" than every other murder. Webster's Third New International Dictionary 41 (defining "aggravate" to mean "to make worse").

If the system of non-statutory aggravating factors is to be held constitutional at all, it is because the trial court has the authority to keep the factors alleged within the statutory bounds. McVeigh, 944 F. Supp. at 1486 (stating that the trial court has the authority to exercise control over the nonstatutory factors on which the government seeks to rely). The minimum standard

---

[16]    As members of the Supreme Court emphasized in Payne v. Tennessee, it is foreseeable in every murder that the victim will have a family that will suffer harm. See Payne, 501 U.S. at 838 ("Every defendant knows, if endowed with the mental competence for criminal responsibility, ... that the person to be killed probably has close associates, 'survivors,' who will suffer harms and deprivations from the victim's death.") (Souter and Kennedy, JJ., concurring).

that the court should apply is that the factor, as pled, is both "aggravating" and "other" than the factors pled in the indictment or the death notice.  18 U.S.C. § 3592(c) (1999).

Of course, the government is entitled to offer evidence of the harm to the family, of course, to the extent it is relevant.  Payne v. Tennessee, 501 U.S. 808, 827 (1991); see 18 U.S.C. § 3593(a) (evidence may include "oral testimony," "victim impact statement," and "any other relevant information").  And, in a case in which the government pleads a factor that is in fact "aggravating," that is, "worse" than just murder, Congress has provided that it may include this as a factor.  18 U.S.C. § 3593(a) ("factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the . . . victim's family").  But Congress has not stated that this is a valid factor in every murder.  Any such factor pled must meet the rest of the explicit criteria of the statute -- that the factor be "other" and that it be "aggravating."  In this case, the government has failed to meet this minimum pleading requirement, and the factor must be dismissed.

### A.    Violation of the Eighth Amendment.

Finally, it should be noted that Payne v. Tennessee did not consider the circumstances under which the use of "victim impact" evidence as an independent factor aggravating a murder and counted separately in a weighing statute, is permissible.[17] If the harm shown by victim impact evidence is no different from the harm implicit in any murder, it violates the Eighth Amendment, as well as the statute, to permit the jury to weigh it once again in deciding whether to impose the death penalty.

---

[17]    Payne considered only an *evidentiary question*, whether two categories of impact evidence -- "information revealing the individuality of the victim and the impact of the crime on the victim's survivors" – were admissible at a death penalty hearing.  501 U.S. at 835 (Souter, J., concurring).



# VIII.
## VICTIM WAS KILLED IN AN EFFORT TO OBSTRUCT JUSTICE

As stated previously, to be admissible as a nonstatutory aggravating factor, the proffered evidence must be relevant.  For evidence to be relevant, the statute must require that the evidence tendered bears on "the consideration of who should live and who should die."  Davis, 912 F. Supp. at 943.  To satisfy that test, non-statutory aggravating factors must be sufficiently severe, when compared to the list of *statutory* aggravating circumstances, to "warrant consideration of the death penalty in the first place. . . ."  Davis, 912 F. Supp. at 944.  If an aggravating factor would not warrant such consideration, "then it likewise should not be a factor in tipping the scale for death in the last analysis."  Davis, 912 F. Supp. at 944.

This nonfactor is does not warrant such consideration.  First, as stated previously, Congress has listed "death during commission of another crime" as a separate aggravator.  See 18 § 3592(c)(1) (1999).  In that subparagraph, Congress did not include the crimes of obstruction of justice under this statute, although the language plainly covers the Government's assertion.  See 18 U.S.C. 1512(a)(1) (1999) (Whoever kills or attempts to kill another person, with intent to-- (A) prevent the attendance or testimony of any person in an official proceeding; (B) prevent the production of a record, document, or other object, in an official proceeding; or (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings).

The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.  Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992).  Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.  Russello v. United States, 464 U.S. 16, 23 (1983); United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972).  Thus, the broader state court holdings cited in the annotation are not grounds for this Honorable Court to expand the law into the area requested by the Government.  See Arthur v. Cumming, 91 U.S. (1 Otto) 362, 364 (1875) (stating that the expression of one thing in a statute is the exclusion of another.).

Respectfully submitted,
RUSSELL D. HUNT, JR.
Attorney at Law
Post Office Box 1758
Georgetown, Texas 78627
Telephone: (512)930-0860  Fax: (512)238-3101

RUSSELL D. HUNT, JR.
State Bar Number 00790937
ATTORNEY FOR DEFENDANT BERNARD

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2000, a true and correct copy of the above and foregoing objections was delivered to Mr. Mark Frasier, Assistant United States Attorney, and to the Attorneys for codefendant Vialva.

Russell D. Hunt, Jr.

