IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**FILED**

NOV 1 2 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

BRANDON BERNARD,
*Movant,*

v.

UNITED STATES OF AMERICA,
*Respondent.*

CIVIL ACTION NO.  W-04-CA-164
(formerly Crim. No. W-99-CR-070(2))

---

## MOTION FOR LEAVE TO CONDUCT DISCOVERY
## AND BRIEF IN SUPPORT

---

### I. MOTION

Movant BRANDON BERNARD, through undersigned counsel, respectfully moves the

Court to grant him leave to conduct certain discovery, as set forth below, to develop additional

evidence in support of the claims for relief alleged in his pending motion under 28 U.S.C. §

2255.  This Motion and a proposed order granting the relief requested are submitted in

conformity with Local Rule CV-7(c)(10) and (f), respectively.  Facts supporting this request that

are not already part of the record are submitted in the accompanying Appendix to this Motion, in

accordance with Local Rule CV-7(b) and (c).  Mr. Bernard moves for discovery pursuant to Rule

6 of the Rules Governing Section 2255 Proceedings For the United States District Courts

("Habeas Rule 6"), the due process clause of the Fifth Amendment, and the Eighth Amendment

requirement of "heightened reliability" in capital cases.  The  requested discovery is essential to

guarantee Mr. Bernard full and fair opportunity to amend his pending motion under 28 U.S.C. §

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 1 of 20

411

1155

2255, as well as to ensure that this Court reviews and resolves his claims for relief in light of a fully developed factual record.

## II.    THIS COURT'S AUTHORITY TO PERMIT DISCOVERY

Rule 6 of the *Rules Governing Section 2255 Proceedings for the United States District Courts* ("Habeas Rule 6") gives this Court express authority to order discovery:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Criminal Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Habeas Rule 6(a) (West 2000).  Habeas Rule 6(a) incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "'entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts.'" *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same); *see also Rules Governing Section 2254 Cases in the United States District Courts*, Advisory Committee Note to Rule 6 (West 2000) ("Subdivision (a) is consistent with *Harris v. Nelson*").[1]

Thus, a federal habeas court may grant the petitioner leave to conduct discovery when "good cause" for doing so is shown.  According to the Supreme Court, such "good cause" is established "where specific allegations before the court show reason to believe that the petitioner

---

[1]   The Advisory Committee Notes to the *Rules Governing Section 2254 Cases in the United States District Courts* are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions."  Advisory Committee Notes to Rule 6, *Rules Governing Section 2255 Proceedings for the United States District Courts* (West 2000).

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 2 of 20

1154

may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).[2]

Before discovery is warranted under Habeas Rule 6(a), the Fifth Circuit requires that the petitioner first set out specific allegations of fact supporting his claims for relief. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984)).[3] Further, the petitioner must have some reason to believe that the requested information exists. *Kirkpatrick v. Whitley*, 992 F.2d 491, 496 (5th Cir. 1993).

A petitioner who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party from whom discovery is sought and cannot be obtained through other means, has established "good cause" under the Fifth Circuit's consistent reading of *Bracy* and Habeas Rule 6. *Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the *duty* of the courts to provide the necessary facilities and procedures for an adequate inquiry") (internal quotation marks omitted; citation omitted; emphasis added); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or

---

[2] By contrast, the Supreme Court has indicated that good cause is absent when the petitioner's allegations are patently groundless, *e.g.*, the product of "fantasy which has its basis in the paranoia of prison rather than fact." *Harris*, 394 U.S. at 300; *see also* Advisory Committee Note to Habeas Rule 6 (West 2000) (same, quoting *Harris*).

[3] *See also, e.g., Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.) ("good cause" under Rule 6(a) "cannot exist where the facts alleged do not provide a basis for relief"), *cert. denied*, 498 U.S. 878 (1990).

1157

deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts") (internal quotation marks omitted).[4]

Below, we explain why the information Mr. Bernard seeks is "indispensable" to this Court's "fair, rounded development of the material facts," which in turn is essential to the full consideration and accurate resolution of the claims for relief in Mr. Bernard's § 2255 motion. Mr. Bernard directs these requests for information to the United States Attorney, the Federal Bureau of Investigation, the Department of the United States Army, and any other law enforcement agency involved in the investigation and/or prosecution of this case. If any documents or records requested no longer exist, Mr. Bernard requests a statement from the United States identifying when the records were destroyed, deleted, purged, or made unavailable, and under what protocol such destruction was effected.

## III.    CONFERENCE OF PARTIES

Mr. Bernard seeks the production of documents in the possession of the Respondent, access to the trial files of the prosecution, and such other information as is described more fully below. The information Mr. Bernard seeks bears directly on the grounds for relief presented in his § 2255 motion. Undersigned counsel's belief that the information is available is based, in

---

[4] *See Coleman v. Zant*, 708 F.2d 541 (11th Cir. 1983) (quoting *Townsend v. Sain*, 372 U.S. 293, 322 (1963)) (same); *see, e.g., Smith v. United States*, 618 F.2d 507, 509 (8th Cir. 1980) (affirming district court's denial of discovery because petitioner merely listed the records he sought without stating how they would assist him in prosecuting his writ of habeas corpus); *Gaitan-Campanioni v. Thornburgh*, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991) (noting that the courts should not hesitate to order discovery "where it will help illuminate the issues underlying the applicant's claim").

1158

part, on evidence appended as exhibits to Mr. Bernard's § 2255 motion.  Undersigned counsel

have attempted to obtain the requested information from independent sources.  Counsel for the

United States has previously verified to undersigned counsel that no discovery will be produced

by agreement.    The requested information does not duplicate information in undersigned

counsel's possession.

### IV.    INFORMATION SOUGHT AND SUPPORTING FACTS

CLAIMS III and IV: **Mr. Bernard's Trial Counsel Failed To Provide Effective**
**Representation At Both Phases of Trial.**

Mr. Bernard's § 2255 motion alleges that his trial counsel failed to provide effective

assistance at both phases of trial, in violation of the Sixth Amendment.  *See generally* redacted §

2255 motion at 7-74 (guilt-innocence phase); 74-122 (penalty phase).  Those allegations include,

*inter alia*, counsel's failure to impeach key prosecution witnesses, like Terry Brown and

Christopher Lewis, with available prior statements by those witnesses.  *Id.* at 10-16.   However,

it is apparent from the information developed by undersigned counsel that other statements of

Brown and Lewis must have existed prior to trial and may well have contained material

exculpatory, mitigating, and impeaching information.  *Id.* at 132 (evidence of other statements to

Government agents by Terry Brown), 134-35 (evidence of other statements to Government

agents by Christopher Lewis), *see also* text *infra*.

Mr. Bernard has alleged that the prosecution's failure to disclose these other statements

and documents violated its legal obligations, including the *Brady* rule.  *Id.* at 132-137.

However, undersigned counsel cannot be certain that the Government did not make these other

statements (or other relevant information) available to trial counsel via its "open file" discovery

11 59

policy.  *See* Dkt. 34, 36 (Government's assertions of intent to provide "open file" discovery).

To determine whether any such information was available to trial counsel, undersigned counsel

have asked the Government to give them the same access to the prosecution's files as trial

counsel were permitted under the alleged "open file" discovery policy prior to trial.   The

Government has refused.

Accordingly, in order fully to develop the facts relevant to his claims of ineffective

assistance of counsel, Mr. Bernard seeks an order directing the Government to permit Mr.

Bernard's post-conviction counsel the same access to its files that trial counsel enjoyed.  Such

access is necessary because trial counsel appear to have relied on the Government's promise of

"open file" discovery rather than seeking specific information by motion or otherwise.  Perhaps

as a result of such reliance, nothing in trial counsel's files reflects what documents or evidence

they examined in the prosecution's files.[5]  Nor does anything in trial counsel's files reflect that

the Government made any *Brady* disclosures identified as such.[6]

---

[5] In addition, the files of trial counsel for Mr. Bernard's co-defendant, Mr. Vialva, contain
documents evidently obtained from the Government which are absent from the files of Mr.
Bernard's trial counsel and which support Mr. Bernard's claim of ineffective assistance of
counsel.  *See* § 2255 motion at 16-18.  Access to the Government's files is necessary to confirm
that Mr. Bernard's trial counsel were aware of this information.

[6] We already know that the Government failed to comply with *Brady*, since there is no indication
that the prosecution disclosed, *e.g.*, exculpatory and impeaching information then in its
possession regarding key witness Terry Brown's mental illness and the fact that he was taking
psychotropic medication prior to and during trial.  *See* text *infra*.  Nevertheless, the absence from
trial counsel's files of any documented *Brady* disclosures only reinforces the conclusion that
without access to the Government's files, post-conviction counsel cannot identify exactly what
information trial counsel obtained through their own examination of the Government's files (or
what information trial counsel may have seen in those files but unreasonably ignored or
discounted as insignificant), to determine the extent of the *Brady* violation(s) in this case.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 6 of 20

In the absence of any such documentation in trial counsel's files, the only way for post-conviction counsel to assess trial counsel's performance with respect to information disclosed to them under the Government's alleged "open file" policy (for example, whether counsel unreasonably failed to identify leads for further investigation, or whether counsel failed to recognize or make use of available impeachment information) is for post-conviction counsel to see what trial counsel saw – *i.e.*, to review the "open file" itself.[7]  To date, the Government has refused to permit post-conviction counsel to examine the portions of its files voluntarily disclosed to trial counsel.[8]  Under the circumstances of this case as described above, that refusal constitutes "good cause" justifying discovery.

CLAIM V: **Prosecutorial Misconduct Denied Mr. Bernard A Fair Trial.**

Mr. Bernard has alleged that the Government failed to disclose exculpatory evidence and violated the constitutional requirements embodied in *Brady v. Maryland* and its progeny.  *See*

---

[7] Undersigned counsel are responsible for assessing the performance of trial counsel and considering whether the evidence supports a claim of ineffective assistance of counsel. American Bar Association, GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (2003), Guideline 10.15.1 ("Duties of Post-Conviction Counsel") and commentary thereto (post-conviction counsel must "examin[e] the facts underlying the conviction and sentence, as well as such items as trial counsel's performance"). By its refusal to grant post-conviction counsel the same access to prosecution files enjoyed by trial counsel, the Government is preventing undersigned counsel from discharging our own legal duty to Mr. Bernard.

[8] The unreasonableness of the Government's position – its refusal to permit post-conviction counsel to view precisely the same documents it voluntarily allowed trial counsel to examine at their leisure – is apparent.  The only justification the Government can assert at this stage of the proceedings for concealing information it previously made freely available to the defense is a desire to prevail in the present litigation by preventing Mr. Bernard from demonstrating the deficient performance of his trial counsel.   The Supreme Court has cautioned that the prosecution's interest in a criminal prosecution "is not that it shall win, but that justice shall be done."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  The Government's gamesmanship in

*generally* redacted § 2255 motion at 122-37.  In order fully to develop the facts relevant to his *Brady* Claims, Mr. Bernard seeks the following discovery.   For the purposes of the following requests, "government agents" includes, without limitation, prosecutors, federal law enforcement agents, and/or any state/local law enforcement agents working with the prosecution team.

### *Brady* Material Respecting Government Witness Terry Brown:

1.  A list of all interviews conducted  with Terry Brown by government agents, including the dates and places of the interviews and the persons present.

2.  Leave to depose all government agents who conducted interviews with or had contact with Terry Brown incident to the offense, investigation, or subsequent judicial proceedings in this case.

3.  Production of all mental health and medical records regarding Terry Brown while incarcerated, from the date of the offense until the conclusion of trial.  For purposes of this request, the phrase "mental health and medical records" includes, without limitation, medication records, mental health evaluations, and/or any other evaluation by mental health experts, social workers, detention staff, or court personnel.

4.  Production of any and all documents and records in the possession of the government concerning Terry Brown's record of criminal convictions (including any juvenile adjudications), including police reports regarding incidents in which Brown was named or involved, and probation reports.  This request includes, without limitation, all written, recorded, or transcribed court appearances; interviews with court personnel; mental status or social history evaluations conducted in connection with any juvenile proceeding, and/or findings by any judicial officer.

---

this proceeding, where Mr. Bernard's life is at stake, flies in the face of this solemn obligation.

5.    Production of all documents and records in the possession of the government concerning contacts and/or interviews by government agents with Terry Brown and/or Mr. Brown's attorney from the time of Mr. Brown's arrest until the conclusion of trial, to the extent that such documents and records contain exculpatory and/or impeaching information.    This request includes production of all "rough notes" made by government agents.  For purposes of this request, the term "documents and records" includes, without limitation, recordings by videotape, audiotape, or other durable recording media; memoranda; notes; letters; log sheets; field notes; and any other memorial documenting such contacts.

6.    Production of all information within the possession of the government regarding the consideration of the filing of a USSG Section 5K1.1 motion for Terry Brown, including but not limited to communications with Mr. Brown, Mr. Brown's counsel, and/or the United States Probation Office regarding such a motion.

7.    Records documenting all visits to Mr. Brown while he was in the custody of the Fort Hood CID, the Federal Bureau of Investigation, and the United States Marshals Service, from the time of Mr. Brown's arrest until he was remanded to the custody of the United States Bureau of Prisons to begin serving his sentence of confinement.

### ***Brady* Material Respecting Government Witness Chris Lewis**:

1.    A list of all interviews conducted by government agents with Christopher Lewis, including the dates and places of the interviews and the persons present.

2.    Production of all documents and records in the possession of the government concerning contacts and/or interviews by government agents with Christopher Lewis and/or Mr. Lewis' attorney from the time of Mr. Lewis' arrest until the conclusion of trial, to the extent that

1163

such documents and records contain exculpatory and/or impeaching information.   This request includes production of all "rough notes" made by government agents.  For purposes of this request, the term "documents and records" includes, without limitation, recordings by videotape, audiotape, or other durable recording media; memoranda; notes; letters; log sheets; field notes; and any other memorial documenting such contacts.

3.   All psychological or psychiatric examinations of Christopher Lewis within the possession of the Government, including the psychological examination of Mr. Lewis conducted by Dr. Shinder in connection with the transfer of Mr. Lewis to adult jurisdiction in this matter.

4.  All documents and records in the possession of the government relating to Christopher Lewis' juvenile criminal history, including but not limited to the assault charge which resulted in Mr. Lewis' being incarcerated, including: police reports, all written, recorded, or transcribed court appearances; interviews with court personnel; mental status or social history evaluations conducted in connection with any juvenile proceeding, findings by any judicial officer, and/or juvenile probation reports.

5.   Leave to depose Christopher Lewis regarding events relevant to the allegations contained in Mr. Bernard's § 2255 motion.

6.   Leave to depose all government agents who have interviewed Christopher Lewis, regarding events relevant to the allegations contained in Mr. Bernard's § 2255 motion.

7.  Production of all information in the government's possession relating to the filing of the USSG Section 5K1.1. motion filed by the government to reduce Mr. Lewis' sentence.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 10 of 20

***Brady* Material Respecting Tony Sparks**:

1.  A list of all interviews conducted by government agents with Tony Sparks, including the dates and places of the interviews and the identity of all persons present.

2.  Production of all documents and records in the possession of the government concerning contacts and/or interviews by government agents with Tony Sparks and/or Mr. Sparks' attorney from the time of Mr. Sparks' arrest until the conclusion of trial, to the extent that such documents and records contain exculpatory and/or impeaching information. This request includes production of all "rough notes" made by government agents. For purposes of this request, the term "documents and records" includes, without limitation, recordings by videotape, audiotape, or other durable recording media; memoranda; notes; letters; log sheets; field notes; and any other memorial documenting such contacts.

***Brady* Material Respecting Joey Presley**:

Production of all documents and records in the possession of the government concerning contacts and/or interviews by government agents with Joey Presley and/or Mr. Presley's attorney from the date of the offense until the conclusion of trial, to the extent that such documents and records contain exculpatory and/or impeaching information. This request includes production of all "rough notes" made by government agents. For purposes of this request, the term "documents and records" includes, without limitation, recordings by videotape, audiotape, or other durable recording media; memoranda; notes; letters; log sheets; field notes; and any other memorial documenting such contacts.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 11 of 20

### *Brady* Material Acquired Post-Trial

Production of any and all exculpatory and/or impeaching information within the scope of *Brady v. Maryland* and its progeny that has come into the possession of the government since the conclusion of the trial and the sentencing of Brandon Bernard.

Mr. Brown authorized the release to Mr. Bernard's counsel of his trial attorney's file in this case and a portion of the records regarding his pretrial confinement (records of the Bell County Sheriff's Office). These records disclosed several areas of potential impeachment evidence. *See* § 2255 Motion at 128 and Exhibit 21. Additional sources of impeachment exist in documents connected to Mr. Brown's juvenile proceedings arising from the murder of the Bagleys which remain under seal at this time and include a report by psychiatrist Dr. James Shinder containing numerous statements by Mr. Brown which were exculpatory and/or mitigating as regards Mr. Bernard.

Mr. Brown was a key witness in the Government's presentation at both phases of trial, and his credibility was critically important to the jury's determination of both guilt and punishment. Mr. Brown's account of his own past conduct, propensity for violence, and use of illegal substances varied widely during his contact with law enforcement. This pattern continued through Mr. Brown's guilty plea hearing and his testimony against Mr. Bernard.

The records and files already in possession of Mr. Bernard's undersigned counsel prove that the government failed to comply with its *Brady* obligations in this case. *See* § 2255 Motion at 132-37 and exhibits thereto. The government failed to provide Mr. Bernard's counsel with a transcript of the guilty plea colloquies of Mr. Brown, Mr. Lewis, or Mr. Sparks even though all



three colloquies contained admissions which were exculpatory or mitigating with respect to Mr.

Bernard and which contradicted the testimony of Mr. Brown and Mr. Lewis at trial.    The

government failed to disclose to the defense information regarding Mr. Brown's mental illness

and the administration to Mr. Brown of psychotropic medication prior to and during trial.  *See*

Appendix to Discovery Motion, Exhibit 1 (medical records of Terry Brown).[9]   The government

failed to provide the defense with exculpatory information of Dan Chadwick at the detention

hearing of Mr. Brown (the transcript of this hearing was sealed).

Strong evidence, moreover, suggests that the government's breaches of its obligations

under *Brady* are far more extensive than currently known, and that discovery should be

authorized so that Mr. Bernard may demonstrate the full extent to which the government flouted

its constitutional duties.

The government reports currently in the possession of undersigned counsel show that Mr.

Brown and Mr. Lewis were interviewed on numerous occasions by government agents but that

the reports of these interviews are incomplete and/or fail to reveal impeaching and exculpatory

information. For example, on June 22, 1999, Mr. Brown was interviewed by Agent Nelson but –

at the express direction of the United States Attorney and FBI Agent Chadwick – no written

statement was taken.  *See* § 2255 Motion, Exhibit 1 at 275.  On July 26, 1999, Mr. Brown was

---

[9] Documents released by the Bell County Sheriff's Office reflect Mr. Brown was prescribed psychotropic medication (receiving, at a minimum, Wellbutrin and Depakote) while confined at an unspecified juvenile facility.  It appears that Mr. Brown continued to receive this medication while he was confined as an adult in Bell County.  *See* Appendix to Motion, Exhibit 1.  This information was not presented to the jury.  Additional records are unavailable because the juvenile detention facilities in Killeen and Waco will release information only in response to a court order or subpoena.



interviewed by government agents but no written statement was taken because the agents believed Brown "was not [being] completely truthful in all respects." *Id.* at 276.

Similarly, a number of government agents interviewed Mr. Lewis on July 2, 1999. The report of this interview states only that Lewis "omitted several facts concerning the events of 21 Jul 99, and failed to confess his involvement." The report of the interview gives no inkling of what Mr. Lewis actually said that prompted this statement – *i.e.,* just what facts Lewis "omitted," and what else he may have said that was inconsistent with "confess[ing] his involvement." § 2255 Motion, Exhibit 1 at 276. On July 6, 1999 Mr. Lewis was interviewed again but at the express direction of the government (*i.e.*, FBI Agent Chadwick) no written statement was taken. § 2255 Motion, Exhibit 1 at 277.

On September 17, 1999 Mr. Brown was interviewed by government agents and "details of Brown's prior interviews were discussed with him and his attorney." § 2255 Motion, Exhibit 1 at 1259. The report gives no other information about the content of the interview, what "details" from Brown's "prior interviews" warranted discussion, or any other statements by Brown.

The reports in the possession of undersigned counsel do not reference *any* interviews whatsoever of Brown or Lewis by government agents after the two pleaded guilty on December 16, 1999. Given that Brown and Lewis were the government's star witnesses, it is inconceivable that they were not interviewed by government agents during the six months that passed between the time they pled guilty and the time they testified at trial. It is equally implausible that Brown and Lewis did not make statements which differed from their earlier accounts, considering the extreme variations between their statements at their guilty pleas and the testimony at trial.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 14 of 20

1148

The notes of Mr. Brown's attorney, Rob Swanton, also indicate that the government failed to comply with its *Brady* obligations.   Mr. Swanton's notes of the proffer between Brown and the government on July 26, 1999, contain references to other crimes committed by Brown, including a drive-by shooting and a sledgehammer-wielding assault by Brown.  These crimes are nowhere mentioned in the government reports of that same proffer.   Further, Mr. Swanton's files contain telephone messages showing that other meetings between Brown and government agents took place in May and June of 2000.

*Brady* material must be disclosed even without any motion on the part of the defense. *Kyles v. Whitley*, 514 U.S. 519 (1995).   Such material includes any evidence which impeaches the credibility of a government witness whenever the reliability of the witness may be determinative of guilt or innocence.  *Giglio v. United States*, 405 U.S. 150 (1970).   In the recent case of *United States v. Sipe*, ___ F.3d___, 2004 WL 2325496 (5th Cir., Oct. 15, 2004), the Fifth Circuit upheld the grant of a new trial based on the government's failure to comply with *Brady*. The *Sipe* court extensively discusses the ambit of *Brady*, and reiterates this Circuit's position that if impeaching evidence "would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence [is] material."  *Sipe*, 2004 WL 2325496 at *5, quoting *United States v. Weintraub*, 871 F.2d 1257, 1262 (5th Cir. 1989).

This observation applies with special force to Mr. Bernard's case.  The government introduced absolutely no evidence other than the testimony of Lewis and Brown as to what role, if any, Mr. Bernard played in the murders of the Bagleys.   They provided essential testimony asserting that Mr. Bernard had advance knowledge that the Bagleys would be killed, that

Mr.Bernard was present at the Bagleys' car when the murders occurred, that Mr. Bernard set the Bagleys' car on fire, and that Mr. Bernard threw a weapon away.   In short, Brown and Lewis are unquestionably "key witnesses" as the Fifth Circuit used that term in *Sipe*; any withheld impeachment information regarding their testimony is accordingly material.

It appears that the government may not only have failed to divulge relevant impeachment (*e.g.,* Dr. Shinder's report(s) or Mr. Brown's mental health and medical records) but may also have adopted a tactic of intentionally refusing to memorialize interviews with its witnesses that produced exculpatory or impeaching information. *See supra.*  For this reason, the court should grant undersigned counsel access to the relevant rough notes of government agents and permit counsel to depose the agents who conducted those interviews to establish precisely what exculpatory and impeaching information the agents heard from the government's witnesses but did not memorialize.

Mr. Bernard should be entitled to production of the entire criminal histories of Mr. Brown and Mr. Lewis, including records of arrests and records of juvenile prosecutions/adjudications. In examining Mr. Brown and Mr. Lewis at trial, the government brought up their criminal histories on direct, seeking to minimize how serious they were.  T. 1859 (Brown); T. 2303-04 (Lewis). Even if some of Brown and Lewis' criminal history would not have been admissible for impeachment under FRE 609, it may have been admissible under FRE 608 or have led to the discovery of admissible evidence. *See Sipe*, 2004 WL 2325496 at *11 (discussing government's concealment of information regarding criminal history of key government witness).

The court should also direct the government to produce all information concerning the Section 5K1.1 motion it filed with respect to Mr. Lewis and any information concerning its

1170

consideration of filing such a motion for Mr. Brown.    The evidence shows that the government did in fact file a substantial assistance motion for Mr. Lewis, which the court granted, *and* that Mr. Brown's attorney anticipated that the government would file such a motion for Mr. Brown. *See* Exhibit 21 to § 2255 motion.    None of this information appears to have been disclosed to Mr. Bernard's attorneys prior to trial; such undisclosed promises of leniency or sentencing benefits to key witnesses constitute *Brady* violations.

> CLAIM VII:  **Juror Calvin Kruger, Foreperson Of The Jury That Convicted Mr. Bernard And Sentenced Him To Death, Was Actually Biased Against Mr. Bernard, Denying Mr. Bernard His Sixth Amendment Right To An Impartial Jury.**

Mr. Bernard's § 2255 motion alleges that juror Kruger was biased against Mr. Bernard, as evidenced by the fact that Mr. Kruger intentionally concealed the extent of his prior criminal record in answering questions on the jury questionnaire, and did so in order to win a place on Mr. Bernard's jury. *Id.* at 145-46.

In order fully to develop the facts relevant to this claim, Mr. Bernard seeks the following discovery:

First, Mr. Bernard requests that the Court order the Government to provide undersigned counsel with a full, accurate, and complete criminal history for juror Calvin Kruger. Undersigned counsel do not have access to an authoritative database of criminal history information (such as NCIC), and thus have no way of being certain that our own investigation has uncovered the full extent of juror Kruger's criminal record. If juror Kruger has additional convictions he failed to reveal in order to improve his chances of getting onto the jury, that fact is relevant as proof of his bias against Mr. Bernard.

Second, Mr. Bernard seeks leave to depose juror Kruger to establish that he concealed his prior criminal history in responding to the juror questionnaire in order to improve his chances of getting on the jury, and that he wanted to be a juror because he had already decided what the appropriate verdict should be. Undersigned counsel, if permitted to depose juror Kruger, will be able to elicit answers demonstrating that juror Kruger was biased against Mr. Bernard.

CLAIM VII:    **The Federal Death Penalty, As Applied, Violates The Fifth and Eighth Amendments.**

Mr. Bernard's § 2255 motion alleges that due process, equal protection, and the Eighth Amendment are violated by geographic and racial discrimination in the administration and application of the federal death penalty, as well as the infrequency with which it is sought. *Id.* at 147-151.

In order fully to develop the facts relevant to this claim, Mr. Bernard seeks the following discovery.

Mr. Bernard seeks an order authorizing him to request production of documents and information pertaining to the Department of Justice's practices and policies in cases brought under 18 U.S.C § 3591 and 21 U.S.C. § 848, with respect to authorization to seek the death penalty and authorization to accept guilty pleas in return for waiving the death penalty as a potential punishment.

**V.    INFORMATION SOUGHT FROM FBI "I-FILES"**

Undersigned counsel have been advised that the Federal Bureau of Investigation (FBI) implements a practice that narrows the field of information released during discovery. All of the information generated during the course of an investigation is placed initially into a central

repository referred to variously as the "I-file," "I-drive," or "I:\drive" (hereinafter "I-drive"). The FBI selects some of this information for inclusion in the case file. The case file is the source of information released in discovery. *See* John Solomon, *FBI Documents* (Associated Press, New York: March 2, 2004) (attached as Exhibit 2 to Appendix to Discovery Motion). Some of the information generated in this case was not reduced to the routine format of an FD-302 Report of Interview. For example, the activity logs of the U.S. Army CID reflect multiple contacts by various investigators following Mr. Brown's arrest. It is likely that the United States has additional exculpatory or mitigating information in files or records that were created or maintained as part of the I-drive and thus were excluded from discovery. Mr. Bernard requests that the Court order that any and all information regarding this case contained in the FBI's "I-drive" and within the scope of the discovery requests set out above be located and disclosed.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Mr. Bernard respectfully moves the Court to enter the attached proposed Order authorizing him to conduct discovery related to the claims contained in his § 2255 motion.

If the Government alleges that any of the information Mr. Bernard seeks via discovery is privileged and/or constitutes attorney work product, Mr. Bernard further moves the Court to require the Government to produce that information for *in camera* inspection and review by the Court. If the Government submits any such material, Mr. Bernard further moves the Court to maintain a copy of that material in the record under seal for purposes of any subsequent appeal in this proceeding.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 19 of 20



RESPECTFULLY SUBMITTED,

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas 78704
512-804-2661 voice
512-804-2685 fax

ROBERT H. GOMBINER
Federal Public Defender
1601 Fifth Ave., Ste. 700
Seattle, Washington 98101
206-553-1100 voice
206-553-1027 fax

Attorneys for Brandon Bernard

## CERTIFICATE OF SERVICE

This is to certify that I have served a true and correct copy of the foregoing motion on counsel for the Government by placing the same into the United States Mail, first-class postage prepaid, addressed to:

AUSA Mark Stelmach
816 Congress Avenue, Ste. 1000
Austin, TX 78701

on this 10th day of November, 2004.

Motion for Discovery (No. 1)
*Bernard v. United States* – Page 20 of 20