No. 14-8071

In The

# Supreme Court of the United States

———— ◆ ————

BRANDON BERNARD,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

———— ◆ ————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Fifth Circuit**

———— ◆ ————

**BRIEF *AMICUS CURIAE* OF THE
FEDERAL CAPITAL HABEAS PROJECT
IN SUPPORT OF PETITIONER**

———— ◆ ————

SAMUEL SPITAL
   *Counsel of Record*
ALAN D. REITZFELD
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
samuel.spital@hklaw.com

RUTH E. FRIEDMAN
MIRIAM S. GOHARA
MORRIS H. MOON
FEDERAL CAPITAL
   HABEAS PROJECT
Federal Public Defender for
   The District of Maryland,
   Southern Division
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

**Exhibit E**

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................. ii

INTEREST OF THE *AMICUS CURIAE* ............. 1

SUMMARY OF THE ARGUMENT ..................... 2

ARGUMENT......................................................... 6

   I.   While "Paying Lipservice" to this Court's COA Standard, the Fifth Circuit Contravened that Standard in Bernard's Case.... 6

  II.   Bernard's Case Reflects a Divide Between the Fifth Circuit and the Other Circuit Courts Respecting COAs in Federal Capital Cases ..................................... 13

 III.   This Court's Intervention Is Necessary to Ensure that Federal Capital Prisoners Receive Meaningful Appellate Review of Substantial Postconviction Claims ........... 17

CONCLUSION...................................................... 18

APPENDIX

Table of Relevant Federal Capital § 2255 Cases....App. 1

ii

## TABLE OF AUTHORITIES

Page

CASES

*Castaneda v. Partida*, 430 U.S. 482 (1977) ..............15

*Forrest v. State*, 290 S.W.3d 704 (Mo. 2009).............17

*Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997)....................................................................11

*Harrington v. Richter*, 131 S.Ct. 770 (2011).............17

*Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790, 2014 WL 1714487 (N.D. Tex. Apr. 30, 2014)..................................................15

*Machibroda v. United States*, 368 U.S. 487 (1962)....................................................................10

*Miller-El v. Cockrell*, 537 U.S. 322 (2003).........*passim*

*Napue v. Illinois*, 360 U.S. 264 (1959) ........................7

*Porter v. McCollum*, 558 U.S. 30 (2009) .....................8

*Roper v. Simmons*, 543 U.S. 551 (2005) ...................11

*Schriro v. Landrigan*, 127 S.Ct. 1933 (2007)............10

*State v. Fourth Dist. Court of Appeal*, 697 So.2d 70 (Fla. 1997) .......................................................17

*Tennard v. Dretke*, 542 U.S. 274 (2004)..................7, 8

*United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002).................................................................12

*Vasquez v. Hillery*, 474 U.S. 254 (1986)....................15

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................9

*Williams v. Taylor*, 529 U.S. 362 (2000).....................9

**Exhibit E**

iii

TABLE OF AUTHORITIES – Continued

Page

STATUTES

22 Okla. Stat. Ann. § 1087 .........................................17

22 Okla. Stat. Ann. § 1089 .........................................17

28 U.S.C. § 2253(c) ....................................................6

28 U.S.C. § 2254 ...........................................6, 10, 17

28 U.S.C. § 2255 ..............................................*passim*

Antiterrorism and Effective Death Penalty Act
 (AEDPA) ...............................................................6

Tex. Code. Crim. Proc. Ann., Art. 11.071 ..................17

VA Code Ann. § 8.01-654(c)(1) ..................................17


RULES AND REGULATIONS

Ala. R. Crim. P. 32.10 ................................................17

Sup. Ct. R. 10..............................................................5


OTHER

http://www.socscistatistics.com/tests/fisher/
 Default2.aspx ........................................................15

Reference Manual on Scientific Evidence (3d
 ed. 2011) ........................................................15, 16

United States Attorneys' Manual § 9-10.030...............2

**Exhibit E**

1

**INTEREST OF THE *AMICUS CURIAE***[1]

This *amicus curiae* brief is submitted by the Federal Capital Habeas Project (also called the "§ 2255 Project"), a program of the Federal Public Defender System created in early 2006 by the Office of Defender Services of the Administrative Office of the United States Courts. The § 2255 Project was established to assist federal courts with appointment of counsel in federal death penalty proceedings pursuant to 28 U.S.C. § 2255 and to ensure that all individuals sentenced to death in federal court receive postconviction representation consistent with the highest standards of the legal profession. The § 2255 Project recruits qualified counsel to represent prisoners in capital § 2255 proceedings around the country; monitors all pending litigation in capital § 2255 cases; provides consulting assistance to appointed lawyers in capital § 2255 cases; provides direct representation to a limited number of federally death-sentenced prisoners; organizes training seminars to educate § 2255 counsel about substantive developments in the law and practical information to aid in quality, cost-effective litigation; and provides

---

[1] The parties were timely notified of *amicus curiae*'s intention to file this brief. The parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to its preparation or submission.

**Exhibit E**

assistance to courts and court personnel with budgeting, counsel issues, and other concerns relating to capital § 2255 representation.

*Amicus*'s interest in this case arises from its close involvement with capital § 2255 litigation and its mandate to assist in ensuring that every federal capital case receives full and fair postconviction review. Even though capital § 2255 cases are litigated in numerous regions around the country, they are part of a single federal jurisdiction and, as the United States Attorneys' Manual clearly states, must be "set within a framework of consistent and even-handed national application of Federal capital sentencing laws." United States Attorneys' Manual § 9-10.030. It has become increasingly evident that the Fifth Circuit – which accounts for over 22% of the current federal death row population – is alone among the circuits in routinely refusing to exercise appellate jurisdiction in § 2255 cases. This brief provides a broader view of certificate of appealability (COA) practice in capital § 2255 cases and highlights the anomalous treatment of those cases by the Fifth Circuit.

———————◆———————

**SUMMARY OF THE ARGUMENT**

Proceedings under 28 U.S.C. § 2255 are essential to the constitutional reliability of the federal death penalty. Such proceedings are ordinarily a federal prisoner's only opportunity to raise claims that require

3

factual development, including claims that the pris-
oner was denied a fair trial due to trial counsel's
ineffectiveness or the prosecution's suppression of
evidence.

Appellate review, in turn, is essential to the
reliability of § 2255 proceedings. A premise of our
federal judicial system is that the circuit courts play a
key role in reducing the risk that errors will deprive
litigants of federal rights. The COA standard, as
interpreted by this Court, promotes this important
principle. This Court has held that, when the district
court's denial of relief with respect to a constitutional
claim is at least reasonably debatable, federal law
entitles the prisoner to a COA so that he may obtain
appellate review.

By contrast, when the lower courts impose a
higher bar for a COA than this Court's precedent
permits, the reliability of § 2255 proceedings is com-
promised: Unreviewed capital postconviction deci-
sions in the federal system allow a prisoner to be
executed after having only a single judge scrutinize
his case. When that minimal review is further trun-
cated by the denial of discovery and other factual
development, there is an even greater risk that
serious errors may remain uncorrected.

That is precisely what happened in Petitioner
Brandon Bernard's case. Bernard's § 2255 motion
challenges a death sentence that, even at trial, was
hardly clear-cut. Bernard was 18 at the time of the
offense, and he did not shoot either of the victims.

**Exhibit E**

4

Although the jury sentenced co-defendant Christopher Vialva to death on the first day of its deliberations, it did not sentence Bernard to die for Todd Bagley's murder, and it deliberated over two days before ultimately sentencing Bernard to death for Stacie Bagley's murder. In making this difficult decision, however, the jury was presented with a fundamentally skewed picture of Bernard's moral culpability because his defense counsel failed to adequately challenge the prosecution's case or investigate Bernard's background, and because the prosecution elicited misleading testimony from a key witness. As a result, Bernard's jury did not know that the two central tenets of the prosecution's case for death – that Bernard set fire to the Bagleys' car, and that this fire contributed to Stacie Bagley's death – were unreliable. Moreover, the jury was told nothing about Bernard's traumatic upbringing, neurocognitive impairment, and adolescent immaturity; the jury sentenced Bernard to die after finding no mitigating circumstances whatsoever.

The district court, however, not only denied relief on Bernard's § 2255 motion, it did so without holding an evidentiary hearing. That decision is, at a minimum, debatable. Under any fair application of this Court's jurisprudence, a COA was required here. Yet the Fifth Circuit, while nominally citing this Court's precedent, imposed a higher standard than that precedent calls for and denied a COA on all of Bernard's claims.

**Exhibit E**

Bernard's case is also part of a broader pattern in federal capital cases dividing the Fifth Circuit from the rest of the country. Of those federal death row prisoners sentenced in the Fifth Circuit, the vast majority (over 88%, or 8 of 9) have been denied a COA by both the district court and Court of Appeals on every single claim in their § 2255 petitions. The numbers are reversed for the rest of the population under federal death sentence: the vast majority there (over 87%, or 21 of 24) have been granted a COA on at least one claim by either the district court or Court of Appeals. Federal death row prisoners outside the Fifth Circuit are obtaining meaningful appellate review of substantial § 2255 claims challenging the integrity of their convictions and sentences, while their counterparts in the Fifth Circuit, nearly across the board, are being deprived of their sole opportunity for such review.

The Fifth Circuit's departure from this Court's precedent, and the split of authority between the Fifth Circuit and the other circuits, warrants this Court's review. *See* Sup. Ct. R. 10(a), (c). Moreover, this Court has a particularly significant role to play in supervising the administration of the death penalty in federal cases, which lack the multiple levels of review available to capital prisoners in state cases. *Amicus* respectfully submits that this Court should grant Bernard's petition for certiorari and either summarily reverse the Fifth Circuit's denial of a COA or set the case for argument.

───────◆───────

**Exhibit E**

## ARGUMENT

### I.    While "Paying Lipservice" to this Court's COA Standard, the Fifth Circuit Contravened that Standard in Bernard's Case.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a COA is required for appellate review when the district court denies claims brought either by state prisoners in habeas proceedings under 28 U.S.C. § 2254 or by federal prisoners in § 2255 proceedings. *See* 28 U.S.C. § 2253(c). Absent a COA, a single district court judge is the only jurist who will consider the merits of the federal prisoner's claims. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (explaining that, at the COA stage, a court is forbidden from undertaking a "full consideration of the factual or legal bases adduced in support of the claims").

This Court has made clear that the COA requirement plays an important screening function but preserves the right to appellate review of potentially meritorious claims. When "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," a COA must issue. *Miller-El*, 537 U.S. at 336 (citations and internal quotation marks omitted). This standard tasks the appellate court with conducting a "threshold inquiry," *id.*, into whether the claims are debatable. It does not license the court to jettison its duty to fully review the substance of potentially meritorious

**Exhibit E**

claims. A claim can be debatable, and a COA therefore required, "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338. The touchstone is "the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 342; *see also id*. at 348 (Scalia, J., concurring) (recognizing that a COA is required when the district court's denial of a claim is not "undebatable").

Although the Fifth Circuit recited the relevant language from *Miller-El* in the decision below, *see* Appendix to Petition for Certiorari ("App.") 005a, its denial of a COA on every claim demonstrates that it actually held Bernard to a far higher standard. This is the very error the Fifth Circuit made a decade ago when, "[d]espite paying lipservice to the principles guiding issuance of a COA," its analysis did not reflect the proper standard. *Tennard v. Dretke*, 542 U.S. 274, 283 (2004).

Bernard has presented several claims that are at least debatable. His trial counsel rendered prejudicial deficient performance by failing to show that the two key tenets of the Government's case for death in Stacey Bagley's killing – that Bernard was the only person in a position to set the fire to the Bagleys' car, and that the fire contributed to Mrs. Bagley's death – were wholly unreliable. *See* Petition for Certiorari ("Pet.") at 25-27. Compounding trial counsels' error, and in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), the prosecution elicited misleading testimony

**Exhibit E**

8

bolstering the credibility of the sole witness who placed Bernard in a position, under the prosecution's theory, to have set the fire. *See* Pet. at 31.

*Amicus* will discuss a third claim – trial counsels' failure to conduct a minimally adequate mitigation investigation, *see id.* at 27-29 – in more detail to illustrate how the Fifth Circuit failed to apply the proper COA standard. In his § 2255 motion, Bernard alleged (with extensive affidavit support) that: (1) notwithstanding obvious red flags about Bernard's troubled past, trial counsel failed to contact essential life history witnesses – including Bernard's father and siblings – who would have provided compelling evidence, and (2) as a result of counsels' failure to investigate, the jury "heard almost nothing that would humanize [Bernard] or allow them to accurately gauge his moral culpability," *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (per curiam). *See* App. 173a-175a; 182a-187a. Given the kind of evidence discovered in the § 2255 investigation, and the sentencing jury's failure to find *any* mitigating circumstances, Bernard's allegations, at the very least, "raise[ ] some debate as to whether" his counsel rendered ineffective assistance. *Miller-El*, 537 U.S. at 342. He is therefore entitled to a COA as to whether the district court erred in denying an evidentiary hearing. *See id.*; *see also Tennard*, 542 U.S. at 283.

The Fifth Circuit nonetheless refused to grant a COA on this issue for two stated reasons. First, the Court of Appeals reasoned that trial counsels' investigation was not deficient because the omitted mitigation is

**Exhibit E**

merely "cumulative of testimony offered at trial," which included Bernard's mother's "powerful[ testimony] for a non-capital sentence." App. 008a; *see also* App. 010a. But, just as in *Miller-El*, the Fifth Circuit could reach this conclusion only by failing to "give full consideration to the substantial evidence" contradicting it. 537 U.S. at 341.

Bernard's mother's "powerful" trial testimony takes a mere eight transcript pages – three of which have nothing to do with Bernard – and evinces little more than a mother's plea for mercy. Her minimal testimony about his childhood includes facts such as that he lived in Alaska and started to become truant. App. 187a. She testified that she loved Bernard and asked the jury not to perpetuate the "'madness that has . . . gone on already.'" *Id*.

Tellingly, Bernard's mother mentioned nothing of the trauma he had endured in his young life, which is the kind of evidence this Court has recognized as central to an assessment of a capital defendant's moral culpability. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 535 (2003); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). The verdict form underscores what little impact Bernard's mother's testimony (and the even more cursory testimony from the remaining witnesses called by trial counsel) had on the jury, which found the presence of not a single mitigating circumstance. *See* App. 170a.

Because trial counsel failed to investigate, jurors did not know that Bernard had endured the kind

**Exhibit E**

of turbulent upbringing that was critical to a fair evaluation of his moral culpability.[2] Bernard's father was a volatile and violent man, who took out his anger by whipping Bernard with a belt so loudly it could be heard outside the house, and by raining verbal abuse on his son. App. 189a. Bernard's father also violently assaulted Bernard's mother in his presence. When Bernard was a child, his father punched his mother in the face; in another incident, Bernard ran to help his mother after his father struck her in the chest following her open-heart surgery. *See* App. 189a-190a. As a result of the latter incident, Bernard's mother obtained a protective order against his father, but his father then broke into the house. *See* App. 190a. The teenage Bernard and his father came to blows in a church parking lot after the protective order was issued. *Id*.

The family violence and dysfunction had a strong impact on the young Bernard. He blamed himself for the breakdown of his parents' marriage, and he became isolated and depressed. *Id*. He fell under the influence of his older cousin, a dominating young man who introduced Bernard to drugs and alcohol, worsening Bernard's emotional deterioration. App. 191a.

---

[2] Given the district court's denial of a hearing, the discussion of the omitted mitigation herein is necessarily based on Bernard's allegations, which are summarized in Bernard's Fifth Circuit brief. *See* Appendix 11. Bernard's allegations were supported with extensive affidavits and must, in any event, be taken as true at this stage of the litigation. *See Machibroda v. United States*, 368 U.S. 487, 494-96 (1962); *cf. Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007) (§ 2254 context).

**Exhibit E**

In addition, Bernard experienced several head traumas, including two that left him unconscious (one just weeks before the crime), and he has a neurocognitive impairment, which reduces his ability to function in emotionally charged settings. *See* App. 176a, 194a.

Having heard none of this evidence, the jury found zero mitigation on the verdict form to weigh against the aggravation; it did not even find Bernard's age of 18 to be mitigating. *See* App. 170a. Had jurors known that Bernard had endured a deeply-troubled childhood that saddled him with two of the signal attributes of youth – poor functioning in stressful situations, and susceptibility to being dominated by peers – at least one juror may well have reached a different conclusion. *Cf. Roper v. Simmons*, 543 U.S. 551, 569 (2005) (noting that juveniles are less morally culpable than adults because, *inter alia*, they are more likely to take "'impetuous and ill-considered actions'" and are more "susceptible to negative influences and outside pressures, including peer pressure") (citation omitted).

In denying a COA, the Fifth Circuit mentioned none of this omitted mitigation, which refutes the Court of Appeals' cumulativeness reasoning. As the Seventh Circuit held in a case in which the sentencer "had found . . . absolutely no mitigating factors," it was "logically impossible" for the mitigating evidence presented in postconviction "to be 'cumulative' to something in the earlier record." *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997). At the very least,

**Exhibit E**

the Fifth Circuit's cumulativeness holding is debatable, which means it cannot justify the denial of a COA.

The Fifth Circuit's second rationale for denying a COA on Bernard's mitigation claim was that "given the horrific nature of the crime, reasonable jurists could not debate" whether the omitted mitigation "would in reasonable probability have influenced the jury's balancing of aggravating and mitigating factors." App. 010a. Here, too, just as in *Miller-El*, the Fifth Circuit failed to consider the substantial evidence contradicting its conclusion. *See* 537 U.S. at 341.

The circumstances of the Bagleys' deaths were undeniably horrific. But it is undisputed that Bernard was not present when the Bagleys were kidnapped and during most of the time they were held hostage. Even under the Government's theory of the case – which was shown to be untrustworthy by Bernard's § 2255 motion and expert affidavits – Bernard set the Bagleys' car on fire only after his co-defendant Vialva had shot them in the head, immediately killing Todd Bagley and causing Stacie Bagley to lose consciousness. *See United States v. Bernard*, 299 F.3d 467, 472-73 (5th Cir. 2002) (direct appeal opinion).

Bernard's jury did not share the Fifth Circuit's post-hoc assessment of the strength of the prosecution's case for death. Even though jurors did not find a single mitigating factor based on trial counsels'

meager presentation, they struggled over the appropriate sentence. On the first day of deliberations, they concluded that Bernard's co-defendant Vialva should be sentenced to death on all three death-eligible counts (the murders of Todd and Stacie Bagley, and the carjacking count) and that Bernard should be sentenced to life in connection with the carjacking and Todd Bagley's murder, but they could not reach a decision on Bernard's sentence with respect to Stacie Bagley's murder. *See* App. 144a-145a. Only on the next day did the jury, after being denied an opportunity to see Stacie Bagley's autopsy report, decide that death was the appropriate penalty for Bernard. *Id*.

Far from the overwhelming case for death supposed by the Fifth Circuit, this was a close case at trial even without the jury's hearing any of the mitigating evidence described in Bernard's § 2255 motion. At a minimum, then, the circumstances of the crime do not make the district court's denial of a hearing "undebatable," and the Fifth Circuit plainly erred in denying a COA. *Miller-El*, 537 U.S. at 348 (Scalia, J., concurring).

## II.    Bernard's Case Reflects a Divide Between the Fifth Circuit and the Other Circuit Courts Respecting COAs in Federal Capital Cases.

Bernard's case is part of a broader pattern dividing the Fifth Circuit from the rest of the country.

**Exhibit E**

Since the federal death penalty was reinstated, 33 federal death penalty cases have been litigated under 28 U.S.C. § 2255 that have required adjudication of a request for a COA. *See* Appendix A (table of relevant federal capital § 2255 cases). Those cases demonstrate that the Fifth Circuit and the district courts bound by Fifth Circuit precedent have, in practice, implemented a COA standard out of line with the rest of the country.

Not only has the Fifth Circuit never granted a COA in a federal capital case, but in only one instance has any district court within the Fifth Circuit granted a COA. *See id.* (showing outcomes by order of circuit). Thus, out of the nine federal capital postconviction cases that have come from the Fifth Circuit, a COA has been issued in only 11% of the cases (⅑). By contrast, COAs have been issued in 21 of the 24 cases outside of the Fifth Circuit, a rate of over 87%. *See id.* COAs have been granted in the only federal capital cases arising out of the Third, Ninth and Tenth Circuits (one from each Circuit); in 7 out of 8 cases arising out of the Fourth Circuit; 7 out of 9 cases arising out of the Eighth Circuit; and 4 out of 4 cases arising out of the Eleventh Circuit. *See id.* Overall, the probability of a federal capital prisoner obtaining a COA outside the Fifth Circuit (87%) is nearly 8 times as great as the probability of obtaining a COA in a case arising in the Fifth Circuit (11%).

The disparity in COA outcomes between the Fifth Circuit and the rest of the country is highly statistically significant, meaning that chance can be rejected

**Exhibit E**

as an explanation for the disparity. This is clear from a standard statistical test, known as a Fisher's exact test, a calculation that can be easily done on-line. *See* http://www.socscistatistics.com/tests/fisher/Default2.a spx; *see also Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790, 2014 WL 1714487, *27 (N.D. Tex. Apr. 30, 2014) (noting that the Fisher's exact test is a well-known technique for analyzing the statistical significance of small samples; citing case law and the Federal Judicial Center's *Reference Manual on Scientific Evidence*).[3] For the COA data, the contingency table is as follows:

|        | CA5 | Outside CA5 |
|--------|-----|-------------|
| COA    | 1   | 21          |
| No COA | 8   | 3           |

Performing the Fisher's exact test on the above table yields a p-value of 0.000096, i.e., less than 0.0001 – meaning such an extreme outcome would occur by chance less than 1 out of 10,000 times absent a real difference between the Fifth Circuit's COA standard and that of the rest of the circuits. This result is compelling and statistically significant, and

---

[3] This Court may "independently appl[y] general statistical principles to the evidence on the record in order to assess" the likelihood that an observed outcome can be explained by chance. *Vasquez v. Hillery*, 474 U.S. 254, 259 (1986) (citing *Castaneda v. Partida*, 430 U.S. 482, 496-97 n.17 (1977)). This principle is especially applicable here because the statistical calculation is related to the split of authority that requires this Court's review, not the underlying merits of Bernard's claims.

**Exhibit E**

chance can therefore be excluded as an explanation for the disparity between the Fifth Circuit and the rest of the country. *See Reference Manual on Scientific Evidence* 250-52 (3d ed. 2011) (discussing p-values).[4]

Uniformity in federal law is nowhere more important than in capital cases. This Court has been vigilant in ensuring that death sentences are not infected by arbitrary factors unrelated to a defendant's moral culpability. The accident of geography is precisely such a factor. The Court's intervention is necessary so that capital prisoners in the Fifth Circuit have the same safeguard of appellate review for debatable constitutional claims in § 2255 proceedings as do their counterparts in the rest of the country.

---

[4] Under the standard significance level of 0.05, chance is excluded as an explanation when the observed outcome or a more extreme outcome would occur by chance 1 out of 20 times or less; under the more conservative significance level of 0.01, chance is excluded as an explanation if such an extreme outcome would occur by chance 1 out of 100 times or less – the latter significance level is also referred to as establishing a "highly significant" result. *Reference Manual on Scientific Evidence* 251 (3d ed. 2011). Here, the p-value is well under 0.01, and chance is excluded as an explanation under either standard.

**Exhibit E**

17

### III. This Court's Intervention Is Necessary to Ensure that Federal Capital Prisoners Receive Meaningful Appellate Review of Substantial Postconviction Claims.

The effect of denying a COA in a federal capital case arising under § 2255 differs greatly from the effect of doing so in a state capital case ultimately litigated under § 2254. In § 2254 cases, the capital prisoner has already been entitled to state review of his postconviction claims; in a number of states, this includes review by the state supreme court or the state court of criminal appeals.[5] The job of the federal courts under § 2254 is to ensure that there was no "'extreme malfunction'" in the state court process. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted).

By contrast, § 2255 proceedings provide the only opportunity for a federal capital prisoner to bring postconviction claims. When the Fifth Circuit fails to apply the proper COA standard, federal death row prisoners are denied any meaningful appellate review of those claims. The result is that a single district court judge – usually the same judge who presided

---

[5] *See, e.g.*, Ala. R. Crim. P. 32.10 (Alabama Court of Criminal Appeals); *State v. Fourth Dist. Court of Appeal*, 697 So.2d 70, 71 (Fla. 1997) (Florida Supreme Court); *Forrest v. State*, 290 S.W.3d 704, 707 (Mo. 2009) (Missouri Supreme Court); 22 Okla. Stat. Ann. §§ 1087, 1089 (Oklahoma Court of Criminal Appeals); Tex. Code. Crim. Proc. Ann., Art. 11.071 (Texas Court of Criminal Appeals); VA Code Ann. § 8.01-654(c)(1) (Virginia Supreme Court).

**Exhibit E**

over the prisoner's trial and sentenced him to death – is the only judge who considers the merits of substantial claims challenging that conviction and sentence. This Court, which is responsible for ensuring the integrity of the federal death penalty scheme, should intervene to restore proper appellate review in capital § 2255 cases in the Fifth Circuit.

———————◆———————

## CONCLUSION

In light of the Fifth Circuit's clear error in denying a COA in Bernard's case, *amicus* hopes that the Solicitor General will concede error. Regardless of whether he does so, however, this Court should grant Bernard's petition and either summarily reverse the decision below or set Bernard's case for argument.

Dated:  New York, New York
        February 23, 2015

Respectfully submitted,

SAMUEL SPITAL
   *Counsel of Record*
ALAN D. REITZFELD
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
samuel.spital@hklaw.com

RUTH E. FRIEDMAN
MIRIAM S. GOHARA
MORRIS H. MOON
FEDERAL CAPITAL
   HABEAS PROJECT
Federal Public Defender for
   the District of Maryland,
   Southern Division
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600

**Exhibit E**

App. 1

## APPENDIX A

| Name of Movant | Circuit | Source(s) | Granted (Y/N) and By Which Court Level |
|---|---|---|---|
| **Hammer, David** | 3d | *United States v. Hammer*, No. 06-9000, at *1 (3d Cir. Dec. 21, 2006); *United States v. Hammer*, 564 F.3d 628, 631 (3d Cir. 2009) (citing *United States v. Hammer*, No. 04-9001 (3d Cir. June 3, 2004) (per curiam order)) | N – M.D. Pa. Y – Circuit Ct. |
| **Basham, Brandon** | 4th | *Basham v. United States*, No. CA 4:11-70079-JFA, 2013 WL 2446104, at *106 (D.S.C. June 5, 2013) | Y – D.S.C. |
| **Fulks, Chad** | 4th | *Fulks v. United States*, 875 F. Supp. 2d 535, 632-33 (D.S.C. 2010) *order* | Y – D.S.C. |

**Exhibit E**

App. 2

| | | | |
|---|---|---|---|
| | | *clarified*, No. CA 4:08-70072-JFA, 2010 WL 8987255 (D.S.C. Aug. 25, 2010) *and aff'd*, 683 F.3d 512 (4th Cir. 2012) | |
| **Higgs, Dustin** | 4th | *Higgs v. United States*, No. CIV. PJM 05-3180, 2010 WL 2976172, at *1-2 (D. Md. July 20, 2010); *United States v. Higgs*, 663 F.3d 726, 730 (4th Cir. 2011) | N – D. Md. Y – Circuit Ct. |
| **Jackson, Richard** | 4th | *Jackson v. United States*, 638 F.Supp.2d 514 (W.D.N.C. 2009); *Jackson v. United States*, 2010 WL 2775402 (W.D.N.C. July 13, 2010); *United States v. Jackson*, No. 09-10 (4th Cir. Feb. 11, 2011). | N – W.D.N.C. N – Circuit Ct. |

**Exhibit E**

App. 3

| | | | |
|---|---|---|---|
| **Johnson, Corey** | 4th | *United States v. Roane*, 378 F.3d 382, 393, 395-96 (4th Cir. 2004) | Y – E.D. Va. |
| **Roane, James** | 4th | *United States v. Roane*, 378 F.3d 382, 395-96 (4th Cir. 2004) | Y – E.D. Va. |
| **Stitt, Richard** | 4th | *United States v. Stitt*, 459 F.3d 483, 484 (4th Cir. 2006); *United States v. Stitt*, 552 F.3d 345, 347 (4th Cir. 2008) | Y – Circuit Ct. |
| **Tipton, Richard** | 4th | *United States v. Roane*, 378 F.3d 382, 393, 395-96 (4th Cir. 2004) | Y – E.D. Va. |
| **Bernard, Brandon** | 5th | *Bernard v. United States*, No. 6:04-cv-00164-WSS, at *63 (W.D. Tex. Sept. 28, 2012); *United States v. Bernard*, 762 F.3d 467, 470-71, 483 (5th Cir. 2014) | N – W.D. Tex.<br><br>N – Circuit Ct. |
| **Bourgeois, Alfred** | 5th | *United States v. Bourgeois*, No. C.A. C-07-223, | N – S.D. Tex.<br><br>N – Circuit |

**Exhibit E**

App. 4

| | | | |
|---|---|---|---|
| | | 2011 WL 1930684, at *111 (S.D. Tex. May 19, 2011); *United States v. Bourgeois*, 537 F. App'x 604 (5th Cir. 2013) | Ct. |
| **Fields, Sherman** | 5th | *Fields v. United States*, No. 6:09-CV-009, at *136 (W.D. Tex. Sept. 25, 2012); *United States v. Fields*, 761 F.3d 443 (5th Cir. 2014), *as revised* (Sept. 2, 2014) | N – W.D. Tex. N – Circuit Ct. |
| **Garza, Juan** | 5th | *United States v. Garza*, 165 F.3d 312, 313-15 (5th Cir. 1999) | N – S.D. Tex. N – Circuit Ct. |
| **Hall, Orlando** | 5th | *United States v. Hall*, 455 F.3d 508, 513-24 (5th Cir. 2006) | N – N.D. Tex. N – Circuit Ct. |
| **Jones, Louis** | 5th | *United States v. Jones*, 287 F.3d 325, 328-35 (5th Cir. 2002) | N – N.D. Tex. N – Circuit Ct. |
| **Robinson, Julius** | 5th | *United States v. Robinson*, No. | N – N.D. Tex. |

**Exhibit E**

App. 5

| | | | |
|---|---|---|---|
| | | 4:05-CV-756-Y (N.D. Tex. July 10, 2009); *United States v. Robinson*, No. 09-70020 (5th Cir. June 8, 2010) | N – Circuit Ct. |
| **Webster, Bruce** | 5th | *United States v. Webster*, 392 F.3d 787, 790-91, 802 (5th Cir. 2004) | Y – N.D. Tex. |
| **Vialva, Christopher** | 5th | *Vialva v. United States*, No. 6:04-cv-00163-WSS, at *63 (W.D. Tex. Sept. 28, 2012); *United States v. Bernard*, 762 F.3d 467, 470-71, 483 (5th Cir. 2014) | N – W.D. Tex.<br>N – Circuit Ct. |
| **Allen, Billie** | 8th | *Allen v. United States*, No. 4:07CV00027 ERW, 2014 WL 2882451, at *4 (E.D. Mo. June 25, 2014); *Allen v. United States*, No. 4:07CV00027 ERW, 2014 WL 4219471, at *10 (E.D. Mo. Aug. 22, 2014); Petition | N – E.D. Mo.<br>Pending – Circuit Ct. |

**Exhibit E**

App. 6

| | | for Certificate of Appealability, *Allen v. United States*, No. 14-3495 (8th Cir. Feb. 9, 2015) | |
|---|---|---|---|
| **Holder, Norris** | 8th | *Holder v. United States*, No. 4:03CV00923 ERW, 2008 WL 2909648, at *55 (E.D. Mo. July 22, 2008) | Y – E.D. Mo. |
| **Honken, Dustin** | 8th | *Honken v. United States*, __ F. Supp. 2d __, 2013 WL 9760449, at *226 (N.D. Iowa Oct. 4, 2013) (docket number CR01-3047-MWB); *Honken v. United States*, No. 14-1329 (8th Cir. May 2, 2014) | N – N.D. Iowa<br>N – Circuit Ct. |
| **Lee, Daniel** | 8th | *United States v. Lee*, 715 F.3d 215, 217, 221 (8th Cir. 2013) | Y – E.D. Ark.<br>Y – Circuit Ct. |
| **Nelson, Keith** | 8th | *Nelson v. United States*, 297 F. App'x 563, 564-66 (8th Cir. 2008) | N – W.D. Mo.<br>Y – Circuit Ct. |

**Exhibit E**

App. 7

| | | | |
|---|---|---|---|
| **Ortiz, Arboleda** | 8th | *Ortiz v. United States*, 664 F.3d 1151, 1164-65 (8th Cir. 2011) | Y – W.D. Mo.<br>Y – Circuit Ct. |
| **Paul, Jeffery** | 8th | *Paul v. United States*, 534 F.3d 832, 834-35 (8th Cir. 2008) | N – W.D. Ark.<br>Y – Circuit Ct. |
| **Purkey, Wesley** | 8th | *Purkey v. United States*, 729 F.3d 860, 862 (8th Cir. 2013) | N – W.D. Mo.<br>Y – Circuit Ct. |
| **Sinisterra, German** | 8th | *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) | N – W.D. Mo.<br>Y – Circuit Ct. |
| **Mitchell, Lezmond** | 9th | *Mitchell v. United States*, No. CR-01-1062-PCT-MHM, 2010 WL 3895691, *43-44 (D. Ariz. Sept. 30, 2010); Appellant's Opening Brief at 85-115, *Mitchell v. United States*, No. 11-99003 (9th Cir. June 27, 2012) | Y – D. Ariz.<br>Pending-Circuit Ct. |

**Exhibit E**

App. 8

| | | | |
|---|---|---|---|
| **Barrett, Kenneth** | 10th | *Barrett v. United States*, No. 09-CIV-105-JHP, 2012 WL 3542609, at *94 (E.D. Okla. Aug. 16, 2012); *United States v. Barrett*, No. 12-7086, at *1-3 (10th Cir. May 2, 2013) (case management order) | N – E.D. Okla. Y – Circuit Ct. |
| **Battle, Anthony** | 11th | *United States v. Battle*, 291 F. Supp. 2d 1367 (N.D. Ga. 2003) | Y – N.D. Ga. |
| **Brown, Meier** | 11th | *Brown v. United States*, No. 403CR001, 2009 WL 307872 (S.D. Ga. Feb. 9, 2009); *Brown v. United States*, 720 F.3d 1316, 1325 (11th Cir. 2013) | Y – S.D. Ga. Y – Circuit Ct. |
| **Chandler, David Ronald** | 11th | *United States v. Chandler*, No. 1:95-cv-08005-JHH, at *1-3 (N.D. Ala. May 5, 1997) | Y – N.D. Ala. |

**Exhibit E**

App. 9

| LeCroy, William | 11th | *LeCroy v. United States*, 739 F.3d 1297, 1300 n.1 (11th Cir. 2014) | Y – N.D. Ga. |
|---|---|---|---|

---

**Exhibit E**