JUDGE ALAN D. ALBRIGHT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 6:99-CR-00070-ADA-2 |
| *Plaintiff,* | **THIS IS A CAPITAL CASE** |
| v. | <span style="color:red">**EXECUTION CURRENTLY SET FOR DECEMBER 10, 2020**</span> |
| BRANDON BERNARD, | REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE |
| *Defendant.* | |

## I.    SUMMARY OF ARGUMENT IN REPLY

Brandon Bernard moved to enjoin the government from executing him in contravention to the controlling statute, 18 U.S.C. § 3596(a), which provides that he must be afforded the opportunity to exhaust his ongoing appeal on an issue that this Court deemed compelling. In earlier proceedings before this Court, the government repeatedly conceded that the statute operates exactly as Bernard says: it prevents the setting of an execution date until a death-sentenced prisoner has exhausted all of his appeals. Now, however, the government tries to evade its concessions by substituting a strained interpretation of the statute that would empower it to schedule an execution that it lacks the power to carry out, because Bernard's ongoing appeals would prohibit the Attorney General from releasing Bernard to the

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE
GOVERNMENT FROM EXECUTING BRANDON BERNARD
UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 1

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

custody of the United States Marshal for execution. To state this position is to rebut it.

The government also insists it should be allowed to proceed with its unlawfully scheduled execution, contending that Bernard is unlikely to succeed in obtaining certiorari on the question of whether he should be allowed to secure review of his *Brady/Napue* claims via a motion under § 2255. The government is wrong about that contention, but that question is not the one now before the Court. The proper question is whether the government should be enjoined from carrying out an execution that offends a plain reading of 18 U.S.C. § 3596(a). That question, too, answers itself.

Those answers being unhelpful to the government's campaign to execute Mr. Bernard before his appeals can be heard, the government attempts to focus attention on its arguments against Bernard's *Brady/Napue* claims. Again, the merits of those claims are not the current issue. But the government's attempts to absolve itself of its misconduct by trivializing those claims are unavailing. The government's contentions, *inter alia*, fail to recognize the great weight that is afforded to opinions of law enforcement personnel, like the expert whose favorable opinion about Bernard the government suppressed until 2018.

Even though it seeks to execute Bernard contrary to statutory authority, the government contends that the equities favor such an execution, arguing that it has a strong interest in carrying out executions supported by unanimous juries after a fair trial and fair appellate process. The defense does not quarrel with that general proposition, but if the government were concerned about being able to carry out Bernard's execution it shouldn't have concealed Sgt. Hunt's favorable opinion for almost twenty years. As a direct

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2     Page | 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

consequence of that decision, neither Bernard's trial nor his initial § 2255 review process was fair. Had the government honored its *Brady* obligations, no jury would have returned any death sentence for Bernard. Proof of that contention is shown by the fact that the jurors – even when deprived by the government's misconduct of any opportunity to consider Sgt. Hunt's opinion – spared his life on two of the three death eligible counts, and that five of the nine surviving jurors, now having been fully apprised of the facts, no longer call for Bernard's execution.[1] And had the government not misled the court hearing Bernard's initial § 2255, the *Brady/Napue* claims would have been included in an amended § 2255 and resolved in his favor nearly a decade ago.

This Court need not decide today whether Bernard's trial process or his initial § 2255 proceeding was fair or unfair. All that it is called on to do is to ensure that Bernard is afforded the due process protections that are set forth plainly in § 3596(a) by permitting him, before he must face execution, to exhaust his appeals. That decision should be straightforward, since Bernard's judgment also contains a stay that mirrors the language of § 3596(a) and allows for such review. Because there is no legitimate interest in carrying out an unlawful execution, the Court should enjoin the government from executing Bernard until the Supreme Court has decided whether he may use § 2255 to obtain review of the merits of his pending *Brady/Napue* claims or has declined to review the issue.

---

[1] Motion to Enjoin at 4, n. 2 (dkt. 706).

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## II.    ARGUMENT IN REPLY

### A.    The government ignores its past concessions about what the statute means.

Before Mr. Bernard brought the instant motion, dkt. 706, the government repeatedly declared to this Court that 18 U.S.C. § 3596(a), as well as language contained within Bernard's judgment, prevents the government from setting an execution date until all appellate rights have been exhausted. Here is a collection of the government's concessions:

- "The only other requirement is that [a defendant] be able to exhaust *all of his appeals* and *all of his collateral review* ***before a date has been set* ….** Once the defendant has done -- has exhausted all of his remedies, he has no further right to delay under federal law…" Dkt. 706-3 at 50 (emphasis added);

- "…the Bureau of Prisons and the marshals have to wait until exhaustion for the procedures for appeal of the judgment and conviction and review of the sentence takes place before those be carried out. And that's also statutory in Title 18, United States Code, Section 3596(a)." Dkt. 706-3 at 16;

- "…the best reading of this is … that the Attorney General's discretion about when *to set a date* apply [sic] only when it's [sic] the defendant's appeals have run…" Dkt. 706-3 at 16-17 (emphasis added);

- "[A]s the judgment recognizes, an appeal would freeze [a defendant]'s death sentence, and BOP's authority *to schedule and proceed with* the execution would thereafter be constrained by the statutory requirement of 'exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence,' 18 U.S.C. § 3596(a) . . ."; Dkt. 680 at 10 (emphasis added);

- Nothing in the judgment suggests that those time limits also constrain the Attorney General's exercise of his discretion *to set* [a defendant]'s execution date *after all avenues* for appeal and post-conviction review are exhausted." Dkt. 680 at 6 (emphasis

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2     Page | 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

in original as to "after," emphasis added for "set" and "all avenues").

But having reviewed Bernard's motion, dkt. 706, the government now ignores all of its past pronouncements that § 3596(a) bars it from scheduling an execution date while Bernard completes his appeal. Contrary to its past readings of the statute, the government now advances the novel position that the "the statute says nothing at all about when the *scheduling* of an execution may occur as opposed to when the execution may occur." Response at 13 (emphasis original). This is an absurdly strained interpretation of the statute, since it would permit the government to set execution dates that it is powerless to carry out. That is exactly what the government did here – it set Bernard's execution date for December 10, 2020, despite that fact that his petition for certiorari is not due and will not be filed until April 2021. Thus, on December 10, Bernard's appeals will still be ongoing and the plain language of § 3596(a) will forbid the Attorney General from releasing Bernard to the U.S. Marshal for execution. What the government is attempting to do, is to drastically shorten the time available to the courts to review and decide an ongoing appeal, by setting an execution date that fails to honor the normal rules of appellate procedure. That is exactly the opposite of what Congress intended, which was to ensure that the setting of an execution date does not interfere with the courts' ability to give due consideration to a condemned defendant's appeals.

The government also implies that § 3596(a) might not encompass collateral relief proceedings. Response at 14. Yet in *Vialva*, the government expressly conceded that the relevant appeals under § 3596(a) include actions

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE
GOVERNMENT FROM EXECUTING BRANDON BERNARD
UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

seeking collateral relief, and it cites no authority to support its abrupt shift in position. *See* p. 4, *supra.*

Next, the government claims that even if – as it previously conceded – § 3596(a) includes review of § 2255 proceedings, Bernard has already completed that review by "thoroughly litigat[ing]" issues over the course of "almost two decades." Response at 14. What the government fails to acknowledge is that Bernard's review thus far has been anything but "thorough," because the government unconstitutionally suppressed Sgt. Hunt's expert opinion for those same "two decades," while misleading all courts into believing that such evidence would have been disclosed through an open file discovery policy that in reality did not exist. *See, e.g.*, Response at 11 (still suggesting that the government had a meaningful open-file discovery policy at trial while never denying that it hid Sgt. Hunt's expert opinion).

While the government does not explicitly so argue, its response suggests that this Court should deem Bernard's appellate processes exhausted because the Fifth Circuit has determined that review of Bernard's *Brady/Napue* claims is unavailable under § 2255.[2] But there is no authority for the proposition that the protection afforded by § 3596(a) vanishes during the brief window of time between when a lower court denies a claim and when the prisoner lodges his appeal of that denial with a higher court. And the Supreme Court, one suspects, would be surprised to learn that it has no role in the process of exhausting appellate rights in a federal death penalty case.

---

[2] Response at 14 ("Accordingly, all of the Fifth Circuit proceedings are now clearly final.").

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

The government next claims that § 3596(a) can't possibly be read to mean what the government previously declared it meant because that interpretation would theoretically allow a defendant to delay his execution indefinitely by filing an endless series of frivolous claims. Response at 14. But that hypothetical is not all reflective of the current situation. Here, there exists a need to fully litigate a substantial issue that this and other courts have deemed compelling, and which would allow review of meritorious *Brady/Napue* claims that could have been presented in Bernard's initial § 2255 motion but for the government's misconduct. *See Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018); *Long v. Hooks*, 972 F.3d 442, 486 (4th Cir. 2020) (en banc) (Wynn, Thacker, and Harris, JJ., concurring); *Allen v. Mitchell*, 757 Fed. Appx. 482 (6th Cir. 2018) at *4 (Moore, J. dissenting). Moreover, Bernard filed his *Brady/Napue* motion 621 days before the government announced its execution date. *Compare* dkt. 661 *with* dkt. 698. Indeed, in the circumstances of this case it makes the most sense to think of the current *Brady/Napue* action, for purposes of § 3596(a), as part of Mr. Bernard's initial § 2255 proceeding, a part that has been postponed as a consequence of the government's misconduct. The government's suggestion that it is being hampered by "dilatory tactics"[3] is baseless.

Finally, the government makes a strange complaint that "Bernard argues *for the first time* that both 18 U.S.C. § 3596(a) and the judgment in his case prevented the government from scheduling an execution date because he had not exhausted review of his conviction and sentence." Response at 13 (emphasis added). Of course, Bernard makes this motion for the "first time" – he could hardly have lodged this motion before the

---

[3] Response at 14.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

government scheduled the illegal execution date. Had the government given Mr. Bernard or this Court prior notice of its intentions, there would have been an opportunity for the Court to hear and decide these questions before the government rushed headlong into a violation of § 3596(a). And indeed, until the government prematurely set that date, Bernard had every reason to believe the government would not do so, given the pendency of his appeal and the government's past assurances to this Court about the meaning of § 3596(a). *See* pp. 4-5.

That an injunction is proper here is reinforced by comments and rulings that this Court made when evaluating different arguments made by counsel for Christopher Vialva. There, the Court held that the stay contained in the judgment was meant to ensure that a stay would prevent an execution from taking place until the defendants "had a chance to exhaust [their] appeals." Order, dkt. 690 at 6 ("When read in context with the entire judgment, it is clear the second paragraph was intended to limit only the Attorney General's authority to set an execution date before Vialva had a chance to exhaust his appeals.") Similarly, at oral argument the Court noted that the judgment's apparent intent was to ensure that "no action was taken with respect to the defendant until all of his rights – appellate rights were exhausted." Dkt. 706-3 at 12.

Unlike Vialva, Bernard is presently pursuing an appeal from this very Court. An injunction under 18 U.S.C. § 3596(a) is therefore necessary and proper.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 8

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

### B. Most of the government's response is irrelevant to the sole issue before the Court.

Absent any authority to support its strained interpretation of § 3596(a) or any authority contradicting Bernard's plain reading of the statute (a reading the government itself earlier endorsed), the government spends its response essentially inviting the Court to disregard § 3596(a) entirely and deny injunctive relief on the theory that Bernard must also show a substantial likelihood of having his petition for certiorari granted, as well as a substantial likelihood of prevailing on the merits of his *Brady/Napue* claims. Response at 7-12.

Because this argument would render § 3596(a) a nullity, offending both the statutory language and the language of the judgment, the Court can dispense with it quickly. Stated another way, the question for this Court is not whether it is reasonably likely that the Supreme Court will accept certiorari or eventually rule in Bernard's favor, but whether the government should be allowed, by executing Mr. Bernard long before his petition for certiorari is even due, to take from him the due process rights that every other litigant enjoys. *See* Motion at 7-9 (dkt. 706) (providing a detailed argument for why Bernard is entitled to apply for certiorari under the same rules as everyone else). Other than the government's zeal to execute him *right now*, there is no reason to so restrict Bernard's due process rights.

Nevertheless, Bernard will address the government's arguments regarding the likelihood of obtaining certiorari and prevailing on the merits of the underlying claims. But before he does so, it is important that the Court keep in mind that the government does not deny that it failed to disclose at trial Sgt. Hunt's expert opinion that Bernard was positioned on the very periphery of the gang – far below ringleader Christopher Vialva and two

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 9

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

other charged defendants (Terry Brown and Tony Sparks) who were given sentences of years. Nor does the government explain how this failing can be squared with its continuing claim[4] that it had an open file policy that would have, if it meaningfully existed, resulted in the disclosure of that expert opinion at trial, to Bernard's great benefit.

### 1. *The government improperly seeks to recast the question as whether Bernard will prevail in seeking certiorari.*

The government reluctantly recognizes that it is entirely proper for Bernard to seek Supreme Court review of the question of whether his *Brady/Napue* motion was improperly barred as successive. Response at 8-9 (citing *Castro v. United States*, 540 U.S. 375, 380 (2003)). Nevertheless, the government urges that, notwithstanding the plain language of § 3596(a), the Court should allow it to execute Mr. Bernard on December 10 unless he can show that he will likely succeed in persuading the Supreme Court to hear his case (adding that obtaining such review is unlikely because the Court has never before confronted this precise issue). *Id.* at 9.

First, this is the wrong question. The fallacy in the government's focus on obtaining certiorari can be seen by imagining a slightly different posture. Assume the government had set Mr. Bernard's execution while his initial appeal was pending, and Mr. Bernard objected under § 3596(a) and the language of the judgment. Would the Court indulge the government's argument that "We are entitled to schedule Mr. Bernard's execution because he can't show that he will win his appeal"? Of course not, because that is not the question under § 3596(a) – the question is *only* whether Mr. Bernard's

---

[4] Response at 11.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

review rights have terminated. The situation is no different now, when Mr. Bernard is litigating a substantial issue that, if the position of numerous federal appellate judges is accepted, will demonstrate that Mr. Bernard is still on his first complete round of sentence review.

Moreover, the government's contention that Mr. Bernard's certiorari petition has little chance because it presents a novel question for the Supreme Court is an odd one, since the Court is routinely called upon to resolve undecided questions, and an emerging line of cases shows that the issue is, as this Court recognized, compelling. *See Scott, Long, Allen, supra.*

The faulty nature of the government's argument can be readily seen by that fact that before the Supreme Court reversed the Fifth Circuit in *Panetti v. Quarterman*,[5] the Court had not endorsed the position that *Panetti* addressed. The government also suggests that certiorari will not likely be granted because Bernard has "fully litigated" a § 2255 petition. Response at 9. This contention fails since the government's misconduct prevented Bernard from identifying, let alone fully litigating, the issues that would have reversed his death sentence. While Bernard is not obligated here to show a reasonable likelihood of certiorari being granted, he has in fact done so.

### 2. Bernard has demonstrated compelling Brady/Napue claims.

Despite never having been afforded discovery or an evidentiary hearing, Bernard has demonstrated powerful *Brady / Napue* claims. Dkt. 661. First, as noted, the government does not dispute that *it never disclosed Sgt. Hunt's favorable expert opinion to any attorney charged with preventing Bernard's execution*. Second the record plainly shows that the government

---

[5] 551 U.S. 930 (2007).

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

was, in 1999, aware of Sgt. Hunt's work product and opinions. Dkt. 661-1 at 9. Nevertheless, the government argues that it cannot be faulted for not disclosing Sgt. Hunt's 2018 testimony since it did not exist in 2000. Response at 11. This position could hardly be more disingenuous. What the government can and should be faulted for is not disclosing the expert opinion of Sgt. Hunt that it had in its possession in 1999. The 2018 testimony is relevant to the current claims only because it documents that the government in fact was aware of her opinion years earlier, at the time of Bernard's trial.

The government suggests that this is of no moment because the government is not obligated to disclose to Bernard information about his own status in the gang. Response at 11. This argument is a red herring – the *Brady/Napue* claims rest on the expert opinion of Sgt. Hunt, which is a very different matter than Bernard's personal knowledge. And given that the government has forever maintained that it had an open file policy, *see, e.g.*, Response at 11, Bernard cannot be faulted for failing to discover Sgt. Hunt's expert opinion: Defense counsel cannot be forced to "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks v. Dretke*, 540 U.S. 668, 695 (2004); *see also Strickler v. Greene*, 527 U.S. 263, 283 n. 23 (1999) ("if a prosecutor asserts that he complies with *Brady* through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under *Brady*.").

The hollowness of the government's efforts to label this evidence as tangential[6] – when it favors Bernard – can readily be seen by the fact that the government considered the evidence compelling enough to emphasize in

---

[6] Response at 11.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2     Page | 12

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Sparks' resentencing. Dkt. 661-1 at 9-11. The fact that Sparks' sentencing court found Sgt. Hunt's opinion especially valuable drives this point home. Dkt. 661-2 at 10, 15.

The government also invokes the testimony of lay witnesses in dismissing its *Brady/Napue* violations as immaterial. Response at 11-12. This argument fails because, regardless of the strength of the lay testimony about the structure of the gang, the opinion of a law enforcement expert cannot be deemed cumulative to that testimony. *See*, *e.g.*, *Boss v. Pierce*, 263 F.3d 734, 745 (7th Cir. 2001) (stating that "[i]ndependent corroboration of the defense's theory of the case by a neutral and disinterested witness is not cumulative of testimony by interested witnesses, and can undermine confidence in a verdict."); *Skipper v. South Carolina*, 476 U.S. 1, 7-8 (1986) (jurors would give "much greater weight" to testimony from "disinterested witnesses" than from those with "reason to be favorably predisposed toward" the defendant).

A fundamental argument advanced by the government in support of a death sentence was that Vialva and Bernard were "top dog" gangsters who had earned their spot on death row because they were so enamored with the gang life they would never leave it and would inevitably grow more violent in prison. Dkt. 319 at 73. Bernard's trial attorneys could have squarely rebutted this theory (which time has proven to be utterly incorrect) if they had been armed with Sgt. Hunt's expert opinion. Thus, while not obligated to do so at this juncture, Bernard has shown a substantial likelihood of success on the merits of his *Brady/Napue* claims.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 13

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## III.   THE EQUITIES LIE WITH BERNARD.

Despite never challenging that fact that it suppressed Sgt. Hunt's opinion for more than two decades, the government claims that the equities favor executing Bernard on December 10. Response at 14-15. But there is no equitable interest behind the setting of an arbitrary execution date that would erode the due process guarantees that 18 U.S.C. § 3596(a) was designed to protect. Nor is there any equitable interest in carrying out a death sentence that was imposed by a jury denied access to critically important evidence by government misconduct.[7]

## IV.   CONCLUSION

The Court should grant Bernard's requested injunction.

Respectfully submitted,

Robert C. Owen
Law Office of Robert C. Owen
53 W. Jackson Blvd., Ste. 1056
Chicago, IL 60604
(512) 577-8329
robowenlaw@gmail.com

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
(253) 593.6710
john_carpenter@fd.org

---

[7] The government also claims that the equities lie in its favor because Stacie Bagley was burned alive. Response at 15. The defense has no quarrel with the fact that the crime senselessly took the lives of two good people. But to the extent this "burned alive" comment suggests that Mrs. Bagley suffered because of that fire, it is false and the record needs to be clarified. It is undisputed that the fire could not have in any way contributed to Mrs. Bagley's suffering, given that the unsurvivable gunshot wound inflicted by Vialva rendered her immediately unconscious, and in the fleeting moments that preceded her death Mrs. Bagley never regained consciousness or the ability to feel pain. Dkt. 706-1 at p. 3 n. 3 and p. 13 nn. 11 & 12 and accompanying text.

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 14

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all registered parties.

I further certify that I mailed one copy of the foregoing document to Defendant Brandon Bernard via U.S. mail.

s/ Amy Strickling, Paralegal
Federal Public Defender Office

REPLY BRIEF IN SUPPORT OF MOTION TO ENJOIN THE GOVERNMENT FROM EXECUTING BRANDON BERNARD UNTIL APPEALS ARE COMPLETE
*United States v. Bernard*, 6:99-CR-00070-ADA-2    Page | 15

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**