JUDGE ALAN D. ALBRIGHT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 6:99-CR-00070-ADA-2 |
| | ) | |
| *Plaintiff,* | ) | **THIS IS A CAPITAL CASE** |
| | ) | |
| v. | ) | <span style="color:red">**EXECUTION CURRENTLY SET**</span> |
| | ) | <span style="color:red">**FOR DECEMBER 10, 2020**</span> |
| BRANDON BERNARD, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(c)(1)**

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(c)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2)

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

# TABLE OF CONTENTS

I.    SUMMARY ................................................................. 1

II.   THE FIRST STEP ACT EMPOWERS THIS COURT TO MODIFY BRANDON'S SENTENCE ........................................ 2

    A.    Brandon has satisfied the claim processing rule that allows this Court to decide this motion. .................................... 2

    B.    The Court has broad discretion under the First Step Act to modify Brandon's death sentence to life imprisonment with no possibility of parole. ................................................. 3

III.  A GREAT NUMBER OF EXTRAORDINARY AND COMPELLING REASONS EXIST FOR MODIFYING BRANDON'S SENTENCE. .................................................. 5

    A.    Summary of arguments in support of the requested sentence modification. ............................................... 5

    B.    This case is tainted with the implicit racism of the times in which the case was tried ........................................ 9

        1.    The superpredator myth contaminated this case from the very start. ........................................... 9

        2.    A death verdict resulted because the superpredator myth entered the courtroom ............................... 13

        3.    President Trump passed the First Step Act to give the Court the power to correct the disastrous impacts of the superpredator myth .............................. 17

    C.    Contrary to the superpredator myth, Brandon expressed immediate remorse to a number of spiritual providers, none of whom was called to testify at the trial. ........................ 19

    D.    Brandon's disadvantaged upbringing, which the jury heard nothing about, also supports this motion. .................................. 21

    E.    That Brandon has tried to make amends as best as he could ever since the offense provides another basis for this motion. ............................................................. 21

    F.    The position of a majority of the surviving jurors provides another basis for this motion. .................................... 24

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IV.   CONCLUSION..................................................................................27

CERTIFICATE OF CONFERENCE...........................................................28

CERTIFICATE OF SERVICE....................................................................30

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page ii

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.   SUMMARY

While Brandon Bernard was involved in a horrible crime, he does not deserve to die for his role in that crime. Five of the nine surviving jurors agree with that assessment, as does the former Assistant United States Attorney who prosecuted this case on direct appeal. Brandon was only 18 years old at the time of the offense, and therefore barely eligible for the death penalty. Brandon is Black. The victims were White. The decision to try Brandon's case as a death penalty case was the product of the times, when the superpredator myth caused large swaths of society to view Black adolescent males as having no conscience and being inevitably drawn to violence. The government's future dangerousness theories in support of the death penalty advanced these very themes. Both the initial charging decision and the verdict itself are tainted by this racist trope. Recent DOJ charging decisions – involving defendants who, acting alone or as principals, committed far worse acts than Brandon – suggest that if this case were brought today, the death penalty would not even be authorized against Brandon. Brandon was not present when three others – including the ringleader Christopher Vialva, who directed all of the actions and fired the gunshots that killed the Bagleys – abducted the Bagleys. Vialva has been executed. Another codefendant involved in this case, who was just under 18 years old at the time of the offense and whose conduct mirrored Brandon's, was given a twenty-year sentence and has since been released from prison. Brandon's execution cannot be squared with that result. Nor can it be reconciled with the fact that, due to the failings of his trial attorneys and the government's suppression of evidence, the jury was not provided with the facts needed to decide his fate fairly. The First Step Act authorizes this Court to modify Brandon's sentence

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 1

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

from death to that of life imprisonment. Fairness dictates that it should do so.

## II. THE FIRST STEP ACT EMPOWERS THIS COURT TO MODIFY BRANDON'S SENTENCE

### A. Brandon has satisfied the claim processing rule that allows this Court to decide this motion.

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), federal courts had limited power to modify terms of imprisonment. With the Act's passage, however, a "court … may reduce the term of imprisonment" upon request by an inmate, so long as thirty days have passed since that inmate made a request to the Warden to modify the sentence. *See, e.g., United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A). In the words of the statute, courts may hear requests:

> …upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier….

*Franco*, 973 F.3d at 467 (quoting 18 U.S.C. § 3582(c)(1)(A)). The *Franco* court followed the cogent analysis of the Sixth Circuit in noting that the requirement that an inmate's filing of a request for sentence reduction under the statute was not a jurisdictional prerequisite, but a simple claims processing rule. *Id.* (citing *United States v. Alam*, 960 F.3d 831, 822 (6th Cir. 2020)). *Id.*

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In this case, Brandon has satisfied the claim processing rule by requesting, more than thirty days ago, that the Warden modify his sentence from that of death to life imprisonment. The Warden denied that request. *See* Exhibit 1. The Court is therefore empowered to grant this motion.

### B.   The Court has broad discretion under the First Step Act to modify Brandon's death sentence to life imprisonment with no possibility of parole.

This Court has the statutory authority to grant Mr. Bernard relief from his death sentence based on the extraordinary and compelling circumstances discussed below. Specifically, 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, empowers a district court to grant compassionate relief "in any case" where it finds that extraordinary and compelling reasons warrant relief. The text of the statute is unambiguous in granting the courts this authority, and the legislative history of both the Comprehensive Crime Control Act of 1984 and the First Step Act reinforce the statute's plain meaning. *See* S. Rep. No. 98-225, at 55–-56, 121 (1983).

Viewing that same text and legislative history, four federal courts of appeals have held that district courts have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *United States v. Jones*, -- F.3d --, No. 20-3701, 2020 WL 6817488, at *1–2 (6th Cir. Nov. 20, 2020). *See also United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020); *United States v. Gunn*, -- F.3d --, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020);

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

*United States v. Cantu*, 423 F.Supp.3d 345, 351–52 (S.D. Tex. 2019) (following the majority of district courts and holding that the correct interpretation of § 3582(c)(1)(A) – based on text, statutory history and structure – is that when a defendant brings a motion for modification under 18 U.SC. § 3582(c)(1), the court has discretion to determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief).

Thus, this Court has the authority to exercise compassion by granting Mr. Bernard relief from his death sentence through the "mechanism of lenity" provided by the First Step Act, § 3582(c)(1)(A), which states that the court may reduce a sentence if it finds "extraordinary and compelling reasons" exist for the reduction. It was always the intent of Congress that § 3582(c)(1)(A) operate as a "safety valves for modification of sentences" allowing for "later review of sentences in particularly compelling situations[.]" *See* S. Rep. No. 98–225, at 55–56, 121 (1983). In particular, it was Congress's intent that this authority be exercised in a manner that keeps "the sentencing power in the judiciary where it belongs." *Id.* at 121 (emphasis added).

For this reason, the Fourth Circuit rejected the government's claim made in *McCoy* that the district court usurped the role of the executive branch in finding that extraordinary and compelling reasons existed for compassionate release, likening the court's grant of compassionate release to executive clemency. Rather, as the *McCoy* court pointed out, the defendants had not petitioned for clemency directed at the executive branch but instead "moved for compassionate release under a duly enacted congressional statute, which, in turn, authorizes the judicial branch to grant such motions." *McCoy*, 2020 WL 7050097, at *12. The court went on to say that "while the

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

finality of sentences in an important principle, § 3582(c)(1)(A) 'represents Congress's judgment that the generic interest in finality must give way in certain individual cases,' and authorizes judges to implement that judgment. To the extent the government suggests that the district court decisions here violate the constitutional separation of powers, we do not agree." *Id.* (internal citation omitted).

In other words, the exercise of this Court's full discretion to grant Mr. Bernard compassionate[1] relief makes no end run around the power reserved to the executive branch. Rather, Congress has specifically provided this Court with the power to correct an injustice, which as the *McCoy* court made clear is in harmony with our system of checks and balances. Thus the Court has the statutory authority to grant compassionate relief here based on "extraordinary and compelling reasons," which compel that Mr. Bernard's life be spared.

### III.   A GREAT NUMBER OF EXTRAORDINARY AND COMPELLING REASONS EXIST FOR MODIFYING BRANDON'S SENTENCE.

#### A.   Summary of arguments in support of the requested sentence modification.

A majority of the surviving jurors in this case no longer support the death sentence that they issued for Brandon in 2000. As noted, the decision to try Brandon's case as a capital one was likely driven by the racist theories that underlay the now-discredited superpredator myth – that Black

---

[1] "The Compact Edition of the Oxford English Dictionary (1971 ed.) at 489 defines 'compassion' as: 'The feeling or emotion, when a person is moved by the suffering or distress of another, and by the desire to relieve it; pity that inclines one to spare or to succour.'" *United States v. Shakur*, -- F.Supp.3d --, No. 82 CR 312 A(CSH), 2020 WL 6482875, at *1, n.1 (S.D.N.Y. Nov. 2, 2020).

adolescent males are inherently dangerous and must be locked up else they grow more and more violent. This is exactly the theory that the government advanced to secure a death sentence, and it holds no currency today. Recent decisions from the DOJ show that, if this case were prosecuted today, Brandon would not even be selected for capital prosecution. And Brandon has proved the government's future dangerousness prediction to be entirely false; he has been a model prisoner without a single disciplinary infraction in twenty years of confinement, and has repeatedly expressed remorse for his actions and counseled others not to follow in his path.

The death penalty should be reserved for the worst murderers, and Brandon is certainly not a member of that class. Brandon was just eighteen years old at the time of the offense. He had no prior violent criminal record, and had a minor role in the offense, relative to that of ringleader Christopher Vialva. Brandon was not even present when the Bagleys were abducted, nor did he participate in the prolonged captivity and robbery that followed. Vialva is the one who decided to kill the Bagleys, shooting them both in the head at close range.

At Vialva's direction,[2] and along with codefendant Terry Brown, Brandon did help set fire to the Bagleys' car, but he believed Mrs. Bagley to

---

[2] More than fifteen years ago, the Government unequivocally committed itself to the view that the trial evidence "showed that the Bagleys' car was set on fire based on the [sic] Vialva's plan and 'at the direction of Mr. Vialva.'" Response to Motion to Vacate, Set Aside or Correct Sentence, (dkt. 418) at 75, *United States v. Bernard*, No. W-99-CR-70(2) (WDTX, December 8, 2004). More recently, the Government emphatically told the Supreme Court that Mr. Vialva was the mastermind behind these offenses, calling him "the ringleader of the murders of Todd and Stacey Bagley." Brief of the United States in Opposition to Petition for a Writ of Certiorari and to Application for a Stay of Execution at 26, *Vialva v. United States*, Nos. 20-5766 and 20A49 (U.S. Sup. Ct., September 22, 2020). And at the change of plea

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

be dead at that point, and she may very well have been.[3] Regardless of whether Mrs. Bagley lived for a few moments after that gunshot, that wound in itself was going to cause her death, and there is no dispute that the gunshot immediately rendered her unconscious and therefore unable to feel pain until her death.[4] Thus, contrary to what has often been implied throughout this

hearing for codefendants Terry Brown and Christopher Lewis, the government declared this as fact:

> AUSA: Before the trunk was shut, and at the direction of Vialva, Brown poured some lighter fluid into the trunk area. *At the direction of Christopher Vialva*, Bernard then lit a match and threw it inside the vehicle, which ignited the fire in the vehicle.

Transcript of Rearraignment Proceedings, *United States v. Terry Terrell Brown*, W-99-CR-061 (1) and *United States v. Christopher Michael Lewis*, W-99-CR-061 (2) (December 16, 1999) at 35 (AUSA Mark Frazier, describing the factual basis for the guilty pleas of both Brown and Lewis), attached as Exhibit 5 to Motion to Vacate, Set Aside, or Correct Judgment and Sentence, *Bernard v. United States*, No. 6:04-cv-00164-WSS (June 14, 2004), dkt. 377-3 at 109, 144 (emphasis added).

[3] Post-trial, a prominent Texas forensic pathologist reviewed the evidence and concluded that Mrs. Bagley was likely already medically dead by the time she was exposed to the fire, as the unsurvivable gunshot wound to the head administered by Vialva likely immediately killed her. *See* Declaration of Stephen Pustilnik, M.D. (former Chief Medical Examiner of Galveston County, Texas, and current Chief Medical Examiner of Fort Bend County, Texas), at ¶¶ 12, 14, 15 (October 25, 2012) (Attached as Exhibit 2).

[4] As the Government has recognized, consciousness is a prerequisite to experiencing pain or suffering. In defending its current execution protocol, the Government states that pentobarbital ensures a humane death precisely because it causes the condemned prisoner to "lose consciousness within 10-30 seconds," with the result that he is "unaware of any pain or suffering before death occurs within minutes." *See* Application for a Stay or Vacatur of the Injunction Issued by the United States District Court for the District of Columbia, *United States v. Lee*, No. 20A8 (U.S. Sup. Ct., July 13, 2020).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

case, Mrs. Bagley did not suffer an agonizing death because of the fire that Brown and Bernard set at Vialva's direction.[5]

As noted, Terry Brown engaged in essentially the same conduct as Brandon, yet Brown was given a 20-year sentence while Brandon now faces execution. The only reason for this gross disparity is that Brandon was 18 years old at the time of the offense, while Brown was 17 years old – in fact just two months and nine days shy of 18. Given that Brown's accomplice liability mirrored Bernard's, this case shows the extreme arbitrariness of the administration of the death penalty.

Society as a whole is stepping away from the death penalty. Executions and new death sentences have both been in a steep decline for the last two decades. Executing Brandon now would be especially arbitrary, since the Biden administration has pledged to stop all federal executions.[6] Brandon is not among the "worst of the worst" for whom the federal death penalty ought

---

[5] Even one of this Court's past orders have wrongly implied this, no doubt inadvertently. *See* Order on Motion for Injunctive Relief at 2, dkt. 690, *United States v. Christopher Andre Vialva*, W-99-CR-070(1) (W.D.TX, Waco Division, September 11, 2020) ("Todd was instantly killed, but Stacie survived the gunshot long enough to *burn alive* after one accomplice, Brandon Bernard, set the car on fire.") (emphasis added).

[6] *See* https://joebiden.com/justice/#. The section that outlines the incoming administration's plan to strengthen America's commitment to justice provides:

- **Eliminate the death penalty**. Over 160 individuals who've been sentenced to death in this country since 1973 have later been exonerated. Because we cannot ensure we get death penalty cases right every time, Biden will work to pass legislation to eliminate the death penalty at the federal level, and incentivize states to follow the federal government's example. These individuals should instead serve life sentences without probation or parole.

---

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

to be reserved, and it would be a terrible tragedy for him to be among the very last federal prisoners to be executed.

The jurors spared Brandon's life on two of the three death-eligible counts, despite that fact that his trial attorneys failed to present any meaningful case for life, even waiving opening arguments at both phases of the trial. If Brandon's trial counsel had presented jurors with other readily available information (such as his disadvantaged upbringing and early expressions of remorse to religious leaders), the jury would not have reached a verdict of death, a fact that several jurors now confirm.

Brandon Bernard should not be on Death Row. This Court should reduce his sentence to life imprisonment without the possibility of release.

### B. This case is tainted with the implicit racism of the times in which the case was tried.

#### 1. *The superpredator myth contaminated this case from the very start.*

Beginning around 1994, the media seized on a term popularized by academics John J. DiIulio and James Alan Fox: "superpredators." DiIulio and Fox warned of incoming waves of violence perpetuated by adolescents who were predisposed to violence and incapable of feeling remorse:

> DiIulio warned that by the year 2000 an additional 30,000 young "murderers, rapists, and muggers" would be roaming America's streets, sowing mayhem. "They place zero value on the lives of their victims, whom they reflexively dehumanize as just so much worthless 'white trash,'" he wrote.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Carol Bogert and Lynnell Hancock, "*Superpredator: The media myth that demonized a generation of black youth*," The Marshall Project (November 20, 2020).[7]

While the term was not explicitly racist, it was racially charged: as DiIulio's invocation of the phrase "white trash" suggests. The term's negative impact across communities of color can hardly be overstated – it changed for the worse the way prosecutors, judges, juries, and the community at large viewed young Black men. A constant media focus on the term "superpredator" caused an unfounded panic that was premised on the idea that a lot of young Black kids were remorseless criminals who relished violence for its own sake.[8]

The hysteria that surrounded this term was used to increase the punishments in many jurisdictions and led to the passage of the "Violent Crime Control and Law Enforcement Act of 1994," 108 Stat 1796, which among other things expanded the federal death penalty to cover carjackings resulting in death.[9] 18 U.S.C. § 2119. With this carjacking expansion, the 1994 crime bill supported the idea that Brandon's case should be prosecuted

---

[7] https://www.themarshallproject.org/2020/11/20/superpredator-the-media-myth-that-demonized-a-generation-of-black-youth

[8] *See generally* "The Super Predator Scare", New York Times Video (April 6, 2014) (https://www.nytimes.com/video/us/100000002807771/the-superpredator-scare.html).

[9] *See, e.g.*, U.S. Dept. of Justice Fact Sheet on the Violent Crime and Law Enforcement Act of 1994 (October 24, 1994) (https://www.ncjrs.gov/txtfiles/billfs.txt).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

federally, even though nothing about the surrounding facts otherwise cried out for federal prosecution.

The decision by Janet Reno to try Brandon's case as a death case certainly was driven by the superpredator hysteria. There is just no other explanation for it. Brandon was only 18, he was a non-shooter, and he wasn't present for the abduction. He wasn't present for the robbery. He did not lead or direct the actions of the others involved. These tragic events were organized and directed by Christopher Vialva, whom the government has rightly recognized as the ringleader. As repeatedly acknowledged by the government, Brandon followed Vialva's directions. That was his great fault. He was a follower who did not stand up and stop the madness. The results were horrible, but he is not, and his actions on that day do not warrant his execution.

That the decision to try Brandon's case as a capital case can be seen as a product of the times – and an era that has receded into the past – is illustrated by the cases that the Attorney General *has* elected *not to try* as capital cases, cases that present far more aggravated facts than that of Brandon's conduct.

For example, in May 2019 the Government agreed to spare Mariah Ferry, Chase Smothermon, and Jose Torrez. The three conspired to abduct two victims after the victims stole their marijuana and cash. They beat one with a baseball bat, bound him, and then videotaped his further assault and death. They then committed "unthinkable acts of desecration" on his body. Showing pictures of the desecrated victim's body to the other victim, they assaulted him for hours and threatened to do the same to him unless he

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

showed them where the stolen drugs were, stating they killed the first victim "as a lesson to others."[10]

In November 2019, the Government chose not to pursue the death penalty against Ryan Bacon and Dontae Sykes. As a result of a dispute between drug dealers, Bacon, Sykes and others stalked the other dealer for over a month, placed a bounty on his head, kidnapped and murdered his girlfriend (shooting her five times), and accidentally shot a 6-year-old boy while attempting to shoot the other dealer. The boy has been left largely paralyzed.[11]

In May, 2019, the Government elected to forego the death penalty as to Jeremiah Farmer. Farmer was convicted at trial of two RICO murders in connection with gang activity. The victims died of extensive head injuries due to blunt force trauma. The charges were originally brought by the state, but were dismissed after critical witnesses recanted their statements to police following threats and intimidation. Farmer also engaged in robbery, threat to kill, and a shooting that appeared intended to kill; he described his pleasure in hitting people hard enough to break their bones.[12]

---

[10] *See* Courtney Allen, *Two final suspects take plea deals in brutal killing*, KRQE (February 13, 2020) (https://www.krqe.com/news/crime/two-final-suspects-take-plea-deals-in-brutal-killing/); United States Sentencing Memorandum, *United States v. Smothermon*, No. 18-cr-930-2 MV, dkt. 263 (D.NM, June 10, 2020).

[11] *See* Xerxes Wilson, *Drug dealer who admitted role in 6-year-old's shooting, woman's execution takes plea*, Delaware Online (January 10, 2020) (https://www.delawareonline.com/story/news/2020/01/10/man-takes-plea-death-penalty-case-boys-shooting-womans-murder/4429530002/); Redacted Indictment, *United States v. Bacon*, No. 18-75-DNA, dkt. 3 (D. Del. October 4, 2018).

[12] *See* Meredith Colias-Pete, *Gang member convicted in 1999 Hammond double murder*, Chicago Tribune (July 11, 2019) (https://www.chicagotribune.com/suburbs/post-tribune/ct-ptb-hammond-farmer-

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 12

**FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710**

These cases differ from Brandon's in that in each case the defendants were the principal actors in their horrific crimes. In contrast, Brandon was an 18–year–old accomplice who did not occupy a leading role in the offense for which he has been sentenced to death.

### 2.    A death verdict resulted because the superpredator myth entered the courtroom.

As with the decision to charge Brandon's case capitally, the resulting death sentence was also a product of the moral panic generated by the superpredator myth. In fact, the government invited the jurors to return a verdict that was based on that false myth. The crux of the government's case was that Vialva and Brandon were apex predators who needed to be killed rather than merely caged. While suppressing expert opinion evidence that Brandon was only peripherally in the gang,[13] the government labeled Brandon as a "top dog"[14] – a leader who had earned a spot on death row.

The government provided wholly unscientific "evidence" of future dangerousness (via Richard Coons) – whose testimony of that nature has since been barred from the courtroom because it rests on no scientific method at all.[15] The government's evidence endorsed the idea promulgated by DiIulio

---

sentence-st-0711-20190711-32s7ti6nkbgzzd33rxhrt4wr4i-story.html)*;*
Government's Sentencing Memorandum, *United States v. Farmer*, No. 2:15 CR 72, dkt. 2791 (ND Ind. October 21, 2020).

[13] *See generally* Motion for Relief from Judgment, dkt. 661 (February 4, 2019).

[14] Dkt. 319 at 73.

[15] Coons' unreliable predictions mar the trial record at dkt. 318, pages 230-40. Among other errors, Coons blithely and unequivocally declared (with no objection from defense counsel) that "[t]he members of the gang will be asked to participate in criminal acts and violent acts [in prison]. I mean, that's just the facts." Dkt. 318 at 239. Coons' opinions were rightly barred from the courtroom as unreliable in

---

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 13

**FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710**

and Fox, that Brandon was a violent and amoral character with no impulse control. The government called a BOP intelligence officer (Anthony Davis), who incorrectly implied (without challenge from Brandon's trial counsel) that Brandon's so-called gang ties meant that he would inevitably grow more violent over time, even if imprisoned on death row. Davis wrongly suggested that Brandon was part of a national gang, before wrongly suggesting that Brandon had no capacity for rehabilitation. Davis then declared that all gang members would "still do the same thing [in prison], burglary, robbery, they prey on the weak, they like to in the limelight, commit big crimes. The only exception would be no carjacking and stealing cars."[16] Davis also declared that the youngest members of a gang would be especially prone to violence, stating this in unequivocal terms.[17] Consistent with the superpredator myth, Davis subsequently agreed with the prosecutor's loaded question, "And does that generally mean that the younger or newer gang members to the prison

_____

*Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Before that barring, the Fifth Circuit relied upon them to support the incorrect future dangerous prediction and uphold Brandon's unjust death sentence on direct appeal, despite the fact that they were nominally offered only against Vialva. *See United States v. Bernard*, 299 F.3d 467, 482 n.11 and accompanying text (5th Cir. 2002).

[16] Dkt. 318 at 242-43.

[17] Representative testimony provides:

> When inmates come into the system, they are given a list of rules and regulations of things you can and cannot do. If he comes into the system and the Bloods want to recruit him, he has to be the low man on the totem pole. *He will commit crimes, he will prey on the weak, he will commit assaults, he will traffic drugs, he will sanction hits, if necessary, and carry them out, in order to "make bones" to be a part of that gang.*

Dkt. 318 at 244 (emphasis added).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 14

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    system are generally the more violent ones?"[18] This myth was then wrongly

2    advanced on appeal, where the government repeated the incorrect claims that

3    Brandon was part of a national gang and would therefore grow more and

4    more violent as he matured in prison.[19] The former Assistant United States

5    Attorney who prosecuted that appeal has since authored an op-ed piece

6    asking the Brandon's life be spared.[20]

7

8

9

     _____

10 [18] Dkt. 318 at 245.

11 [19] The government in its brief on direct appeal argued emphatically that the trial

12 evidence showed "[c]learly" that Bernard's "membership in a violent gang" showed
"that Bernard will be a danger to the community in the future":

13      Appellant Bernard provided the gun, the incendiary fluid, the vehicle to

14      accomplish the plan to car jack some innocent bystander and to rob them,
     and actually lit the car on fire. Bernard's same vehicle was used as a get

15      away car. Further, *Bernard's history showed this activity was related to*

16      *his membership in a violent gang. Clearly, the facts and intent regarding*
     *the instant offense show that Bernard will be a danger to the community*

17      *in the future. Appellant Bernard was affiliated with a nationwide gang*
     *called "the bloods" (18 R. 1861). Appellants Bernard and Vialva were part*

18      *of the "2-1-2 PIRU" gang in Killeen, which was part of the Bloods (18 R.*
     *1863).*

19

20 Brief for the United States, *United States v. Bernard*, No. 00-50523 (5th Cir. October
18, 2001), 2001 WL 34093837 at *122 (emphasis added; footnote deleted).

21

22 [20] Angela Moore, Opinion Contributor, "I helped put an 18-year-old Black teen on
federal death row. I now think he should live," USA Today (December 5, 2020), the

23 op-ed is available here:
https://news.yahoo.com/helped-put-18-old-black-120025358.html

24 Ms. Moore was also interviewed about Brandon's case by CBS News, the video of
which can be reviewed here:

25      https://www.cbs.com/shows/cbs_this_morning/video/0H_qngRWe5zi2_w_ubQSI
     PRTTbqycHRm/former-prosecutor-jurors-back-federal-inmate-who-is-set-to-

26      die-next-week/

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Brandon's trial attorneys failed to provide any meaningful counter narrative to this future dangerousness testimony, and consequently, the jurors collectively believed it to true, wrongly concluding that Brandon would in fact present such a future danger.[21] That incorrect conclusion could have been thoroughly undercut at trial, if only Brandon's trial attorneys had called Novotny Baez, Brandon's former probation officer. Ms. Baez would have been eager to testify, since she worried at the time of trial that the combination of Black defendants and White victims presented a real danger of an unjust verdict in the Western District of Texas in 2000. Had counsel bothered to contact her, she would have presented testimony to contradict the flawed predictions of future dangerousness, since she supervised Brandon shortly before the crime, when he was 16 and 17 years-old, describing him then "low-key and respectful and "a sweet, nice kid," around whom she never felt threatened.[22]

Time has proven the predictions of future dangerousness totally wrong. A former warden of the very institution in which Brandon is now confined has reviewed Brandon's spotless disciplinary record and concluded that Brandon "would function exceptionally well in a less–restrictive environment without posing any risk to institutional security and good order, or posing

---

[21] Dkt. 286 at 70.

[22] Declaration of Novotny Baez at ¶ 2 (August 25, 2020) (Attached as Exhibit 3)

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 16

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

any risk to the safety and security of staff, inmates or others."[23] In fact, Warden Bezy is particularly emphatic in stating how remarkable Brandon is:

> The record also reflects that Bernard has had, and continues to have, a solid support base with his family and friends. Again, it should be noted that Bernard has not received a single Incident Report for violating any prohibited act in the Inmate Disciplinary Program for over 16 years on the Special Confinement Unit (Death Row). This is remarkable. I am unaware of any other inmate who has been on the federal Death Row for at least 16 years without receiving a single incident report.

Moreover, Warden Bezy opined that Davis's "trial testimony that suggested that Bernard would necessarily associate with any such gang and engage in acts of violence was exaggerated and inaccurate."[24]

### 3. President Trump passed the First Step Act to give the Court the power to correct the disastrous impacts of the superpredator myth.

The data underlying the superpredator myth was misinterpreted; accordingly, the predicted wave of "teenage savagery" never arrived. The term and the surrounding panic are now rightly viewed part of as a shameful illustration of racism corrupting the criminal law.[25] But by the time this mistake was recognized, the damage had been done for Brandon and countless others.

In an effort to undo some of the damage that his coined term had caused, DiIulio joined an Amicus Brief in *Miller v. Alabama*,[26] arguing that

---

[23] Letter of Warden Mark A. Bezy (retired) at 2 (August 20, 2016) (Attached as Exhibit 4).

[24] *Id.*

[25] New York Times Video Report, supra, n. 8; Marshall Report, *supra*, n. 7.

[26] 567 U.S. 460 (2012).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 17

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

advances in our understanding of the adolescent brain development could not support the mandatory imposition of life sentences on juveniles.[27] The Supreme Court ultimately agreed with that assessment, which is what allowed Judge Lee Yeakel to recalibrate Tony Sparks's natural life sentence to one of 35 years.

But there has yet to be any similar recalibration for Brandon, despite the fact that, unlike Sparks, Brandon did not participate in the Bagleys' abduction and was only tangentially associated with the youth gang. As noted, Terry Brown, whose conduct mirrored that of Brandon's and who avoided capital prosecution because he was only nearly 18 years-old, was given a twenty-year sentence and has since been released from custody.[28] Brown's sentence cannot logically be squared with Bernard's execution.

---

[27] New York Times Video Report, supra, n. 8 (noting that DiIulio joined the amicus).

[28] According to the BOP website at Inmate Locator (bop.gov), Terry Terrell Brown was released from custody on January 06, 2020.

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 18

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3

Thankfully, President Trump has recognized the racially disparate impact of the 1994 crime bill[29] and passed the First Step Act to empower the Court to correct injustices[30] such as the one the Court confronts here.

4
5
6

### C. Contrary to the superpredator myth, Brandon expressed immediate remorse to a number of spiritual providers, none of whom was called to testify at the trial.

7
8
9
10

Two pastors and a youth minister all knew that Brandon had immediately expressed remorse for his crime. In fact, Brandon publicly declared his remorse to his congregation in a moving letter that Pastor

11
12

[29] President Trump noted that inherent racism related to the superpredator myth drove passage of the 1994 Crime bill in this exchange, which occurred during first presidential debate:

13
14

> WALLACE: President Trump you have two minutes. Why should Americans trust you over your opponent to deal with race?

15
16
17

> PRESIDENT TRUMP: He did a crime bill, 1994, where you call them super predators. African Americans are super predators. And they've never forgotten it. They've never forgotten it, Joe.

18

First Presidential Debate (https://youtu.be/wW1lY5jFNcQ?t=4789) (September 29, 2020).

19
20

[30] In a forum addressing the historical passage of the First Step Act, the President Trump noted the Act should be used to correct the racial injustices of the past:

21
22
23

> PRESIDENT TRUMP: ... To redress this unfairness, the FIRST STEP Act made transformative changes. We rolled back the unjust provisions of the 1994 Clinton crime law — (applause) — which disproportionately harmed the African American community. You know that. I remember very well what happened.

24
25
26

**Remarks by President Trump at the 2019 Second Step Presidential Justice Forum | Columbia, SC,** https://www.whitehouse.gov/briefings-statements/remarks-president-trump-2019-second-step-presidential-justice-forum-columbia-sc/ (October 25, 2020).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 19

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    Johnson read them. His attorneys never advised the jury of this letter and

2    failed to contact any of these religious leaders. And all of them have

3    submitted declarations showing their continued support. They are: Reverend

4    Elmer Hetzel[31]; Pastor Terry Johnson[32] and Youth Minister (and now

5    psychologist) Adam Andreassen[33]. Other members of his congregation also

6    could have testified that Brandon was a gentle soul, and not a dangerous kid

7    lacking in the capacity to feel remorse: e.g., Bonnie Wainwright[34] and Debra

8    King.[35]

9        Not only did Brandon counsel his congregation not to take his path, but

10    he reached out from the walls that confine him in 2006 to counsel at-risk

11    youth. He took part in religious outreach organized by youth ministers David

12    and Michael Boyd.[36] In 2008 he engaged in a similar outreach through one of

13    his current spiritual advisors, Aaron Chancy.[37]  And for the last nine years,

14

15

16

17    [31] Declaration of Reverend Elmer J. Hetzel (August 12, 2020) (Attached as Exhibit

18    5).

19    [32] Declaration of Pastor Terry Johnson (August 8, 2020) (Attached as Exhibit 6).

20    [33] Declaration of Dr. Adam Andreassen (August 17, 2020) (Attached as Exhibit 7).

21    [34] Declaration of Bonnie Wainwright (August 15, 2020) (Attached as Exhibit 8).

22    [35] Declaration of Debra King (September 9, 2020) (Attached as Exhibit 9).

23    [36] Declaration of David Boyd (August 7, 2020) (Attached as Exhibit 10) and

24    Declaration of Michael Boyd (August 9, 2020) (Attached as Exhibit 11).

25    [37] Declaration of Pastor Aaron Chancy at ¶¶ 4-5 (July 28, 2016) (Attached as Exhibit

26    12).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 20

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

he has continued the hard spiritual work to be the best person he can be with spiritual advisor Teresa Batto.[38]

### D. Brandon's disadvantaged upbringing, which the jury heard nothing about, also supports this motion.

The jury heard nothing about Brandon's disadvantaged upbringing. To the contrary, since his trial attorneys never tried to learn about Brandon, they presented Brandon's home life as uneventful,[39] which of course neither explained nor mitigated the offense. The fact of the matter is that Brandon's father was absent for much of his life (and often homeless), and he was abusive, drunk and distant when he was around.[40] Because of this, Brandon looked for acceptance elsewhere and, being a follower, fell under bad influences despite his good heart.[41]

### E. That Brandon has tried to make amends as best as he could ever since the offense provides another basis for this motion.

The value in preserving Brandon's life is not just to Brandon, but to the people that he is connected to, including his sister Quiona, who calls him her best friend;[42] his brother Max, who credits Brandon with helping him stay

---

[38] Letter of Teresa Batto (November 22, 2020) (Attached as Exhibit 13).

[39] Dkt. 318 at 227.

[40] *See* Declaration of Quiona Bernard at ¶¶ 2-11 (July 12, 2016) (Attached as Exhibit 14).

[41] *See* Declaration of Melsimeon Pollock (June 3, 2016) (Attached as Exhibit 15) and Declaration of Debra King (September 9, 2020) (Attached as Exhibit 9).

[42] Exhibit 14 at ¶ 15.

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 21

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

out of trouble;[43] his daughter Taneah, who relies on him for guidance and support;[44] his daughter Kiara, who is about to graduate from college in May and wants to share her graduation pictures with her dad; and of course his mother Thelma, who fears losing her first born.[45] Brandon, his family, and Brandon's defense team all recognize that the Bagleys have suffered unimaginable pain from losing their loved ones. While there no words said here can ease that pain, Brandon has tried to live as good a life as he could, in order to do what little he can to make up for the terrible loss he caused. These are his words, as dictated to a defense investigator:

> I want to convey to that I'm sorry. I know that the word alone can't begin to describe how much but it is the only word I can say that captures my feelings every day. I'm sorry to Todd and Stacie Bagley. I'm sorry that my actions helped lead to the taking of their precious lives.

> They were youth ministers on an ordinary day. They saw some young boys that they thought needed help. And they hurried to show love like their faith told them to do. Unfortunately, them young boys were not of the same principles. And even while they were being threatened, they still chose to minister…. seeing goodness in them young boys and their death is a loss to this world. I was not there for that, but I've always regretted my involvement in the crime. It has always been a stain on who I was. That only time and commitment to doing what was right could ever start to clean. Since that day, I have devoted my life to honoring their example of love….by ministering to youth and being a better person.

---

[43] Declaration of Max Bernard at ¶ 2 (June 16, 2016) (Attached as Exhibit 16).

[44] Declaration of Taneah Scott at ¶¶ 3-4 (August 23, 2016) (Attached as Exhibit 17).

[45] Declaration of Thelma Bernard at ¶¶ 14-15 (August 14, 2020) (Attached as Exhibit 18).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 22

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

My sorry and regret is not just for Todd and Stacie. But also for their family that was left behind. I wish I could go back in time and change the horrible things I did, but I can't. All I can do is to make sure I never make the same mistake again. I will never be silent when I see something happening that isn't right. And every day and every moment I will do what is right so that Todd and Stacie didn't have died for nothing. I ask this Court today to let me live so that I can see my daughters grow up and one day get married…I ask to live so that I can be there for my 70 year old mother as she grows older….and I ask to live so I can keep sharing with my little brother and sister the lessons I learn. I ask these things even thought I am well aware that my actions prevented Todd, Stacie and their families from having the same hopes.

My death will not bring that closure…only through living can I personally make amends and demonstrate the remorse that I feel for my actions. I ask you to let me live and allow me to right my mistakes I made when I was only 18 years old. There is no excuse for what I did, but at the time I was a scared and insecure kid. I didn't have the courage to say no to my friends. I wanted to be liked no matter what the consequences. I'm not that scared kid anymore. I'm a 40-year-old man now and the prison structure has taught me a lot. As a man, I make my own decisions. I have not gotten into trouble in prison one time because that is not the kind of man I am. That horrible June day that I can never forget was not me. It was not how my mom who worked hard as an Army nurse raised me to be. It is not who I want to be now….. and it is not who I will ever be again.

Todd and Stacie are always on my mind. I always ask myself how can what I do honor them.

In conclusion, I ask you to give me the chance to keep living and making a positive impact on as many lives as I can. I do not deserve to die and in living I hope to continue to show this Court, the Bagley family, and the country through my actions the many reasons I deserve to live.

Statement of Brandon Bernard (dictated December, 2020).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 23

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

### F.    The position of a majority of the surviving jurors provides another basis for this motion.

As noted, a majority of the surviving jurors – five out of nine – no longer endorse death as a necessary sentence for Brandon. Those jurors cite numerous reasons for this, but one uniting factor is the recognition that Brandon's trial attorneys performed poorly, failing to provide them with the information necessary to make a just determination in this case.[46]

Presiding Juror Calvin Kruger has identified Brandon's lesser role in the crime, as well as the fact that Brandon's counsel failed to adequately represent Brandon, as reasons why he now prays for President Trump to prevent Brandon's execution:

> I do not think Brandon Bernard's attorney[s] did a good job in defending him. To me, it seemed like his attorneys were going through the motions and nothing more.
>
> While the evidence proved that Brandon Bernard is guilty beyond any doubt, it also clearly showed that Brandon Bernard was not the ringleader behind these offenses, but a follower. Because of this, I support Bernard's death sentence being

---

[46] Fed.R.Evid. 606(b) does not bar consideration of these affidavits. That rule limits what jurors may testify to "[d]uring an inquiry into the validity of a verdict or indictment[.]" The instant motion does not challenge the validity of the verdict, but simply asks this Court to modify the sentence imposed as a result of that verdict. While the language of Rule 606(b) is dispositive on this question, Rule 1101(d)(3) provides that the evidence rules (except for those on privilege) do not apply to "miscellaneous proceedings such as: . . . sentencing [or] granting or revoking probation or supervised release." This proceeding is most comparable to a sentencing (and, in fact, is based on a provision of § 3582, which applies to sentencing generally), and thus the rules of evidence do not apply at all. *See, e.g., United States v. Salvagno*, 456 F. Supp. 3d 420, 437 (N.D.N.Y. 2020) (in evaluating factual questions applicable to a compassionate release motion, citing the principle that rules of evidence do not apply to sentencing), *reconsideration denied* (June 22, 2020). On both these grounds, then, there is no problem with this Court's consideration of these affidavits. And even if these affidavits were not considered, the remaining evidence presented here would justify relief under § 3582(c).

---

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 24

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

commuted to life without the possibility of parole. I am praying the President commutes Brandon Bernard's death sentence.

Declaration of Presiding Juror Calvin Kruger at ¶¶ 3-4 (November 6, 2020) (Attached as Exhibit 19, paragraph numbering removed).

Juror Jason Fuller also is opposed to Brandon's execution, citing Brandon's lesser role compared to that of Vialva:

I also understand that Mrs. Bagley was likely unconscious immediately after being shot by Christopher Via Iva, and that her lack of consciousness would have meant that she did not feel any pain. I did not understand this at the time I made my sentencing decision because Brandon Bernard's trial attorneys did not highlight this fact. Had that been highlighted, I also would have made a different decision at sentencing. I would have voted that Brandon receive a life sentence for Mrs. Bagley's murder, as I voted for the other two death penalty counts that Brandon faced.

I felt that Brandon was a kid who got caught up with the wrong crowd, and I think that Brandon was prejudiced by being on trial with Christopher Vialva. It made it hard for me to disassociate Mr. Vialva's role in the crimes from Mr. Bernard's role.

It was clear to me that Brandon was just an adolescent, trying to find belonging. Unfortunately, I think he found belonging with the wrong crowd and was in the wrong place, at the wrong time. Brandon clearly is responsible for making some horrible decisions that had horrendous outcomes. However, his young age at the time does weigh on me. I do not believe that Brandon should be executed for bad choices he made when he was 18.

If he was the shooter or if I thought that Brandon was the mastermind behind this terrible crime, I would not feel this way about Brandon getting a second chance.

I support clemency for Brandon Bernard.

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 25

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    Declaration of juror Jason Fuller at ¶¶ 8–10 (July 21, 2016) (text reformatted

2    with paragraph breaks) (Attached as Exhibit 20).

3           Juror Chris Tyner expressed similar views to those of Juror Fuller.

4    Because Bernard's trial counsel failed to argue the fact that Mrs. Bagley

5    could not have suffered any pain, he concluded that she did. Had he been

6    apprised of the truth, he too would not have endorsed a death sentence.[47]

7           Juror Laird Cooper also cites the inert performance of Brandon's trial

8    counsel as a factor that favors clemency:

9                  While the evidence [at trial] proved that there is no doubt
              that Mr. Bernard is guilty, I also believe Mr. Bernard's trial
10            attorneys, failed to even adequately represent him. Due to this
              failure in legal representation, I am not opposed to Mr. Bernard
11            requesting his death sentence be commuted to life without the
              possibility of parole.
12

13   Declaration of Juror Laird Cooper at ¶ 3 (May 26, 2016) (minor punctuation

14   alteration from original) (Attached as Exhibit 24).

15          Juror Gary McClung laments that being deprived of critical

16   information prevented him from reaching the correct sentencing result:

17                 I felt that Mr. Bernard's defense team made a "token"
              attempt at a defense during the entire trial. It was like Mr.
18            Bernard's attorneys were "phoning it in." I felt like there might
              [be] something more to Mr. Bernard than what was presented.
19            Some people had testified on Mr. Bernard's behalf during the
              penalty phase, which already gave me pause about sentencing him
20            to death. I recently learned from Mr. Bernard's investigators that
              Mr. Bernard's juvenile probation officer says that she never felt
21            threatened by Mr. Bernard and thought he was basically a good
22            person. I was also told that Mr. Bernard's minister has said that

23

24   _____

25   [47] Email of Chris Tyner to Stacey Brownstein and Charles Formosa (March 15,
     2015) (Attached as Exhibit 21); Declaration of Charles Formosa at ¶ 7 (September
26   16, 2016) (Attached as Exhibit 22); and Declaration of Stacey Brownstein at ¶¶ 4-7
     (September 16, 2016) (Attached as Exhibit 23).

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1
2
> Mr. Bernard expressed remorse to him before the trial. This kind of testimony would have been helpful to me in holding my ground that a life sentence was appropriate, not a death sentence.

3

4 Declaration of Juror Gary McClung, Jr. at ¶ 9 (August 13, 2020) (Attached

5 as Exhibit 25). Juror McClung expounded on these views in his interview

with CBS news, available here:

6

7 > https://www.cbs.com/shows/cbs_this_morning/video/0H_qngRWe5zi2_w_ubQSIPRTTbqycHRm/former-prosecutor-jurors-back-federal-inmate-who-is-set-to-die-next-week/

8

## IV.   CONCLUSION

9
10 We no longer live in an era where sentencing decisions should be driven by the false claim that young Black men like 18-year-old Brandon are irredeemable villains, superpredators. Time has proven that racially-charged speculation preposterously false. And carrying out an execution that a majority of the surviving jurors no longer believe in would make a mockery of the justice that the Court was designed to deliver.

11
12
13
14

15 A fundamental role of the judiciary is to confront the mistakes of the past and help us overcome them. As Justice Kennedy stated in *Pena-Rodriguez v. Colorado*:

16
17

18
19 > The Nation must continue to make strides to overcome race-based discrimination. The progress that has already been made underlies the Court's insistence that blatant racial prejudice is antithetical to the functioning of the jury system and must be confronted in egregious cases like this one despite the general bar of the no-impeachment rule. It is the mark of a maturing legal system that it seeks to understand and to implement the lessons of history. The Court now seeks to strengthen the broader principle that society can and must move forward by achieving the thoughtful, rational dialogue at the foundation of both the jury system and the free society that sustains our Constitution.

20
21
22
23
24

25 *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 871, 197 L. Ed. 2d 107 (2017).

26

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 27

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A correction is needed here. Knowing what we do now, the DOJ would not likely have even authorized this case to proceed as a capital offense. The 2019 cases discussed earlier show that. It was a mistake for the Clinton administration to even authorize Brandon's case for capital prosecution. That mistake, and the single death sentence that flowed from it, were premised on scientifically flawed understandings of future dangerousness that specifically disadvantaged Blacks. The adversary system has thus far failed Brandon, as Jurors McClung, Fuller, Tyner, Cooper and McClung have all declared. It is well past time to do what is right.

As Justice Felix Frankfurter stated: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."[48]

The Court should grant this motion and modify Brandon's sentence from death, to one of life imprisonment without the possibility of release.

///

///

///

///

///

///

///

///

///

///

---

[48] *Henslee v. Union Planters Nat. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 28

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**CERTIFICATE OF CONFERENCE**

Counsel consulted with Assistant United States Attorneys Joseph Gay, Jr. and Mark Frazier on December 6 about this motion, and the associated motions for a stay and for permission to file an overlength brief.  Mr. Gay represented that the government was opposed to this motion and was opposed to the motion for a stay, but was not opposed to the motion for permission to file an overlength brief.

DATED this 7th day of December, 2020.

Respectfully submitted,

Robert C. Owen
Law Office of Robert C. Owen
53 W. Jackson Blvd., Ste. 1056
Chicago, IL 60604
(512) 577-8329
robowenlaw@gmail.com

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
(253) 593.6710
john_carpenter@fd.org

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 29

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on December 7, 2020, I electronically filed the

3 foregoing document with the Clerk of the Court using the CM/ECF system,

4 which will send notification of the filing to all registered parties.

5

6                                    s/ Amy Strickling, Paralegal

7                                    Federal Public Defender Office

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO MODIFY SENTENCE
UNDER 18 U.S.C. § 3582(C)(1)
(*U.S. v. Bernard*, 6:99-CR-00070-ADA-2) Page 30

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**