Declaration of Charles Formosa

I, Charles Formosa, make the following declaration:

1. My name is Charles Formosa. I am an investigator with the Federal Public Defender's Office for the Western District of Washington, where I have been employed since February of 2007. I have been an investigator since July of 1995, and my entire career has been as a defense investigator. From July 1995 through November 1998, I was employed by the Office of the Capital Collateral Representative in Florida, where I was assigned to investigate the cases of inmates sentenced to death by the State of Florida throughout state post-conviction proceedings and habeas corpus review. From November 1998 to February 2007, I was employed by the Federal Public Defender's Office in the Eastern District of California, where I was assigned to investigate the cases of inmates sentenced to death by the State of California during *Habeas Corpus* review.

2. I and Stacey Brownstein, another Federal Public Defender investigator, were assigned to conduct investigation for Mr. Bernard's habeas petition and subsequently, his clemency. Ms. Brownstein and I met with a number of witnesses and explored many issues and facts from the guilt and mitigation phases of Mr. Bernard's trial, including issues and facts that were never presented during Mr. Bernard's trial. I also explored issues and facts related to Mr. Bernard's clemency petition.

3. Reverend Elmer "Jack" Hetzel, who ministered to Mr. Bernard when he was a teenager awaiting trial, was one of the witnesses Ms. Brownstein and I interviewed. Reverend Hetzel told Ms. Brownstein and me that he unequivocally supported the death penalty and felt that most people sentenced to death deserved to be executed. Despite being a supporter of the death penalty, Mr. Hetzel felt that Mr. Bernard did not deserve a death sentence. The reasons that he

1

**Exhibit 22-1**



cited in support of this belief were that Brandon was very young at the time of the crime, was not a leader in the offense, and was sincerely remorseful for his crime.

4. During the Clemency Petition investigation, Ms. Brownstein and I also attempted to contact all of the jurors in Mr. Bernard's case to ask them about their experiences as jurors, to inform them about the status of the case, and to talk to them about newly developed information related to both the guilt and mitigation phases of Mr. Bernard's trial that was never presented to them by Mr. Bernard's trial attorneys. We also discussed with them Mr. Bernard's remarkable and unblemished adjustment to prison, especially given that they had heard from Dr. Coons during the penalty phase that he would not adapt well, would be dangerous in prison, and should therefore be put to death. We also wanted to talk to them about any questions they might have had about the trial they had been curious about and never been able to ask. To the extent we could do so consistent with the attorney-client privilege, we also offered them information about the status of Mr. Bernard's case in the process of post-trial judicial and executive review.

5. While locating the jurors so we could speak with them, we learned that three of the twelve jurors -- Mr. Johnnie Sledge, Mr. Ronald Sulak, and Mr. Harvey Raesz – had passed away. We located and attempted to contact the nine surviving jurors.[1]

6. Four of nine serving jurors wrote declarations that either actively support Mr. Bernard's petition for clemency or do not oppose this petition. These jurors are Calvin Kruger (the presiding juror), Jason Fuller, Gary McClung, Jr., and Laird Cooper. True and correct copies of these declarations are attached to Mr. Bernard's petition as Exhibits A, B, D, and H, respectively.

7. A fifth juror, Chris Tyner, wrote an e-mail giving his "approval to move forward with a life in prison" sentence for Brandon. A true and correct copy of this email sent to both Ms. Brownstein

---

[1] Three of those nine declined to speak with us, and one who did speak with us declined to provide any statement for use in this petition

2

Exhibit 22-2

and me is attached to Mr. Bernard's clemency application as Exhibit K.   During our interview of Mr. Tyner, he was more open with his thoughts.  He told us that Mr. Bernard's trial attorneys had done a terrible job and seemed overwhelmed.  He added that other jurors had the same view, and that the poor performance of Mr. Bernard's lawyers was discussed during the jury's deliberations.  Mr. Tyner said it was almost like Mr. Bernard had no legal representation at all, and that is was like they "laid down" for the prosecution.  Mr. Tyner said Mr. Bernard made some bad choices, like not trying to stop Mr. Vialva from shooting the Bagleys.  When we showed Mr. Tyner the Declaration of Medical Examiner Stephen Pustilnik, who opined that it was likely that Mrs. Bagley was immediately rendered medically dead by Christopher Vialva's gunshot, Mr. Tyner became emotionally upset because he had not been presented this information at trial.   He stated that this information would have been important to know at trial and was an example of what Mr. Bernard's trial attorneys should have done for him.  He stated that from the way the evidence was introduced and argued during Mr. Bernard's trial, he was left with the understanding that Mrs. Bagley was alive and feeling pain from the fire as she died, and that was the view he took into the jury's deliberations.  Everything considered, Mr. Tyner said that he did not have an issue if Mr. Bernard had his death sentence commuted to life.  It would not matter to him if that happened through the Clemency process or through the court process. Ultimately, he would not feel like his decision at sentencing would be invalidated by a change of sentence, whether it was by the courts or the President. It was clear that Mr. Tyner's discussion with us was extremely emotional and unnerving for him.  Several times after the interview and email, Ms. Brownstein and I attempted again to speak with Mr. Tyner.  We hoped to ask him to expand on his email and possibly providing a fuller written statement.  Unfortunately, we were unsuccessful in our attempts.



**Exhibit 22-3**

I have read the foregoing declaration and under the laws of the United States and the State of

Washington, I declare under penalty of perjury that this declaration is true and correct.

Executed at Seattle, WA on   9/16/16  .

Charles Formosa

4

**Exhibit 22-4**