UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

    v.

BRANDON BERNARD,
    Defendant.

CAPITAL CASE
NO. 6:99-CR-00070-ADA-2
Execution Date: Dec. 10, 2020

**GOVERNMENT'S CONSOLIDATED RESPONSE TO BERNARD'S
MOTION TO MODIFY SENTENCE UNDER 18 U.S.C. § 3582(C)(1) AND
MOTION TO STAY OR MODIFY EXECUTION DATE**

As the Court is well aware, Brandon Bernard is scheduled to be executed on December 10, 2020, after spending approximately twenty years on death row for his role in the brutal murder of Stacie Bagley. Bernard now belatedly asks the Court to reduce his capital sentence to life imprisonment under the compassionate-release statute, 18 U.S.C. § 3582(c)(1), and to stay his execution pending consideration of his latest motion. The Court should deny both requests. Section 3582(c)(1) does not authorize a court to commute a death sentence in favor of life imprisonment. Accordingly, Bernard cannot meet even the first requirement for a stay because he cannot show a likelihood of success on the merits. The remaining stay factors likewise favor permitting the government to carry out his lawful sentence without further delay. And Bernard's alternative request for a modified execution date is just a request for a stay or an injunction in another guise; that request should also be denied.

**BACKGROUND**

**A.    The Murders of Todd and Stacie Bagley**

In 1999, Bernard and other members of a street gang in Killeen, Texas, carjacked and murdered Todd and Stacie Bagley. *See United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). Gang members—including Christopher Vialva and Tony Sparks—initially developed a

plan to abduct and rob a motorist at gunpoint, use the victim's bankcard to make ATM withdrawals, and abandon the victim in a remote area locked inside his own car trunk. (*Id*. at 471.)

Bernard drove Vialva and the others from one store parking lot to another searching for a victim. *Bernard*, 299 F.3d at 471. After some time, Bernard temporarily departed. (*Id*. at 472 & n.2.) Vialva and two other gang members then convinced the victims, Todd and Stacie Bagley, to give them a ride. (*Id*. at 471–72.) After the gang members entered the Bagleys' car, they robbed the Bagleys at gunpoint with Bernard's gun, forced the Bagleys into the trunk of their own car, and attempted to empty the Bagleys' bank account from multiple ATMs. (*Id*.)

After Bernard and a fifth gang member rejoined the group, Vialva explained that he had to kill the Bagleys because they had seen his face. *Bernard*, 299 F.3d at 472. At Vialva's direction, Bernard and another gang member went to purchase accelerant to burn the Bagleys' car. (*Id*.) Sparks went home to avoid missing his curfew. (*Id*. at 472 n.3.)

Vialva, Bernard, and the two other gang members then drove the Bagleys' car (with the Bagleys still in the trunk) and Bernard's car to a remote area on Fort Hood. *Bernard*, 299 F.3d at 472–73. Bernard and another gang member poured lighter fluid on the interior of the Bagleys' car, while the Bagleys sang and prayed in the trunk. (*Id*. at 472.) Vialva shot the Bagleys with Bernard's gun, killing Todd and rendering Stacie unconscious. (*Id*. at 472–73.) Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. (*Id*. at 473.)

A federal jury in Waco found Bernard guilty of carjacking and murder and sentenced him to death for the murder of Stacie Bagley. *Bernard*, 299 F.3d at 473. The Fifth Circuit affirmed, *id*. at 489, and the Supreme Court denied certiorari, 539 U.S. 928 (2003).

**B.      Bernard's Prior Post-Conviction Proceedings**

In 2004, Bernard moved to vacate his sentence under § 2255. (Doc. 377). In his lengthy motion, Bernard argued that he was denied his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959). (Doc. 416 at 134–47.) This Court denied Bernard's motion. (Doc. 449.) The Court determined that Bernard's *Brady* and *Napue* claims were procedurally barred and lacked merit. (*Id.* at 14–15 & n.1, 22-26.) The Fifth Circuit denied Bernard's motion for a certificate of appealability (COA). *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert. denied*, 577 U.S. 1101 (2016).

In 2017, Bernard filed an unauthorized second or successive § 2255 motion, styled as a motion under Federal Rule of Civil Procedure 60(b) for relief from the judgment in his initial § 2255 proceedings. (Doc. 569.) This Court dismissed the motion for lack of jurisdiction. (Doc. 573.) The Fifth Circuit denied a COA. *United States v. Vialva*, 904 F.3d 356, 358 (5th Cir. 2018) (per curiam), *cert. denied*, 140 S. Ct. 859 (2020).

In February 2019, Bernard again sought to vacate his conviction pursuant to § 2255 and, alternatively, Rule 60(b), raising new *Brady* and *Napue* claims. (Doc. 661.) This Court construed Bernard's motion as a successive § 2255 motion (Doc. 664 at 1) and transferred it to the Fifth Circuit. *See United States v. Bernard*, 820 F. App'x 309, 310 (5th Cir. 2020) (per curiam) (unpublished). The Fifth Circuit affirmed the transfer order, agreeing with this Court that Bernard's § 2255 motion was successive. *Id.* at 311.  In a separate opinion, the Fifth Circuit denied Bernard's motion for authorization to file a successive § 2255 motion. *See In re Bernard*, 826 F. App'x 356 (5th Cir. 2020) (per curiam) (unpublished).

Most recently, Bernard asked this Court to enjoin his execution pending a potential petition for a writ of certiorari. (Doc. 706.) This Court denied an injunction. (Doc. 717.) Bernard has also

filed a habeas corpus petition under 28 U.S.C. § 2241 in the Southern District of Indiana, and his motion for a stay in that court is pending. *See Bernard v. Watson*, 2:20-CV-616 (S.D. Ind.).

## LEGAL FRAMEWORK

A stay of execution "is an equitable remedy" that "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A capital prisoner seeking a stay of execution pending additional legal proceedings bears the burden of demonstrating "(1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any harm that will result if the stay is granted; and (4) that the stay will not disserve the public interest." *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 465 (2019); *see Nken v. Holder*, 556 U.S. 418, 434 (2009). "A court considering a stay must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill*, 547 U.S. at 584 (internal quotation marks omitted).

## ARGUMENT

Bernard contends that the compassionate-release statute, 18 U.S.C. § 3582(c)(1), authorizes this Court to commute his death sentence in favor of a sentence of life imprisonment. By its terms, however, § 3582(c) permits a court only to "modify a term of imprisonment" that has already been imposed, not to commute a capital sentence. 18 U.S.C. § 3582(c). Under the Federal Death Penalty Act, the jury's verdict remains binding on this Court and cannot be "reduce[d]" to life imprisonment under Section 3582(c)(2). 18 U.S.C. § 3582(c)(1)(A). And even if § 3582(c)(1) did permit the sort of commutation that Bernard seeks here, he has failed to demonstrate any "extraordinary and compelling reasons" warranting relief. 18 U.S.C. § 3582(c)(1)(A)(i). Most of his motion is devoted to relitigating his role in the offense and accusing the prosecution of racism,

4

not demonstrating any compelling reason for a reduction of sentence (which, again, is not within the power of this Court to grant in any event). And because Bernard cannot show a substantial likelihood of success on the merits or satisfy the other relevant factors, his motion to stay or reschedule his execution should also be denied.

## I.    Section 3582(c)(1) Does Not Authorize A Court To Commute A Death Sentence.

Under 18 U.S.C. § 3582(c), a district court "may not modify a term of imprisonment once it has been imposed" except in certain limited circumstances. The compassionate-release statute, § 3582(c)(1), is one of the exceptions.  Under that statute, a district court may reduce a previously imposed "term of imprisonment" if the court finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Previously, only the Bureau of Prisons could move to reduce a sentence under § 3582(c)(1), but in the First Step Act of 2018, Congress allowed inmates to bring such motions on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (allowing a reduction "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant" if the defendant has exhausted administrative review).

Section 3582(c)(1), however, does not give this Court authority to "reduce" Bernard's death sentence to a sentence of life imprisonment. Section 3582(c)(1)(A)'s plain text indicates that the authority to reduce a sentence applies only to prison sentences. Section 3582(c) is entitled "[m]odification of an imposed term of imprisonment." And § 3582(c)(1)(A) gives limited authority to "reduce the term of imprisonment" based on certain criteria. But the authority to "reduce the term of imprisonment" does not include the authority to reduce a sentence of *death*. The United

States Code repeatedly distinguishes between prison sentences and death sentences, including in the statutes under which Bernard was convicted. *See* 18 U.S.C. § 1111(b) (stating that "[w]hoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life"); § 2119(3) (stating that the defendant shall be "fined under this title or imprisoned for any number of years up to life, or both, or be sentenced to death"). There is no textual basis for interpreting "term of imprisonment" in § 3582(c)(1)(A) to include a sentence of death, and Bernard does not identify any authority for doing so. To the government's knowledge, no federal court has ever interpreted § 3582(c)(1) in the manner Bernard advocates.[1]

The statutory structure and context also refute Bernard's interpretation, by underscoring the distinction between sentences of imprisonment and capital sentences. Section 3582 appears in Chapter 227 of Title 18, in a subchapter entitled "Imprisonment." (Other subchapters cover "Fines" and "Probation.")  The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3599, is codified separately in Chapter 228, entitled "Death Sentence." Moreover, § 3582 as a whole is entitled "Imposition of a sentence of imprisonment," and its provisions relate to prison terms. Subsection (a) states that "[t]he court, in determining whether to impose a *term of imprisonment*, and, if a *term of imprisonment* is to be imposed, in determining the length *of the term*, shall consider the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(a) (emphasis added). Subsection (c) sets forth the general rule that a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). And each of the exceptions to that rule apply to "term[s] of imprisonment." *See* § 3582(c)(1)(A) ("may reduce the term of imprisonment);

---

[1] One district court has rejected the argument that § 404(b) of the First Step Act, which allows sentence reductions where the Fair Sentencing Act of 2010 reduced the penalties for an offense, authorizes district courts to reduce a death sentence imposed under 21 U.S.C. § 848(e)(1)(A). *United States v. Roane*, 2020 WL 6370984, at *16 (E.D. Va. Oct. 29, 2020).

6

(c)(1)(B) ("may modify an imposed term of imprisonment to the extent otherwise permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"); (c)(2) (where a defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the court "may reduce the term of imprisonment" under certain circumstances). In short, § 3582(c) concerns only prison sentences, not capital sentences.

Bernard's position is also inconsistent with the Federal Death Penalty Act, which makes the jury's recommendation "binding on the district court." *United States v. Quinones*, 511 F.3d 289, 318 n.19 (2d Cir. 2007). If a jury recommends that the defendant be sentenced to death, the Act says that "the court *shall* sentence the defendant accordingly." 18 U.S.C. § 3594 (emphasis added). *See United States v. Henderson*, 485 F. Supp. 2d 831, 857 (S.D. Ohio 2007) ("Under § 3594 . . . a jury's recommendation is binding on the court."); *United States v. Sampson*, 275 F. Supp. 2d 49, 61 (D. Mass. 2003) ("A jury's 'recommendation' of a sentence of death or life imprisonment is binding on the court."). And although the Federal Death Penalty Act provides for "exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," 18 U.S.C. § 3596(a), it does not authorize the district court to later reduce a sentence to life imprisonment.

Finally, interpreting Section 3582(c)(1) to permit a sentencing court to commute a death sentence would be at odds with the interpretive principle that Congress "does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). If Bernard were correct, a defendant could obtain judicial relief from a capital sentence without identifying any reversible legal error. Moreover, although Bernard asks this Court to "reduce his sentence to life imprisonment without the possibility of release," (Doc. 718 at 12), his reading of § 3582(c) would allow a court to reduce a capital sentence *below* life imprisonment, and even to order the

7

defendant's immediate release. Had Congress wished to authorize sentencing courts to reconsider on a case-by-case basis whether to commute a lawful death sentence, even in the complete absence of any identified legal error, Congress would have said so. It would not have hidden that authority in the compassionate-release statute.

Bernard emphasizes that "§ 3582(c)(1)(A)(i), as amended by the First Step Act, empowers a district court to grant compassionate relief '*in any case*' where it finds that extraordinary and compelling reasons warrant relief." (Doc. 718 at 6 (emphasis added).) But Bernard misreads the statute's use of the words "in any case." The statute's structure is as follows:

 (c) **Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--

(1) in any case--

(A) the court, upon motion . . . may reduce the term of imprisonment . . . if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; or
(ii) the defendant is at least 70 years of age [and meets other requirements]

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment [if certain requirements are met].

18 U.S.C. § 3582(c) (underlining added). The words "in any case" are used in contrast to "the case of a defendant" whose "sentencing range . . . has subsequently been lowered." But the phrase is still subordinate to the first part of § 3582(c), which addresses when a court may "modify a term

of imprisonment." And that language is followed by specific provisions that authorize courts to "reduce the term of imprisonment" or "modify an imposed term of imprisonment." 18 U.S.C. § 3582(c)(1)(A), (B). The phrase "in any case" thus does not support applying § 3582(c) to a death sentence, which is *not* a "term of imprisonment."

**II.    Section 3582(c)(1) Also Forecloses Bernard's Request On Independent Grounds.**

Section 3582(c)(1) does not authorize this Court to "reduce" Bernard's death sentence to a term of life imprisonment. Section 3582(c)(1) also forecloses granting Bernard's request on three additional and independent grounds.

*First*, any reduction of sentence under § 3582(c)(1) must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Commission's applicable policy statement for compassionate release, U.S.S.G. § 1B1.13, permits a court to grant a sentence reduction only in narrow circumstances not present here. Specifically, Guidelines § 1B1.13 provides for a reduction only in the following circumstances: (A) a serious medical or mental health condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (C) the defendant's minor child's caregiver dies or is incapacitated or the defendant would be the "only available caregiver" for an incapacitated spouse or registered partner; or (D) other extraordinary and compelling reasons exist, as determined by the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1. Consistent with this fourth provision, the Bureau of Prisons has defined certain additional circumstances relating to medical condition, age, and family circumstances. *See* BOP Program Statement 5050.50 (Jan. 17, 2020), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Bernard has not attempted

9

to show that he satisfies any of § 1B1.13's requirements. And those requirements all focus on an inmate's amenability to *release*, as opposed to a sentence of life imprisonment. Bernard cannot show that a sentence reduction would be consistent with the Commission's policy statement.[2]

*Second*, § 3582(c)(1) allows a sentence reduction only if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Bernard cannot meet that standard. A jury recommended the death penalty against Bernard 20 years ago, and his conviction and sentence have been affirmed on appeal and on multiple rounds of collateral review. Bernard makes five arguments in support of his request: (1) his death sentence resulted from a trial infected with the "superpredator myth"; (2) he expressed immediate remorse to various spiritual advisors who were not called to testify at trial; (3) he experienced a "disadvantaged upbringing, which the jury heard nothing about"; (4) he has "tried to make amends as best as he could"; and (5) a majority of the surviving jurors from his trial no longer believe he should have been sentenced to death. (Doc. 718 at 8-9, 21, 22-23, 27-30.) His first claim—that the "superpredator myth entered the courtroom" and that his "trial attorneys failed to provide any meaningful counter[-]narrative" (Doc. 718 at 16, 19)—is really an argument that the district court erred by admitting aggravating evidence and that his trial counsel were ineffective. His second and third claims also boil down to ineffective-assistance-of-counsel claims. Bernard does not explain why he could not have presented those claims on direct appeal (as to the evidentiary claim) or in his § 2255 motion. The

---

[2] Courts of appeals outside the Fifth Circuit have held that the Sentencing Commission's existing policy statement is not "applicable" to a sentence-reduction motion filed by a defendant, rather than by BOP, because some portions of U.S.S.G. § 1B1.13 presuppose that only BOP may file such a motion (as was true before the enactment of the First Step Act, when the Commission promulgated its current policy statement). *See United States v. Gunn*, --- F.3d ---, 2020 WL 6813995 (7th Cir. Nov. 20, 2020); *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States* v. *Jones*, --- F.3d ---, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); *United States* v. *McCoy*, --- F.3d ---, 2020 WL 7050097 (4th Cir. Dec. 2, 2020). The government disagrees with those decisions and has petitioned for rehearing en banc in the Second Circuit.

compassionate-release statute is not an alternative avenue for litigating claims that could have been raised on direct appeal or in collateral review.

Bernard's fourth and fifth claims might be fodder for a clemency petition, but they are not extraordinary or compelling reasons to reduce his sentence. Many defendants feel remorse after they are convicted, and Bernard's attempts to "make amends" or "live as good a life as he could," (Doc. 718 at 24-25), hardly provide a basis to overturn a death sentence that has been upheld on multiple rounds of review. And the fact that some jurors have reconsidered their votes in the 20 years since Bernard's trial is hardly extraordinary. Because "a jury speaks only through its verdict," *Yeager v. United States*, 557 U.S. 110, 121 (2009), the subsequently developed personal views of individual jurors have no bearing on the appropriate sentence.

*Third*, a court is required to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" before granting a sentence reduction under § 3582(c)(1). 18 U.S.C. § 3582(c)(1)(A). The Section 3553(a) factors tip decisively against Bernard's request. To be clear, the decision to impose a death sentence is left entirely to the jury in federal capital cases, and district courts should never weigh whether a death sentence is justified under the § 3553(a) factors. But even assuming § 3582(c)(1) applies to capital sentences and makes those factors relevant, the factors would weigh against any sentence reduction here. The "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), included Bernard buying lighter fluid and setting fire to the car, burning Stacie Bagley alive after he had heard her and her husband beg for their lives. And the death sentence appropriately reflects the "seriousness of the offense," provides "just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant." § 3553(a)(2)(A), (B), (C). Thus, even if § 3582(c)(1) could be applied to a death sentence, no sentence reduction would be warranted in this case.

11

**III.    The Court Should Reject Bernard's Request To Stay Or Reschedule His Execution.**

Bernard cannot show that he is entitled to a stay of his execution. As explained above, this Court has no authority to grant him a sentence reduction under § 3582(c). He therefore cannot make "a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). If that were not enough, Bernard's delay in bringing his motion for a sentence reduction weighs strongly against him. *See Hill*, 547 U.S. at 584. President Trump signed the First Step Act into law nearly two years ago, on December 21, 2018, but Bernard does not claim to have requested that the Bureau of Prisons seek a sentence reduction under § 3582(c) until October 17, 2020. (Doc. 718-1, Ex. 1-1.) And the facts that Bernard cites in support of his motion were known to him at least by that time. Yet he waited until three days before his scheduled execution to seek a sentence reduction in this Court. He cannot show entitlement to a stay in these circumstances.

Additionally, the balance of the equities weighs against issuing an injunction. The government has a strong interest in the timely enforcement of criminal sentences imposed by unanimous federal juries after fair trials that have been upheld through extensive appellate and post-conviction proceedings in federal courts. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019). Once post-conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Unduly delaying executions can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

Nor can Bernard prevail in his request that the Court modify his execution date. This request is, in substance, another request for a stay or an injunction. Stays and injunctions, although conceptually distinct, have substantial functional "overlap." *Nken*, 556 U.S. at 428. A stay "halt[s] or postpon[es] some portion of [a] proceeding," or "temporarily divest[s] an order of enforceability." *Id.* An injunction "is a means by which a court tells someone what to do or not to do." *Id.* Both forms of relief require an applicant to satisfy the same demanding standard. *See id.* at 434; *Glossip v. Gross*, 576 U.S. 863, 876 (2015); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 33 (2008).

Bernard's requested relief—that the Court require the Bureau of Prisons to execute him on some date other than December 10—would be an injunction. It would be a court order operating *in personam* on Executive Branch officials by telling them "what to do or not to do." *Nken*, 556 U.S. at 428.  At the very least, such an order would involve a stay because it would prevent his execution pending the resolution of his sentence-reduction motion. Thus, Bernard is incorrect that he "need satisfy no legal standard other than the appropriate exercise of discretion" to obtain a modification of his execution date. (Doc. 720 at 9-10.) His argument would lead to the anomalous consequence that a defendant in his position would never need to satisfy the demanding burden for obtaining a stay or injunction; defendants could simply re-style their requests as motions to modify the execution date.

Additionally, this Court's judgment and commitment order said that the "time, place and manner of execution are to be determined by the Attorney General." (Doc. 290 at 2.) Bernard's request for a modification of his execution date is, in effect, a request to modify the judgment. He cannot satisfy Federal Rule of Criminal Procedure 36, which allows correction of a clerical error in a judgment, nor does he point to any other Criminal Rule that would allow the Court to modify

13

the judgment 20 years after it was imposed. And Federal Rule of Civil Procedure 60(b) "applies only to civil cases and 'simply does not provide relief from a judgment in a criminal case.'" *United States v. Flores*, 380 F. App'x 371, 372 (5th Cir. 2010) (per curiam) (unpublished) (quoting *United States v. O'Keefe,* 169 F.3d 281, 289 (5th Cir. 1999) (Dennis, J., dissenting from grant of motion for temporary stay pending appeal)). Because no statute or rule authorizes modification of the judgment, this Court may not modify the execution date properly scheduled by the Bureau of Prisons unless Bernard satisfies the requirements for a stay or injunction.

The authorities that Bernard cites (Doc. 720 at 7-9) involved either the initial setting of an execution date or, in the case of his co-defendant Vialva, confirmation of the date set by the Bureau. Bernard points to no examples where a court, without entering a stay or injunction, has simply overridden the execution date set by the Executive, particularly where the Court's judgment specifically authorized the Executive to set the date. In any event, this Court can avoid the question altogether by denying Bernard's sentence-reduction motion on the merits.

Bernard alternatively requests that, "[i]f the Court neither stays Mr. Bernard's execution nor modifies his execution date immediately," the Court hear his motions on an emergency basis, with the government filing its response brief by noon on December 8, 2020, and Bernard filing his reply by midnight on December 8, 2020. (Doc. 720 at 10.) Because the government has filed this consolidated response to Bernard's motions within the time that he requests, his request is moot. But, in order to resolve this case quickly, the government agrees that Bernard should file any reply by 11:59 p.m. on December 8, 2020.

## CONCLUSION

For these reasons, the Court should deny Bernard's motion to modify his sentence under

18 U.S.C. § 3582(c)(1), as well as his emergency motion to stay or modify his execution date.

Respectfully submitted,

Gregg N. Sofer
United States Attorney

By:  s/Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, TX  76701
(254) 750-1580

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas using the CM/ECF system on December 8, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Mark Frazier
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CAPITAL CASE |
| v. | § | NO. 6:99-CR-0007-ADA-2 |
| | § | Execution Date: Dec. 10, 2020 |
| BRANDON BERNARD. | § | |

## ORDER

The Motion of Defendant Brandon Bernard, requesting that this Court modify his sentence

under 18 U.S.C. § 3582(c)(1), is DENIED. The motion to stay or modify execution date or, in the

alternative, for expedited consideration of motion to modify sentence, is DENIED.

It is so ordered this _____ day of December, 2020.

_____
HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE