UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | CRIMINAL NO. W-99-CR-070 (2)-ADA |
| **V.** § | |
| § | * CAPITAL CASE * |
| **BRANDON BERNARD** § | |

ORDER ON MOTION TO MODIFY SENTENCE
AND MOTION FOR STAY OF EXECUTION

Movant Brandon Bernard, having been convicted under federal law of capital murder and sentenced to death, is currently scheduled to be executed on December 10, 2020. Just four days prior to his scheduled execution, Bernard filed a motion to modify sentence (ECF No. 718) asking this Court to reduce his death sentence to life imprisonment pursuant to its discretion to grant compassionate relief under 18 U.S.C. § 3582(c)(1). Bernard also filed a motion (ECF No. 720) asking this Court to stay or modify his execution date pending review of his motion to modify sentence, or, in the alternative, expedite consideration of his motion to modify. The government filed a response opposing these motions (ECF No. 722), and Bernard replied (ECF No. 723).

After carefully considering the pleadings and governing legal authorities, the Court concludes that Bernard has not meet the standards for either modification of his sentence or a modification or stay of his execution date. The motions (ECF Nos. 718, 720) are therefore denied for the reasons discussed below.[1]

---

[1] Also before the Court are the motions of both parties (ECF Nos. 719, 721) to exceed the number of pages allowed under Local Rule CV-7. The Court finds the requests reasonable and will grant both motions.

## I. **Background**

Bernard and his co-defendant, Christopher Vialva, were lawfully convicted and sentenced to death in June 2000 for their part in the carjacking and murder of Todd and Stacie Bagley while on federal government property.[2] Both of their sentences were affirmed on direct appeal by the Fifth Circuit and Supreme Court. *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002), *cert. denied*, 539 U.S. 928 (2003). Since then, Bernard has repeatedly (and unsuccessfully) challenged his conviction and sentence under 28 U.S.C. § 2255, culminating in the Fifth Circuit affirming this Court's dismissal of his most recent motion (his third) as an unauthorized successive petition on September 9, 2020. *See United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 892 (2016); *United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 860 (2020); *United States v. Bernard*, 820 F. App'x 309 (5th Cir. 2020).

On October 16, 2020, the government scheduled Bernard for execution on December 10, 2020. Bernard was informed of the setting of his execution date that same day. (ECF No. 698). The next day, Bernard asked the Warden of the Federal Correctional Complex in Terre Haute, Indiana, to bring a motion on his behalf requesting a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 718-1 at 1). The Warden denied this request on October 20, 2020, stating there were "no extraordinary and compelling reasons" to grant the request. (ECF No. 718-1 at 2). Bernard then sought an injunction from this Court prohibiting the government from carrying out his execution or setting any further execution dates until the Supreme Court was able

---

[2] While the underlying facts have been spelled out in numerous previous opinions and do not bear repeating in full, the Court notes that Vialva and other members of a Killeen street gang robbed the Bagleys, locked them in the trunk of their car for several hours, met up with Bernard and another member of the gang, then drove to an isolated spot on the Fort Hood military reservation in order to execute the couple and eliminate any evidence. Using Bernard's handgun, Vialva shot Todd Bagley in the head, killing him, and shot Stacie Bagley in the face, knocking her unconscious but not killing her. Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. Vialva was executed on September 24, 2020, for his part in the crime.

to review the underlying procedural issues decided by the Fifth Circuit's September 9th opinion. The Court denied this request on December 3, 2020. (ECF No. 717).

Four days later—and just three days before his scheduled execution—Bernard filed the instant motion to modify his sentence to life imprisonment, citing the "broad discretion" inherent in § 3582(c)(1) for a district court to grant compassionate relief in "extraordinary and compelling" cases.[3] He also filed the corresponding motion to either stay or modify his execution date to allow the Court enough time to fully consider the previous motion. In the alternative, Bernard moves the Court to expedite consideration of the motion.

## II. Analysis

### A. The Motion to Modify Sentence

In Bernard's first motion, he urges the Court to modify his sentence of death to life imprisonment pursuant to the compassionate-release statute codified in 18 U.S.C. § 3582(c). Under this statute, a district court may modify a previously imposed "term of imprisonment" if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Bernard contends the statute, as amended by the First Step Act of 2018, empowers a district court to grant compassionate relief "in any case" where if finds "extraordinary and compelling reasons." The Court disagrees.

To start, both the title and the plain text of § 3582(c) states that a court may only modify an imposed "term of imprisonment." But the phrase "term of imprisonment" is distinguishable

---

[3]  Bernard argues several "extraordinary and compelling" reasons exist for modifying his sentence, including (1) the implicit racism of the "superpredator myth" that infected his trial, (2) he expressed immediate remorse to a number of spiritual advisors who were not called to testify at trial, (3) the jury heard nothing about his disadvantaged upbringing, (4) he has been a model prisoner without a single disciplinary infraction who has counseled others not to follow in his path, (5) he was just eighteen when he committed the crime, had no prior violent criminal record, and had only a minor role in the offense, (6) new evidence indicates that Mrs. Bagley was likely already "medically dead" by the time he set the fire and thus did not suffer, and (7) a majority of the surviving jurors from his trial no longer believe he should be sentenced to death.

from a sentence of death, and Bernard provides no relevant authority to support the idea that the former encompasses the latter. To hold otherwise would essentially find that § 3582(c), by allowing the reduction of a valid capital sentence without identifying any reversible error, is tantamount to judicial clemency. As pointed out by the government, had Congress wished to authorize sentencing courts to reconsider certain lawful death sentences, it certainly would not have hidden that authority in the compassionate-release statute. It would have expressly said so. Because it did not, this Court agrees with the government that § 3582(c) concerns only prison sentences, not capital sentences.

Further, any reduction of a sentence under § 3582(c)(1) must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes of the U.S. Sentencing Guidelines provide that "extraordinary and compelling reasons exist" only where the defendant (1) has certain serious medical or mental health conditions, (2) is at least 65 years old and meets other qualifying circumstances, (3) has qualifying family circumstances, or (4) has demonstrated "other reasons" as determined by the Bureau of Prisons. *See* U.S. Sentencing Guidelines Manual § 1B1.13 app. §§ (1)(A)–(D). Bernard has not attempted to satisfy these requirements, nor can he, as the requirements all focus on whether an inmate warrants compassionate *release*, not whether a sentence of life imprisonment should be imposed.

Any court considering a reduction of a sentence under § 3582(c)(1) must also "consider[] the facts set forth in section 3553(a) to the extent they are applicable" before granting relief. 18 U.S.C. § 3582(c)(1)(A). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This factor alone weighs heavily against a sentence reduction in this case, as it encompasses Bernard's participation in a brutal crime wherein he intentionally bought lighter fluid, lent his gun to Vialva who used the gun

to execute the Bagleys, then set fire to the car even after hearing the Bagley's pray and beg for their lives. In addition, Bernard's sentence of death appropriately reflects the seriousness of the offense, provides a just punishment for the offense, affords an adequate deterrence to criminal conduct, and protects the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A-C).

Finally, assuming § 3582(c) applies to capital cases and that Bernard has met the above requirements, the Court finds there are not enough compelling and extraordinary reasons that warrant a reduction of Bernard's death sentence to life imprisonment. Several of the arguments raised by Bernard to support the modification of his sentence are speculative or unpersuasive. Others—including several allegations regarding evidence that trial counsel failed to present to the jury—should have been raised either on direct appeal or in one of Bernard's three § 2255 petitions. While some the claims may be appropriate for a clemency petition, the Court concludes they do not provide an adequate basis to overturn a legally valid death sentence that has withstood multiple rounds of review. A reduction of Bernard's sentence to life imprisonment will therefore be denied.

**B.**     **The Motion to Stay or Modify Execution Date**

Bernard's second motion (ECF No. 720) asks this Court to stay or modify his execution date pending the Court's ruling on his motion to modify his sentence. As discussed in its previous Order denying Bernard injunctive relief (ECF No. 717 at 4), the Court is skeptical of its authority under 28 U.S.C. § 2251(a)(1) to stay Bernard's execution. Assuming it has such jurisdiction, however, the Court denies Bernard's request to stay the execution under the discretionary factors set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Under this well-established law, a court considers the following factors in deciding whether to issue a stay of execution: (1) whether the stay applicant has made a strong showing that he is

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *Id*. at 425-26. As explained below, these factors do not support Bernard's request to stay or modify his execution date.[4]

### 1. The *Nken* Factors

To start, Bernard fails to show a likelihood of success on the merits. Petitioner's motion for a stay of execution depends heavily on the merits of his underlying motion to modify his sentence under 18 U.S.C. § 3582(c)(1). But as discussed in the previous section, Bernard has not demonstrated that § 3582(c)(1) authorizes the reduction of an otherwise valid death sentence to life imprisonment, much less that enough "extraordinary and compelling reasons" warrant such a reduction. Thus, Bernard's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *Crutsinger v. Davis,* 930 F.3d 705, 707 (5th Cir. 2019).

Nevertheless, the Court notes that the other factors also weigh against Bernard. In addition to evaluating a movant's likelihood of success on the merits, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. National Resource Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). Courts should also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. (citation omitted).

---

[4] As pointed out by the government, Bernard's request to modify his execution date is essentially another request for an injunction. But the requirements for injunctive relief are substantially similar to those necessary for a stay of execution. *See Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). Thus, the Court will not modify Bernard's execution date for the same reasons it will not stay the execution.

6

Here, the possibility of irreparable injury does not appear to favor Bernard. While "[a] prisoner under a death sentence remains a living person and consequently has an interest in his life" pending his execution, *see Ohio Adult Parole Auth. v. Woodard*, 532 U.S. 272, 288 (1998) (O'Connor, J. concurring in part and concurring in the judgment), Bernard's motion asks only for a stay pending the Court's ruling on his motion to modify sentence. Because this underlying motion is clearly without merit, the Court has exercised its discretion and denied the motion.[5] Consequently, this Court can find no cognizable harm that will result to Bernard if his request for a stay is also denied.

Moreover, the remaining two *Nken* factors—the interests of the government and the public—weigh strongly in the government's favor. "[E]quity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Crutsinger*, 930 F.3d at 709 (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). The Supreme Court has frequently explained that "both the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019); *Hill*, 547 U.S. at 584.

Granting Bernard a stay would clearly inhibit the government's vested interest in carrying out an otherwise valid sentence and would impair the finality of this Court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)).

---

[5] Even if this Court had not yet decided the merits of Bernard's motion to modify sentence, the Supreme Court has recently indicated that the prospect of an inmate being executed prior to their claims being fully litigated does not serve as a basis for injunctive relief. *See Barr v. Lee*, 140 S. Ct. 2590 (2020) (vacating district court's preliminary injunction and permitting executions to proceed notwithstanding pending claims); *Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020) (same); *Barr v. Hall*, No. 20A99, 2020 WL 6798770 (U.S. Nov. 19, 2020) (same).

7

Thus, Bernard fails to show "that the balance of equities tips in his favor, [or] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

### 2. Other Equitable Considerations

Finally, a stay of execution is an equitable remedy. *Hill*, 547 U.S. at 584. In deciding whether to grant equitable relief, a court "may consider the last-minute nature of an application to stay execution." *See Gomez v. United States District Court for Northern District of California*, 503 U.S. 653, 653-54 (1992) (finding "[e]quity must take into account the state's strong interest in proceeding with its judgment and [the petitioner's] obvious attempt at manipulation . . . There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process.").

In this case, Bernard filed his motion for a sentence reduction in this Court just three days prior to his scheduled execution date despite the fact that: (1) the Bureau of Prisons denied his administrative request for a sentence reduction a month-and-a-half earlier (ECF No. 718-1 at 2), and (2) the First Step Act was signed into law nearly two years ago on December 21, 2018. *See* First Step Act of 2018, 18 U.S.C. § 3582(c)(1), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018). Bernard fails to provide an adequate excuse for not seeking a sentence reduction in this time. And given the government's significant interest in enforcing its criminal judgments, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). In other words, Bernard simply "delayed too long before bringing [his motion for reduction] before the court." *In re Paredes*, 587 F. App'x 805, 826 (5th Cir. 2014). His motion to stay will therefore be denied.

### III. Conclusion

The Court is not persuaded that the compassionate-release statute embodied in 18 U.S.C. § 3582(c)(1) authorizes the modification of a legally valid death sentence to a sentence of life imprisonment.  Even if it did, the Court concludes Bernard failed to demonstrate enough "extraordinary and compelling reasons" to warrant such a reduction.  Further, because Bernard has not demonstrated a likelihood of success on the merits or that the balance of equities weighs in his favor, he is not entitled to a stay or modification of his execution date.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motions for leave to exceed the page limitations filed by both parties (ECF Nos. 719, 721) are **GRANTED**;

2. The Motion to Modify Sentence Under 18 U.S.C. § 3582(c)(1) filed by Bernard on December 7, 2020 (ECF No. 718), is **DENIED**; and

3. The Motion to Stay or Modify Execution Date filed by Bernard on December 7, 2020 (ECF No. 720), is **DENIED**.  To the extent Bernard's motion requests an expedited consideration of his motion to modify his sentence, his request is **DISMISSED** as moot.

It is so **ORDERED**.

**SIGNED this the 9th day of December, 2020.**

_____
**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**